IN THE UNITED STATES DISTRICT COURT
FOR THE SOURTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOHN K. DRAKE, M.D., ET AL.**                                                                 **PLAINTIFFS**

**VERSUS**                                                            **CAUSE NO.: 1:08-CV-690-LTS-RHW**

**NATIONWIDE MUTUAL FIRE INS. CO., ET AL**                              **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

COMES NOW THE PLAINTIFFS, by and through counsel, and file their *Memorandum in Support of Plaintiff's Motion for Partial Summary Judgment* for the Court to determine as a matter of law that Plaintiffs are entitled to coverage under Coverage-D-Loss of Use; confirm the provisions of Coverage-D-Loss of Use; and find that Plaintiffs have incurred additional living expense in excess of the policy limits of Coverage-D-Loss of Use and are entitled to full coverage in the amount of $116,400.00 plus any adjustment for inflation protection under the subject insurance policy, and in support thereof would show the Court as follows:

**INTRODUCTION AND FACTS**

At the time of Hurricane Katrina, Plaintiffs had a homeowner's insurance policy drafted, sold, and issued by Defendants which provided the following coverage:

| | |
|---|---|
| Coverage—A—Dwelling | $580,700 |
| Coverage—B—Other Structures | $ 58,070 |
| Coverage—C—Personal Property | $430,430 |
| Coverage—D—Loss of Use | $116,140 |

In addition to the above referenced coverage, Plaintiffs' homeowner's policy with Defendants provided coverage for Inflation Protection and other applicable coverage which was intended to protect and provide the Plaintiffs with a piece of mind and security in the event of a

catastrophic total loss. At the time of Hurricane Katrina Plaintiffs had paid all necessary premiums and the subject homeowner's insurance policy was in force. (*See Plaintiff's homeowner's insurance policy and declaration page attached as Cumulative Exhibit 1*.)

Plaintiffs' homeowner's insurance policy with Defendants contained a "Windstorm or Hail Exclusion." Defendants' "Windstorm or Hail Exclusion" stated, in part, the following:

1. We do not insure for loss caused directly or indirectly by the perils of windstorm or hail; and
2. Windstorm or hail loss is excluded regardless of any causes or event contributing concurrently or in any sequence to the loss …

This exclusion does not apply to Coverage-D-Loss of Use.

(*See NW-DRA000062 of Cumulative Exhibit 2*.)

As shown above, the "Windstorm or Hail Exclusion" drafted and attached to Plaintiffs' homeowner's insurance policy by Defendants clearly did not apply to Coverage-D-Loss of Use.

Coverage-D-Loss of Use provided, in part, the following coverage:

1. **Additional Living Expense**. If a covered loss requires you to leave the residence premises, we will pay the required increase in living expenses you incur to maintain your standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, which occur first. This period of time is not limited by the end of the policy period; and ….

No deductible applies to this coverage.

(*See NW-DRA000069 of Cumulative Exhibit 3*.)

On August 29, 2005, Plaintiffs' home and personal property were completed destroyed by Hurricane Katrina. Unfortunately, Plaintiffs' home located at 95 Labranche Avenue, Ocean Springs, Mississippi was rendered a "slab" as a result of the weather events of Hurricane Katrina, including the hours of intense hurricane force winds. As the Court as previously held, Hurricane Katrina was a windstorm.

## **LAW**

Summary Judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P 56(c); *Price v. Federal Ex. Corp.*, 283 F.3d 715, 719 (5th Cir. 2002). Summary Judgment is mandated where a party fails to establish the existence of an element essential to the case and on which the party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986). The standard for granting summary judgment under Rule 56 "mirror" the standard for judgment as a matter of law under Rule 50, such that the "inquiry under each is the same." *Reeves v. Sanderson Plumbing*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986)).

"The interpretation of an insurance policy is a question of law, not of fact. *Anglin v. Gullf Guaranty Life Ins. Co.*, 956 So. 2d, 853, 859 (Miss. 2007) (citing *Noxubee County School Dist. v. United National Ins. Co.*, 883 So.2d 1159, 1163 (Miss. 2004)). Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their pain, ordinary meaning and will apply them as written. *Paul Revere Life Ins. Co. v. Prince*, 375 So.2d 417, 418 (Miss. 1979). Moreover, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994). "Where the insurance policy does not provide the definition for a term or phrase, those words are afforded their ordinary and popular meaning." *United National*, 883 So.2d at 1165 (citing *Blackledge v. Omega Ins. Co.*, 740 So.2d 295, 298 (Miss. 1999)).

# ARGUMENT

Plaintiffs are entitled to the full amount of inflated adjusted limits of coverage under Coverage-D-Loss of Use provision of their homeowner's insurance policy drafted, sold, and issued by the Defendants.

### 1. Defendants Determined Plaintiffs Were Entitled to Coverage Under Coverage-D-Loss of Use

On August 29, 2005, Plaintiffs home and personal property was rendered a "slab" by Hurricane Katrina. Thus, Plaintiffs suffered an accidental total loss. Plaintiffs contacted and placed a claim with the Defendants. On July 24, 2006, after denying the Plaintiffs' claim, <u>Defendants made the determination that the Plaintiffs' were entitled to coverage under Coverage-D-Loss of Use</u>. During the 30(b)(6) deposition of Charles Higley, corporate representative of the Defendants, Mr. Higley confirmed the following:

```
                              336
 9    In Mr. Woods' report in the
10    second paragraph on 3487 concluded in the second
11    sentence that, Due to the conclusion above in
12    Mr. Biddy's report, this does put the cause of
13    loss into controversy; right?
14    A.    Yes.
15    Q.    And "cause of loss into controversy"
16    could be otherwise stated as meaning there's a
17    question or doubt about the cause of loss;
18    correct?
19    A.    Yes.
20    Q.    And it was Nationwide's policy to
21    resolve doubt about cause of loss in favor of
22    coverage for the insured; correct?
23    A.    Yes.
24    Q.    And so that's what Nationwide decided
25    to do on July the 24th, 2006; correct?

                              337
 1    A.    Yes. And that's why I stated that it
 2    was a business decision, and that's what I
 3    consider a compromise –
```

4

(*See Excerpt of Deposition Testimony of Charles Higley attached hereto as Exhibit 4*.)

Although Defendants had determined that the Plaintiffs were entitled to coverage under Coverage-D-Loss of Use, Defendants did not inform the Plaintiffs of the change in their position, and in fact, specifically stated to the Plaintiffs a position that was contrary to Defendants July 24, 2006 coverage determination under Coverage-D-Loss of Use. Mr Higley testified to the following:

```
                              349
20  And this is an entry by Alec Harmer, I
21  presume, or whoever the claims associate was at
22  that time.
23  A.     Yes.  Yeah.  That's who it's
24  designated as.
25  Q.     Regarding a conversation with the

                              350
 1  Drakes; right?
 2  A.     Yes.
 3  Q.     And this was after the time that a
 4  decision had been made that there was a doubt
 5  about the cause of loss and that that doubt was
 6  going to be resolved in favor of coverage for
 7  the Drakes; correct?
 8         MR. SCHULTZ:  Objection to form.
 9  A.     It was, yes.
                              351
14  Q.     The Drakes should not have been
15  informed as of July of 2007, assuming that
16  that's the right date for that entry, that there
17  would probably not be coverage for the entire
18  12-month period on their ALE claim.
19          MR. SCHULTZ:  Objection to form.
20  BY MR. VAN CLEAVE:
21  Q.     Right?
22  A.     I would rather that conversation not
23  to have been held.
24  Q.     Well, it was contrary to the claims
25  decision that had been made by Nationwide
                              352
```

```
1   management as of that date; true?
2   A.      Yes.
```

(*See Excerpt of Deposition of Charles Higley attached hereto as Exhibit 5*.)

Defendants made the determination that Plaintiffs were entitled to coverage under Coverage-D-Loss of Use. Defendants' coverage determination was based on the premise that when a question a doubt arises as to whether or not an insured, such as the Plaintiffs, is covered under an insurance policy, the doubt should be construed in favor of coverage. *Nationwide Mut. Ins. Co. v. Garriga*, 636 So.2d 658, 662 (Miss. 1994). As such, Plaintiffs respectfully request the Court to find as a matter of law that Plaintiffs are entitled to insurance coverage under Coverage-D-Loss of Use of their homeowner's insurance policy for their accidental total loss as a result of Hurricane Katrina.

### 2. Defendants Confirmed Applicable Coverage Under Coverage-D-Loss of Use

As stated above in the subject policy of insurance, Coverage-D-Loss of Use provides, in part, "if a covered loss requires you to leave the residence premise, we will pay the required increase in living expense you incur to maintain your standard of living …Payment will be for the shortest time required to repair or replace your home …if you permanently relocate, for the shortest time required for your household to settle elsewhere …Payment will not exceed the limit of liability … which occur first. (See, See NW-DRA000069 of Cumulative Exhibit 1.) Plaintiffs' homeowner's insurance policy provided $116,400.00 plus inflation protection for Coverage-D-Loss of Use.

During the deposition of Charles Higley, Mr. Higley admitted that the Additional Living Expense provision of Coverage-D-Loss of Use provided coverage in the following manner:

```
                        250
11   And the policy provides coverage
12   limits of over $116,000 for additional living
```

6

```
13   expenses; correct?
14   A.      Yes.
15   Q.      And those limits apply -- strike that.
16           The additional living expense
17   provision of the policy provides coverage either
18   until it's been provided for 12 months after the
19   loss or until the limits of the policy are met,
20   whichever occurs first; right?
21           MR. SCHULTZ:  Object to form.
22   A.      And one other limitation is: or
23   permanently relocate.
24   Q.      Or permanently relocate.
25           There is no evidence that you're

                        251
1    aware of that the Drakes ever permanently
2    relocated, is there, sir?
3    A.      No.
```

(*See Excerpt of Deposition Testimony of Charles Higley attached hereto as Exhibit 6*.)

Thus, Plaintiffs were afforded coverage in the amount of $116,400.00 <u>plus</u> inflation protection for additional living expenses under Coverage-D-Loss of Use for twelve (12) months after the loss, or until the limits of the policy were met, or until Plaintiffs' <u>permanently</u> relocated. The additional living expenses are required to be incurred. Plaintiffs respectfully request the Court to find as a matter of law that Additional Living Expenses should be calculated in this manner.

### 3. Plaintiffs Incurred Additional Living Expenses in Excess of the Limits of the Policy Within Twelve Months of Plaintiffs' Total Loss

Plaintiffs are entitled to the entire amount of additional living expenses under the subject policy plus any adjustments for inflation protection. The plain language of Plaintiffs' homeowner's insurance policy drafted, sold, and issued by the Defendants provides that Defendants "…will pay the required increase in living expense you incur to maintain your standard of living…." (*See NW-DRA000069 of Cumulative Exhibit 2*.) The undisputed evidence

in this case demonstrates that the Plaintiffs' were required to incur increased living expenses far in excess of the policy limits provided by Coverage-D-Loss of Use.

Plaintiffs incurred the following additional living expenses[1]:

1. $13,597.50 paid for rent of a temporary residence. (*See Lease Agreement and Receipts of Rent Paid from September 2005 through July 2006 attached hereto as Cumulative Exhibit 7.*)

2. $319,000.00 paid for the purchase of a temporary residence on June 1, 2006. (*See Closing Documents filed Under Seal attached hereto as Exhibit 8.*)

Defendants had full knowledge during the course of Plaintiffs' claim that the Plaintiff did not intend for the above referenced temporary residences to be permanent. During the 30(b)(6) deposition of Mr. Higley, he stated the following:

```
                          252
12  .      Well, you know that the Drakes
13  purchased a new home in July of 2006; right?
14  A.     Yes.
15  Q.     And that was less than 12 months after
16  the date of loss; correct?
17  A.     Yes.
18  Q.     And you know that the Drakes reflected
19  that they did not intend to utilize that home as
20  a permanent relocation; correct?
21         MR. SCHULTZ:  Objection to form and
22    foundation.
23  A.     Yes.
24  BY MR. VAN CLEAVE:
25  Q.     And in fact Nationwide even conducted

                          253
1   its own independent investigation by going down
2   to the courthouse to find out whether or not the
3   Drakes even still owned the insured property;
4   right?
```

---

[1] Plaintiffs have produced documentation of additional living expenses for which their incurred as a result of the total loss of their home as a result of Hurricane Katrina; however, Plaintiffs incurred expenses referenced above far exceed the limits of applicable coverage under Coverage-D-Loss of Use.

8

```
 5  A.     Yes.
 6  Q.     And the purpose of that was to see if
 7  you could support a determination that they had
 8  permanently relocated so that that would serve
 9  as a cutoff for ALE; right?
10  A.     Yes.
11  Q.     And through that investigation
12  Nationwide discovered evidence that in fact the
13  Drakes did still own the insured property;
14  correct?
15  A.     Yes.
16  Q.     And that discovery was consistent with
17  the Drakes' representations that they did not
18  intend to permanently relocate by virtue of
19  purchasing a new home; correct?
20         MR. SCHULTZ:  Objection to form and
21     foundation.
22  A.     Yes.
23  BY MR. VAN CLEAVE:
24  Q.     Even if the Drakes purchased a new
25  home during the 12-month period following the

                         254
 1  date of loss, they would still be entitled to
 2  coverage under the additional living expense
 3  provisions of their policy as long as they did
 4  not intend to permanently relocate to that home
 5  at the time of purchase; correct?
 6         MR. SCHULTZ:  Object to form.
 7  A.     That would be one way of looking at
 8  it.
```

(*See Excerpt of Deposition Testimony of Charles Higley attached hereto as Exhibit 9.*)

Within one year of the accidental total loss of their home, Plaintiffs incurred additional living expenses which far exceeded the amount of applicable coverage under Coverage-D-Loss-of-Use. These additional living expenses were directly incurred to maintain Plaintiffs' standard of living as provided by the plain language of the subject policy of insurance. Plaintiffs respectfully request the Court to find as a matter of law that Plaintiffs are entitled to the limits of

coverage under the Coverage-D-Loss of Use provision in the amount of $116,400.00 <u>plus</u> any adjustment for inflation protection under the subject insurance policy.

 WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request the Court to grant Plaintiffs' Motion for Partial Summary Judgment, and any additional relief in favor of the Plaintiffs deemed appropriate by this Honorable Court.

 Respectfully submitted this the 31st day of August, 2009.

        JOHN K. DRAKE, M.D.
        DEBORAH DRAKE
        Plaintiffs

     By: *s/ W. Corban Gunn*
       W. CORBAN GUNN, (MSB #101752)

Clyde H. Gunn, III, (MSB #5074)
Christopher C. Van Cleave, (MSB #10796)
W. Corban Gunn, (MSB #101752)
David N. Harris, Jr., (MSB #100790)
CORBAN, GUNN & VAN CLEAVE, PLLC
P.O. Drawer 1916
Biloxi, Mississippi 39533
Telephone:  (228) 432-7826
Facsimile:  (228) 456-0998
corban@cgvclaw.com

## **CERTIFICATE OF SERVICE**

I, W. Corban Gunn, Esq., herby certify that on August 31, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM / ECF system which will send notification of such filing to the following:

Dana E. Hill, Esq.
dhill@kirkland.com

Laura L. Gibbes, Esq.
lgibbes@watkinsludlam.com

This the 31st day of August, 2009.

*s/ W. Corban Gunn*
W. CORBAN GUNN, (MSB #101752)