"I certify that the attached document, comprising of 55 pages are true and correct copies for policy number 63 23 MP 669 310 as of 8-29-05."

_Carrisa McAllister_    _10/6/08_
Signature                      Date

p:certified1

**CUMULATIVE
EXHIBIT 1**



NW-DRA000043



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

Policy Number:
63 23 MP 669310

Issued:
SEP 27, 2005

Policyholder:
(Named Insured)
JOHN K AND
DEBARAH J DRAKE
95 LA BRANCHE AVE
OCEAN SPRINGS MS 39564-5309

Policy Period From:

NOV 09, 2004  to NOV 09, 2005  but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises Information:**

95 LA BRANCH
ON EAST BEACH FRONT
OCEAN SPRINGS
MS 395649195

ONE FAMILY
MASONRY VENEER DWELLING
YEAR OF CONSTRUCTION 1985

PROTECTION CLASS 06
RATED PROTECTION CLASS 06

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE–A–DWELLING | $ 580,700 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE–B–OTHER STRUCTURES | $ 58,070 | |
| COVERAGE–C–PERSONAL PROPERTY | $ 430,430 | |
| COVERAGE–D–LOSS OF USE | $ 116,140 | |

## SECTION II

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE–E–PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $ 500,000 |
| COVERAGE–F–MEDICAL PAYMENTS TO OTHERS EACH PERSON | $ 5,000 |

H5300

FRAME: J 20

# HOMEOWNER POLICY DECLARATIONS

Page 2 of 3

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0489.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

### Options Applicable

| | |
|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ 2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
| DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ 25,000 |
| WATER BACKUP DEDUCTIBLE $1000 | |

## PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ 2,577.00 |
| WATER BACKUP | $ 76.00 |
| Annual Premium | $ 2,653.00 |

Annual Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

## FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 23-A | Homeowners Policy |
| H-6072 | Wind or Hail Exclusion |

## ADDITIONAL INTERESTS

FIRST MORTGAGEE

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #215000128390

FRAME: K 20

NW-DRA000045



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable
Page 3 of 3

Policy Number:
63 23 MP 669310

Issued:
SEP 27, 2005

Policyholder:
(Named Insured)
JOHN DRAKE

Policy Period From:
NOV 09, 2004 TO   NOV 09, 2005

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
Countersigned At: RALEIGH, NC
Prior Declaration Issued: SEP 14, 2005

Home Office -- Columbus, Ohio
By: RONNIE D GOFF

**IMPORTANT PHONE NUMBERS**

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 919-781-3322

**FRAME: L 20**

NW-DRA000046

# HOMEOWNER POLICY DECLARATIONS
## Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 23 MP 669310

**Issued:**
SEP 14, 2005

**Policyholder:**
(Named Insured)
JOHN K AND
DEBARAH J DRAKE
95 LA BRANCHE AVE
OCEAN SPRINGS MS 39564-5309

**Policy Period From:**

NOV 09, 2004 to NOV 09, 2005 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Residence Premises Information:**

| | | |
|---|---|---|
| 95 LA BRANCH<br>ON EAST BEACH FRONT<br>OCEAN SPRINGS<br>MS 396649195 | ONE FAMILY<br>MASONRY VENEER DWELLING<br>YEAR OF CONSTRUCTION 1985 | PROTECTION CLASS 06<br>RATED PROTECTION CLASS 06 |

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE-A-DWELLING | $    580,700 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-B-OTHER STRUCTURES | $     58,070 | |
| COVERAGE-C-PERSONAL PROPERTY | $    430,430 | |
| COVERAGE-D-LOSS OF USE | $    116,140 | |

## SECTION II

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE-E-PERSONAL LIABILITY<br>FOR EACH OCCURRENCE:<br>PROPERTY DAMAGE AND<br>BODILY INJURY | $    500,000 |
| COVERAGE-F-MEDICAL PAYMENTS<br>TO OTHERS EACH PERSON | $      5,000 |

H5300

NW-DRA000047

## HOMEOWNER POLICY DECLARATIONS

### OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0489.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

#### Options Applicable

| | |
|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ 2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
| DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ 25,000 |
| WATER BACKUP DEDUCTIBLE $1000 | |

### PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ 2,577.00 |
| WATER BACKUP | $ 76.00 |
| Annual Premium | $ 2,653.00 |

Annual Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

### FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 23-A | Homeowners Policy |
| H-6072 | Wind or Hail Exclusion |

### ADDITIONAL INTERESTS

FIRST MORTGAGEE

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #215000128390

**FRAME: F 02**

NW-DRA000048

# HOMEOWNER POLICY
## DECLARATIONS
Non-Assessable
Page 3 of 3

**Policy Number:**
63 23 MP 669310

**Issued:**
SEP 14, 2005

**Policyholder:**
(Named Insured)
JOHN DRAKE

**Policy Period From:**
NOV 09, 2004 TO  NOV 09, 2005

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
Countersigned At: RALEIGH, NC
Prior Declaration Issued: SEP 12, 2005

Home Office — Columbus, Ohio
By: RONNIE D GOFF

### IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 919-781-3322

**FRAME: G 02**

NW-DRA000049

**HOMEOWNER POLICY DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 23 MP 669310

**Issued:**
SEP 12, 2005

**Policyholder:**
(Named Insured)
JOHN K AND
DEBARAH J DRAKE
95 LA BRANCHE AVE
OCEAN SPRINGS MS 39564-5305

**Policy Period From:**

NOV 09, 2004 to NOV 09, 2005 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

**Change Effective Date:**
SEP 09, 2005

**The Following Change(s) Have Been Made To Your Policy:**

This revised Declarations reflects recent changes made to your Insurance Policy.

**Residence Premises Information:**

| | | |
|---|---|---|
| 95 LA BRANCH | ONE FAMILY | PROTECTION CLASS 06 |
| ON EAST BEACH FRONT | MASONRY VENEER DWELLING | RATED PROTECTION CLASS 06 |
| OCEAN SPRINGS | YEAR OF CONSTRUCTION 1985 | |
| MS 396649195 | | |

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE-A-DWELLING | $ 680,700 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated |
| COVERAGE-B-OTHER STRUCTURES | $ 68,070 | |
| COVERAGE-C-PERSONAL PROPERTY | $ 430,430 | |
| COVERAGE-D-LOSS OF USE | $ 116,140 | |

## SECTION II

| Liability Coverages | Limits Of Liability | |
|---|---|---|
| COVERAGE-E-PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $ 500,000 | |
| COVERAGE-F-MEDICAL PAYMENTS TO OTHERS EACH PERSON | $ 5,000 | |

H5300

**FRAME: D 18**

NW-DRA000050

## HOMEOWNER POLICY DECLARATIONS

Page 2 of 3

### OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0499.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $    10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $       500 |
| CREDIT CARD - FORGERY | $     1,000 |

#### Options Applicable

| | |
|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $     2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
| DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | APPLIES |
| OPTION R-BROAD WATER BACKUP | $    25,000 |
| WATER BACKUP DEDUCTIBLE  $1000 | |

### PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $     2,577.00 |
| WATER BACKUP | $         76.00 |
| Annual Premium | $     2,653.00 |

Annual Premium Includes Discounts For:
CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

### FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 23-A | Homeowners Policy |
| H-6072 | Wind or Hail Exclusion |

### ADDITIONAL INTERESTS

FIRST MORTGAGEE

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #215000128390

FRAME: E 19

NW-DRA000051

**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable
Page 3 of 3

**Policy Number:**
63 23 MP 669310

**Issued:**
SEP 12, 2005

**Policyholder:**
(Named Insured)
JOHN DRAKE

**Policy Period From:**
NOV 09, 2004 TO  NOV 09, 2005

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
Countersigned At: RALEIGH, NC
Prior Declaration Issued: SEP 08, 2005

Home Office — Columbus, Ohio
By: RONNIE D GOFF

### IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-822-2421

Nationwide Regional Office: 919-781-3322

**FRAME: F 18**

NW-DRA000052

**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

Policy Number:
63 23 MP 669310

Issued:
SEP 08, 2005

Policyholder:
(Named Insured)
JOHN K AND
DEBARAH J DRAKE
905 MAGNOLIA BAYOU
OCEAN SPRINGS MS 39564-8392

Policy Period From:

NOV 09, 2004 to NOV 09, 2005 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

Residence Premises Information:

| 95 LA BRANCH<br>ON EAST BEACH FRONT<br>OCEAN SPRINGS<br>MS 395649195 | ONE FAMILY<br>MASONRY VENEER DWELLING<br>YEAR OF CONSTRUCTION 1985 | PROTECTION CLASS 06<br>RATED PROTECTION CLASS 06 |
|---|---|---|

## SECTION I

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE–A–DWELLING | $ 580,700 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE–B–OTHER STRUCTURES | $ 58,070 | |
| COVERAGE–C–PERSONAL PROPERTY | $ 430,430 | |
| COVERAGE–D–LOSS OF USE | $ 116,140 | |

## SECTION II

| Liability Coverages | Limits Of Liability | |
|---|---|---|
| COVERAGE–E–PERSONAL LIABILITY<br>FOR EACH OCCURRENCE:<br>PROPERTY DAMAGE AND<br>BODILY INJURY | $ 500,000 | |
| COVERAGE–F–MEDICAL PAYMENTS<br>TO OTHERS EACH PERSON | $ 5,000 | |

H5300

NW-DRA000053

## HOMEOWNER POLICY DECLARATIONS

Page 2 of 3

### OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | Limits of Liability |
|---|---|
| INFLATION PROTECTION | APPLIES |
| BOECKH INDEX 0489.0 | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ 10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ 500 |
| CREDIT CARD - FORGERY | $ 1,000 |

**Options Applicable**

| | |
|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ 2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | APPLIES |
| PERSONAL PROPERTY | |
| OPTION-K-REPLACEMENT COST PLUS | APPLIES |
| DWELLING | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | |
| FIRE EXTINGUISHERS | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ 25,000 |
| WATER BACKUP DEDUCTIBLE $1000 | |

### PREMIUM SUMMARY

| Premium Based On | Premium Amount |
|---|---|
| POLICY PREMIUM | $ 2,577.00 |
| WATER BACKUP | $ 76.00 |
| Annual Premium | $ 2,653.00 |

Annual Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

### FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 23-A | Homeowners Policy |
| H-6072 | Wind or Hail Exclusion |

### ADDITIONAL INTERESTS

**FIRST MORTGAGEE**

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #215000128390



**HOMEOWNER POLICY DECLARATIONS**

Non-Assessable
Page 3 of 3

Policy Number:
63 23 MP 669310

Issued:
SEP 08, 2005

Policyholder:
(Named Insured)
JOHN DRAKE

Policy Period From:
NOV 09, 2004 TO  NOV 09, 2005

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
Countersigned At: RALEIGH, NC
Prior Declaration Issued: SEP 07, 2005

Home Office — Columbus, Ohio
By: RONNIE D GOFF

**IMPORTANT PHONE NUMBERS**

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 919-781-3322

FRAME: A 01

NW-DRA000055

**HOMEOWNER POLICY**
**DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 23 MP 669310

**Issued:**
SEP 07, 2005

**Policyholder:**
(Named Insured)
JOHN K AND
DEBARAH J DRAKE
95 LA BRANCHE AVE
OCEAN SPRINGS MS 39564-9195

**Policy Period From:**

NOV 09, 2004 to NOV 09, 2005 but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**Residence Premises Information:**

95 LA BRANCH
ON EAST BEACH FRONT
OCEAN SPRINGS
MS 395649195

ONE FAMILY
MASONRY VENEER DWELLING
YEAR OF CONSTRUCTION 1985

PROTECTION CLASS 06
RATED PROTECTION CLASS 06

**SECTION I**

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE-A-DWELLING | $ 580,700 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE-B-OTHER STRUCTURES | $ 58,070 | |
| COVERAGE-C-PERSONAL PROPERTY | $ 430,430 | |
| COVERAGE-D-LOSS OF USE | $ 116,140 | |

**SECTION II**

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE-E-PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $ 500,000 |
| COVERAGE-F-MEDICAL PAYMENTS TO OTHERS EACH PERSON | $ 5,000 |

H5300

FRAME. D 00

NW-DRA000056

## HOMEOWNER POLICY DECLARATIONS

### OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | | Limits of Liability |
|---|---|---|
| INFLATION PROTECTION | | APPLIES |
| BOECKH INDEX 04B9.0 | | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ | 10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ | 500 |
| CREDIT CARD - FORGERY | $ | 1,000 |

| **Options Applicable** | | |
|---|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ | 2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | | APPLIES |
| PERSONAL PROPERTY | | |
| OPTION-K-REPLACEMENT COST PLUS | | APPLIES |
| DWELLING | | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | | |
| FIRE EXTINGUISHERS | | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ | 25,000 |
| WATER BACKUP DEDUCTIBLE  $1000 | | |

### PREMIUM SUMMARY

| Premium Based On | | Premium Amount |
|---|---|---|
| POLICY PREMIUM | $ | 2,577.00 |
| WATER BACKUP | $ | 76.00 |
| Annual Premium | $ | 2,653.00 |

Annual Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

### FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 23-A | Homeowners Policy |
| H-6072 | Wind or Hail Exclusion |

### ADDITIONAL INTERESTS

FIRST MORTGAGEE

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #216000128390



**HOMEOWNER POLICY DECLARATIONS**
Non-Assessable
Page 3 of 3

Policy Number:
63 23 MP 669310

Issued:
SEP 07, 2005

Policyholder:
(Named Insured)
JOHN DRAKE

Policy Period From:
NOV 09, 2004 TO  NOV 09, 2005

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
Countersigned At: RALEIGH, NC
Prior Declaration Issued: OCT 12, 2004

Home Office — Columbus, Ohio
By: RONNIE D GOFF

**IMPORTANT PHONE NUMBERS**

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 919-781-3322

**FRAME: F 09**

NW-DRA000058



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 23 MP 669310

**Issued:**
OCT 12, 2004

**Policyholder:**
**(Named Insured)**
JOHN K AND
DEBARAH J DRAKE
95 LA BRANCHE AVE
OCEAN SPRINGS MS 39564-9195

**Policy Period From:**

NOV 09, 2004  to  NOV 09, 2005  but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**The Following Change(s) Have Been Made To Your Policy:**

You may notice a change in premium since your last billing.  Residence Premises information has been changed.

The limit of liability for Section I Coverage A Dwelling is revised.

Limits of Liability for Policy Option Water Backup is changed.

**Residence Premises information:**

95 LA BRANCH
ON EAST BEACH FRONT
OCEAN SPRINGS
MS 395649195

ONE FAMILY
MASONRY VENEER DWELLING
YEAR OF CONSTRUCTION 1985

PROTECTION CLASS 08
RATED PROTECTION CLASS 06

**SECTION I**

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE–A–DWELLING | $        580,700 | In case of a loss under Section I, we cover only that part of each loss over the deductible stated. |
| COVERAGE–B–OTHER STRUCTURES | $         58,070 | |
| COVERAGE–C–PERSONAL PROPERTY | $        430,430 | |
| COVERAGE–D–LOSS OF USE | $        116,140 | |

**SECTION II**

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE–E–PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $        500,000 |
| COVERAGE–F–MEDICAL PAYMENTS TO OTHERS EACH PERSON | $          5,000 |

H5300

FRAME 124

NW-DRA000059



# HOMEOWNER POLICY DECLARATIONS

Page 2 of 3

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | | Limits of Liability |
|---|---|---|
| INFLATION PROTECTION | | APPLIES |
| BOECKH INDEX 0489.0 | | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ | 10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ | 500 |
| CREDIT CARD - FORGERY | $ | 1,000 |

### Options Applicable

| | | |
|---|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ | 2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | | APPLIES |
| PERSONAL PROPERTY | | |
| OPTION-K-REPLACEMENT COST PLUS | | APPLIES |
| DWELLING | | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | | |
| FIRE EXTINGUISHERS | | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ | 25,000 |
| WATER BACKUP DEDUCTIBLE  $1000 | | |

## PREMIUM SUMMARY

| Premium Based On | | Premium Amount |
|---|---|---|
| POLICY PREMIUM | $ | 2,577.00 |
| WATER BACKUP | $ | 76.00 |
| Annual Renewal Premium | $ | 2,653.00 |

Annual Renewal Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

## FORMS and ENDORSEMENTS MADE PART OF POLICY

| | |
|---|---|
| HO 23-A | Homeowners Policy |
| H-6072 | Wind or Hail Exclusion |

## ADDITIONAL INTERESTS

**FIRST MORTGAGEE**

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #215000128390

**FRAME: K 04**

NW-DRA000060



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable
Page 3 of 3

Policy Number:
63 23 MP 669310

Issued:
OCT 12, 2004

Policyholder:
(Named Insured)
JOHN DRAKE

Policy Period From:
NOV 09, 2004 TO  NOV 09, 2005

Issued By: NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
Countersigned At: RALEIGH, NC
Prior Declaration Issued: OCT 10, 2003

Home Office — Columbus, Ohio
By: RONNIE D GOFF

### IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 919-781-3322

FRAME: T 04

NW-DRA000061



# *Windstorm or Hail Exclusion*

**Please attach this important addition to your policy.**

For a premium credit, it is agreed that:

1. We do not insure for loss caused directly or indirectly by the perils of windstorm or hail; and

2. Windstorm or hail loss is excluded regardless of any cause or event contributing concurrently or in any sequence to the loss.

We will cover direct loss by fire or explosion resulting from windstorm or hail damage.

This exclusion does not apply to Coverage D - Loss of Use.

All other policy provisions apply.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**NATIONWIDE INSURANCE COMPANIES**
**Home Office: Columbus, Ohio 43215-2220**

H-6072

NW-DRA000062

# *Your*
# *Nationwide®*
# *Homeowners Policy*





Nationwide Insurance Companies, Home Office: One Nationwide Plaza, Columbus, Ohio 43215-2220

HO-23-A

NW-DRA000063

# *Table of Contents*          # *Homeowners Policy*

INSURING AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A1
DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .A1-A2
COVERAGES:

Section I - Property Coverages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B1-B6
      Coverage A - Dwelling
      Coverage B - Other Structures
      Coverage C - Personal Property
      Coverage D - Loss of Use
      Additional Property Coverages
      Perils Insured Against  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . C1-C2
      Property Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . D1-D3
      Property Conditions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .E1-E3

Section II - Liability Coverages  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . G1-G3
      Coverage E - Personal Liability
      Coverage F - Medical Payments to Others
      Additional Liability Coverages
      Liability Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . H1-H4
      Liability Conditions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . J1

POLICY COVERAGE OPTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .K1-K7

GENERAL POLICY CONDITIONS
How Your Policy May Be Changed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Concealment or Fraud  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Renewal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Non-Renewal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Cancellation During Policy Period . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L1
Policy Transfer  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Subrogation  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Death  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Additional Insured - Non Occupant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L2
Optional Payment of Premium in Installments . . . . . . . . . . . . . . . . . . . . . . . . L2
Non-Sufficient Funds Charge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3
Dividends. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . L3

MUTUAL POLICY CONDITIONS
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company  . . . . . . . . . . . . . . . . . . . . . . . . . L3

Includes copyrighted material of Insurance Services Offices, with its permission.
Copyright, Insurance Services Office, 1975, 1977.

HO-23-A

# Insuring Agreement

We will provide the insurance described in this policy, which includes the Declarations and attached endorsements or schedules, in return for the premium and fees, and compliance with all the policy provisions.

The applicable limits of liability and optional coverages you have chosen are shown on the Declarations. This policy applies only to loss which occurs while the policy is in force.

# Definitions

Certain words and phrases used in this policy are defined as follows:

1. "WE", "US" and "OUR" refer to the company shown on the Declarations as the issuing company.

2. "YOU" and "YOUR" refer to the named insured shown in this policy who resides at the residence premises. These terms also mean your spouse who resides at the same residence premises.

3. "BUSINESS" includes trade, profession, occupation, or employment including self-employment, performed on a full-time, part-time, or temporary basis. Business also includes any occasional business pursuits of an insured, including ownership of rental property. It includes home care services regularly provided to a person or persons, other than insureds or insureds' relatives, for which there is monetary or other compensation. A mutual exchange of home care services is not considered compensation. Exceptions, if any, are noted on the Declarations.

4. "INSURED" means you and the following if residents of your household at the residence premises:
   a) your relatives.
   b) any other person under age 21 and in the care of you or your relatives.

5. "INSURED LOCATION" means:
   a) the residence premises.
   b) the part of any other premises, structures, and grounds used by you as a residence and shown in the policy; also any of these acquired by you during the policy period for your use as a residence.
   c) a premises you use with premises defined in 5. a) or 5. b).
   d) a part of a premises, not owned by an insured, where an insured is temporarily living.
   e) vacant land, other than farm land, owned by or rented to an insured.
   f) land, other than farm land, owned by or rented to an insured on which a one or two-family dwelling is being built as a residence for an insured.
   g) cemetery plots or burial vaults of an insured.
   h) a part of a premises rented on occasion to an insured for purposes other than business.

6. "MOTOR VEHICLE" means:
   a) a motorized land vehicle or conveyance, including motorized bicycles or mopeds, designed for travel on public roads or subject to motor vehicle registration.
   b) a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration.
   c) any vehicle while being towed by or carried on a vehicle defined in 6. a) or 6. b).

7. "RESIDENCE PREMISES" means the one, two, three or four-family dwelling, other structures and grounds located at the mailing address shown on the Declarations unless otherwise indicated.

8. "AIRCRAFT" means any machine or device capable of atmospheric flight, except models.

A1

NW-DRA000065

*Insuring Agreement* _____

9.  "ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.

10. "FOUNDATION" means a building's substructure including substructural walls, i.e., basement walls, crawl space walls, etc.

11. "BIOLOGICAL DETERIORATION OR DAMAGE" meaning damage or decomposition, breakdown, and/or decay of manmade or natural material due to the presence of fungi, algae, lichens, slime mold, bacteria, wet or dry rot, and any by-products of these organisms, however produced. Fungi as used above include, but are not limited to: yeasts, mold, mildew, rust, smuts, or fleshy fungi such as mushrooms, puffballs and coral fungi.

Other words are also defined. All defined words are in bold print.

A2

NW-DRA000066



# Section I
# Property Coverages

## Coverage Agreements

### COVERAGE A — DWELLING

We cover:

1. the dwelling on the residence premises used mainly as your private residence, including attached structures and attached wall-to-wall carpeting.

2. materials or supplies on or adjacent to the residence premises for use in construction, alteration or repair of:

   a) the dwelling; or

   b) Coverage B — Other Structures.

We do not cover land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE B — OTHER STRUCTURES

We cover other structures on the residence premises. They must be separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered other structures.

We do not cover:

1. other structures used in whole or in part for business purposes.

2. other structures rented or held for rental to anyone, unless used solely as a private garage.

3. land or the replacement, rebuilding, restoration, stabilization or value of such land.

### COVERAGE C — PERSONAL PROPERTY

We cover personal property owned or used by an insured at the residence premises. At your request, we will cover personal property owned by others. It must be on the part of the residence premises occupied by an insured. This extension of coverage does not increase the limit of liability.

Our limit of liability for personal property while away from the residence premises is 10 percent of the limit of liability for Coverage C or $1,000, whichever is greater. This 10 percent limitation does not apply to personal property:

1. removed from the residence premises due to a covered loss;

2. in transit to and from, or while in a newly acquired principal residence for 30 days. The 30 days start right after you begin to move the property; or

3. stored in a commercial storage facility up to 180 days. The 180 days start when you begin to move the property. A commercial storage facility does not include a self-storage unit.

**SPECIAL LIMITS OF LIABILITY.** Certain property is subject to special limits which do not increase the personal property limits of liability. The special limit, shown below for each numbered category, is the total limit for each loss for all property in that category.

B1

NW-DRA000067

*Section I — Property Coverages* _____

The following special limits apply only to theft losses:

1. $1,000 for jewelry, watches, furs, and precious and semi-precious stones.
2. $1,000 for guns, including accessories.
3. $1,000 for cameras (film, digital or video), including accessories. It does not include cameras used in business.
4. $2,500 for silverware, silver-plated ware, goldware, gold-plated ware, and pewterware.
5. $1,000 for tools not used in business. This limit does not apply to lawn and garden tools used to service the residence premises.

The following special limits apply to all covered losses:

6. $200 for money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins, stored value cards, smart cards, gift certificates and medals.
7. $1,000 for securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets.
8. $3,000 for computers, including hardware and software accessories, operating software, application software or other similar software, which can be replaced with like kind and quality on the retail market. This includes electronic storage media such as, but not limited to, tapes or diskettes. Stored data is not covered.
9. $500 for business property on the residence premises except computers including their hardware and software described above.
10. $1,000 for watercraft and outboard motors, including trailers, furnishings and equipment.
11. $1,000 for utility type trailers not used with watercraft.
12. $1,000 for manuscripts, regardless of the medium.

**PROPERTY NOT COVERED. We do not cover:**

1. articles separately described and specifically insured in this or any other insurance.
2. animals, birds or fish.
3. house or travel trailers.
4. motor vehicles or all other motorized land conveyances including the following, whether furnished by the manufacturer or an individual:
   a) their parts or equipment, whether attached to or separated from the motor vehicle or motorized land conveyance; or
   b) accessory equipment; or
   c) any device or instrument, including accessories or antennas, for the transmitting, receiving, recording or reproduction of sound or picture which can be operated by the power from the electrical system of the motor vehicle or motorized land conveyance. Tapes, discs, reels, cassettes or similar items, including carrying cases for any of these, while in a motorized land vehicle shall not be considered accessory equipment. The most we will pay is $200 in any one loss, regardless of the number of such items. The loss must be caused by a covered peril.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:
   a) used solely to service the insured's residence;
   b) designed to assist the handicapped; or
   c) a motorized golf cart while being operated to or from, or on the premises of a golf course.
5. aircraft and parts.
6. property of roomers, boarders, and other tenants. Personal property, at the residence premises, belonging to roomers and boarders related to an insured is covered.

NW-DRA000068

7.  property in an apartment regularly rented or held for rental to others by an insured.
8.  property rented or held for rental to others away from the residence premises.
9.  business property away from the residence premises.

## COVERAGE D — LOSS OF USE

We cover, subject to the coverage limit which is the total limit, all of the following:

1.  **Additional Living Expense.** If a covered loss requires you to leave the residence premises, we will pay the required increase in living expenses you incur to maintain your normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. Payment, will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2.  **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the residence premises rented to others or held for rental, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the residence premises is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3.  **Prohibited Use.** If a civil authority prohibits your use of the residence premises because of direct damage to neighboring premises by a peril insured against in this policy, we will pay the resulting loss, for up to two weeks while use is prohibited, for:
    a) Additional Living Expense; and
    b) Fair Rental Value.

We do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an insured's business, whether conducted on or off any insured location.

No deductible applies to this coverage.

# *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1.  **Debris Removal.** We will pay reasonable expense you incur removing debris of covered property, if the peril causing the loss is covered. This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. We will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property or restrict access. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2.  **Live Tree Debris Removal.** In the event of a loss, we will also pay the reasonable expense you incur for the removal of live tree debris from the residence premises, that does not cause damage to covered property or covered structures. The most we will pay is $500, regardless of the number of trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

B3

*Section I — Property Coverages* _____

3. **Reasonable Repairs.** We will pay reasonable cost you incur for necessary repairs made solely to protect covered property from further damage, if the peril causing the loss is covered. This expense is included in the limit of liability applying to the damaged property.

4. **Trees, Shrubs, Plants, and Lawns.** We cover trees, shrubs, plants, or lawns on the **residence premises** for loss caused by the following perils: fire and lightning; explosion; riot and civil commotion; aircraft; vehicles not owned or operated by a resident of the **residence premises**; vandalism or malicious mischief; collapse of a building; or, theft. Liability is limited to five (5) percent of the Coverage A limit of liability for all trees, shrubs, plants and lawns. It is limited to $500 for one tree, shrub or plant. This coverage may increase the limit of liability.

   We do not cover property grown for business purposes.

5. **Fire Department Service Charge.** We will pay up to the amount stated on the Declarations for your liability under contract or agreement for customary fire department charges. This applies when the charges result from the fire department being called to save or protect covered property from a covered peril. No deductible applies to this coverage.

6. **Property Removed.** Covered property removed from a premises because it is in danger from a covered peril is covered for direct loss from any cause. The property is covered while being removed and for 30 days while removed. After 30 days the property is covered for direct loss from a peril insured against. This does not change the coverage limit.

7. **Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage.** We will pay up to the amount stated on the Declarations for:

   a) the legal obligation of an **insured** for theft or unauthorized use of credit cards (including Electronic Fund Transfer Cards or Access Devices) issued to or registered in an **insured's** name. However, we do not cover use by a resident of **your** household, a person entrusted with the credit card (Electronic Fund Transfer Card or Access Device), or any person if an **insured** has not complied with all terms and conditions under which the credit card (Electronic Fund Transfer Card or Access Device) is issued.

   b) loss to an **insured** caused by forgery or alteration of a check or negotiable instrument.

   c) loss to an **insured** through good faith acceptance of counterfeit United States or Canadian paper currency.

   All losses resulting from a series of acts committed by any one person or groups of persons or in which any one person or groups of persons is concerned or implicated is considered one loss. This is regardless of the period of time over which the acts occur.

   We do not cover loss arising out of the **business pursuits**, or dishonesty of an **insured**.

   We do not cover loss arising out of identity theft or identity fraud including a covered act as outlined in subsections a), b), or c) of this section.

   No deductible applies to this coverage.

   We may make any investigation and settle any claim or suit as we decide is appropriate. **Our** obligation to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

   If a claim is made or a suit is brought against an **insured** for liability under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage, we will provide defense at our expense by counsel of our choice.

   We may defend at our expense an **insured** or an **insured's** bank against a suit for the enforcement of payment under the forgery coverage.

   Our duty to defend does not apply to identity theft or identity fraud.

NW-DRA000070

8.  **Inflation Protection Coverage.** If the Declarations show this coverage applies, we will adjust the limit of liability on the Declarations for Section I — Coverages. The limit of liability will change as the appropriate index, shown on the Declarations, changes.

    We will compare the latest available index to the index as of the effective date of this policy. We will adjust the limit of liability by the percentage change in the index. It is further agreed that the premium for this policy at the next anniversary date shall be for the adjusted limits of liability.

    If you request a change in the dwelling limit of liability, the effective date of this coverage will be amended to the effective date of that change.

    This coverage will not reduce our limit of liability during the current policy period below that for which premium has been paid.

9.  **Consequential Loss.** We cover insured personal property in a building at the **residence premises** for loss due to temperature change resulting from power interruption. There must be damage to the **residence premises** caused by a covered peril.

10. **Refrigerated Property.** If a power interruption occurs, off the **residence premises**, we will pay up to a maximum of $500 for loss of contents in a freezer or refrigerator due to temperature changes. **You** must use all reasonable means to protect the covered property from damage or this coverage is void.

11. **Lock Replacement.** We will pay up to $100 to replace the exterior door locks on **your residence premises** with deadbolt locks or to rekey the lock cylinders of existing deadbolt locks, whichever is less. This coverage applies only if the keys to **your residence premises** are stolen.

    No deductible applies to this coverage.

12. **Collapse.** We cover direct physical loss to covered property described in Coverages A, B and C caused by the complete **collapse** of a building structure or any part of a building structure. **Collapse** means an abrupt falling down or caving in of a building or other structure or any part of a building or other structure with the result that it cannot be occupied for its intended purpose. A building or other structure or part of a building or other structure is not considered in a state of collapse if:

    a)  it is standing but in danger of falling down or caving in;
    b)  it is standing but has separated from any other part of the building;
    c)  it is standing even if it shows signs of settling, cracking, shifting, bulging, sagging, bowing, bending, leaning, shrinkage, or expansion.

    The **collapse** must be sudden and accidental and caused by one or more of the following:

    a)  one of the Coverage C — Personal Property perils insured against;
    b)  hidden decay of a supporting or weight bearing building structural member;
    c)  hidden insect or vermin damage of a supporting or weight bearing building structural member;
    d)  weight of:
        (1) contents, equipment, animals or people; or
        (2) rain, ice, sleet or snow which collects on the roof; or
    e)  defective material or methods used in the construction, repair or remodeling or renovation if the **collapse** occurs in the course of work being done.

    The presence of any decay, insect or vermin damage must be unknown to an **insured** prior to **collapse**.

    Loss to an awning, fence, patio, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, or dock is not included under items b), c), d), or e) unless the loss is a direct result of the collapse of a building.

    The limit of liability applying to the covered property is not increased by this coverage.

B5

*Section I — Property Coverages* _____

13. **Household Supplies.** We will pay up to a maximum of five (5) percent of the Coverage A — Dwelling coverage limit for direct physical loss to property described in Coverages A and B arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage, leakage, or escape of household supplies on the residence premises. Household supplies includes items currently in use or in your possession at the residence premises, in normal household quantities such as household cleaning supplies, pesticides, and other similar items.

Section I — Property Exclusion 1.j) does not apply to any loss covered under this Additional Property Coverage, Household Supplies. In no event, however, will we ever cover:

a) loss arising out of materials containing asbestos, lead, formaldehyde, fuel or petroleum products; or

b) any fee, assessment or expense of any governmental authority; or

c) loss arising out of household supplies possessed or used:

    (1) for business purposes;

    (2) for illegal purposes;

    (3) by contractors; or

    (4) on driveways or walkways.

14. **Biological Deterioration or Damage Clean Up and Removal.** In the event that a covered cause of loss results in biological deterioration or damage to property covered under Coverages A, B, and C, we will pay, up to the amount shown on the Declarations, for:

a) the cost to clean up, remove and dispose of the biological deterioration or damage to covered property;

b) the cost to tear out and replace any part of the building or other covered property needed to gain access to the biological deterioration or damage;

c) the cost of testing which is performed in the course of clean up and removal of the biological deterioration or damage from the residence premises; and

d) additional living expenses you may incur, as outlined under Coverage D, that results from items a), b) or c) above.

The coverage amount shown on the Declarations for this Additional Property Coverage is the most we will pay for all loss or costs payable under this Additional Coverage. Such costs are payable only if you report the biological deterioration or damage to us within 180 days of having first discovered the biological deterioration or damage.

The covered cause of loss that causes or results in biological deterioration or damage to covered property must have occurred during the policy period.

This is an additional amount of coverage.

NW-DRA000072

# *Perils Insured Against*
(Section I)

## *Covered Causes of Loss*

### COVERAGE A — DWELLING and
### COVERAGE B — OTHER STRUCTURES

We cover accidental direct physical loss to property described in Coverages A and B except for losses excluded under Section I — Property Exclusions.

### COVERAGE C — PERSONAL PROPERTY

We cover accidental direct physical loss to property described in Coverage C caused by the following perils except for losses excluded under Section I — Property Exclusions:

1. fire or lightning.

2. windstorm or hail.

   Direct loss caused by rain, snow, sleet, sand or dust driven through roof or wall openings made by direct action of wind, hail, or other insured peril is covered. This peril includes loss to:
   a) rowboats and canoes inside or outside a building.
   b) other watercraft and outboard motors, including their trailers, furnishings, and equipment, while inside a fully enclosed building.

3. explosion.

4. riot or civil commotion.

5. aircraft, missiles propelled and spacecraft.

6. vehicles.

7. sudden and accidental damage from smoke. This does not include loss due to smoke from farm or industrial operations.

8. vandalism and malicious mischief.

   This peril does not include loss to property on the **residence premises** if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

9. theft, including attempted theft. Loss of property from a known location when it is likely the property was stolen is covered. Loss of precious or semi-precious stones from their settings is not covered. This peril does not include loss caused by any theft:
   a) committed by an **insured**.
   b) in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied.
   c) of money, securities, stamps, jewelry, watches, gems, articles of gold, silver, or platinum from any part of a residence premises usually occupied solely by an **insured** while rented to other than an **insured**.

C1

NW-DRA000073

*Section I – Perils Insured Against*

This peril does not include loss caused by theft that occurs away from the residence premises of:
a) property while at any other residence owned by, rented to, or occupied by an insured, except while an insured is temporarily living there. Property of an insured student is covered at a residence away from home if the student has been there within 45 days prior to the loss.
b) trailers and campers.
c) watercraft and outboard motors, including their furnishings and equipment.

10. falling objects. This peril does not include loss to:
a) property in a building, unless the roof or an exterior wall of the building is first damaged by a falling object.
b) the falling object itself.

11. weight of ice, snow, or sleet which causes damage to property in a building.

12. accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance. This peril does not include loss:
a) caused by or resulting from water that backs up from outside the dwelling's plumbing system and enters through sewers or drains; or water entering or overflowing a sump pump, sump pump well or other system designed to remove subsurface water drained from the foundation area except as may be provided elsewhere in this policy or by endorsement.
b) due to continuous or repeated seepage or leakage of water, steam or moisture which occurs over a period of time and results in deterioration, corrosion, or rust.
c) due to freezing except as provided by the peril of freezing.
d) to the system or appliance from which the water, steam or moisture escaped.

13. accidental electrical damage to electrical appliances, devices, fixtures and wiring. This peril does not include loss to transistors and tubes including picture tubes.

14. sudden and accidental tearing apart, cracking, bursting, burning or bulging of:
a) a steam or water heating system.
b) a fire protective sprinkler system.
c) an air conditioning system.
d) an appliance for heating water.
Freezing is not covered under this peril.

15. freezing of a plumbing, heating, air conditioning, or automatic fire protective sprinkler system or of a household appliance. This peril does not include loss on the residence premises while unoccupied, vacant or under construction unless you have used reasonable care to:
a) maintain heat in the building; or
b) shut off the water supply and drain the system and appliances of water.

NW-DRA000074

# *Property Exclusions*

(Section I)

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another peril or event contributed concurrently or in any sequence to cause the loss.

   a) Earth Movement and Volcanic Eruption. Earth movement means: earth movement due to natural or unnatural causes, including mine subsidence; earthquake; landslide; mudslide; earth shifting, rising or sinking. Volcanic eruption means: eruption; or discharge from a volcano.

   Resulting direct loss by fire, explosion, theft or breakage of glass which is part of the building is covered.

   b) Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

      (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

      (2) water or water-borne material which:

         (a) backs up through sewers or drains from outside the dwelling's plumbing system; or

         (b) overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

      (3) water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

   Resulting direct loss by fire, explosion, or theft is covered.

   c) Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at the time of and after a loss, or when property is endangered by a covered peril.

   d) War or Warlike Acts. This includes insurrection, rebellion or revolution. Discharge of a nuclear weapon is considered a warlike act even if accidental.

   e) Nuclear Hazard, meaning any nuclear reaction, discharge, radiation, or radioactive contamination, all whether controlled or not or however caused, and any consequence of any of these. Loss caused by nuclear hazard is not considered loss caused by fire, smoke, or explosion, whether these perils are specifically named in or otherwise included as a covered peril in Section I.

   f) Increased Hazard, meaning any loss occurring while hazard is increased by a means within the control and knowledge of an insured.

   g) Intentional Acts, meaning loss resulting from an act committed by or at the direction of an insured that may reasonably be expected to result from such acts, or is the intended result from such acts. Intentional acts include criminal acts. Such acts exclude coverage for all insureds.

   h) Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

   i) Collapse, except as provided by Section I — Additional Property Coverages — Collapse.

NW-DRA000075

Section I — Property Exclusions

> j) Contamination or Pollution, meaning any interior or exterior presence or use, discharge, dispersal, release, migration, seepage, leakage, or escape of:
>
>> (1) solid, liquid, gaseous, or thermal irritants or contaminants, except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace;
>>
>> (2) vapors, soot, fumes, acids, alkalis, toxic chemicals, toxic liquids, toxic gases, or waste;
>>
>> (3) fuel oil and other petroleum products; or
>>
>> (4) any other waste materials or other irritants, contaminants or pollutants.
>
> k) Loss Assessments, unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.
>
> l) Government Acts, meaning any loss caused by seizure, destruction, or confiscation by order of any government or public entity.
>
> Loss caused by acts ordered by any government or public entity at the time of a fire to prevent its spread is covered if the loss caused by fire would be covered under this policy.
>
> m) Biological deterioration or damage, except as provided by Section I — Additional Property Coverages — Biological Deterioration or Damage Clean Up and Removal.
>
> n) Windstorm or hail to any:
>
>> (1) structure, other than a building, including the supports and screens, with a roof-like covering of cloth, metal, plastic or fiberglass, whether or not the structure is attached to a building.
>>
>> (2) screens, including their supports, around a pool, patio or other areas.
>>
>> (3) property lines and similar walls, including seawalls, greenhouses, hothouses, slathouses, trellis, pergolas, cabanas and outdoor equipment used to service the residence premises.
>>
>> (4) structure, including property in or on the structure, which is in whole or part, in or over water.

2. We do not cover loss to any property resulting directly or indirectly from the following if another excluded peril contributes to the loss:

> a) A fault, weakness, defect or inadequacy in the:
>
>> (1) specifications, planning, zoning;
>>
>> (2) design, workmanship, construction, materials;
>>
>> (3) surveying, grading, backfilling;
>>
>> (4) development or maintenance;
>
> of any property on or off the residence premises, whether intended or not.
>
> b) Acts or decisions of any person, group, organization or governmental body, whether intentional, negligent, wrongful or without fault. This includes the conduct or failure to act or decide by any of the aforementioned.
>
> c) Weather conditions, if contributing in any way with an exclusion listed in paragraph 1. of this Section.

3. We do not cover loss to property described in Coverages A and B resulting directly from any of the following:

> a) freezing of a plumbing, heating, air conditioning or automatic fire protection sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing.

D2

Case 1:08-cv-00690-LTS-RHW   Document 102   Filed 09/01/2009   Page 35 of 98

Section I — Property Exclusions

This exclusion applies only while the dwelling is vacant, unoccupied or being constructed unless you have used reasonable care to:

   (1) maintain heat in the building; or

   (2) shut off the water supply and drained the system and appliance of water.

b) freezing, thawing, pressure or weight of water, snow or ice, whether driven by wind or not, to a:

   (1) fence, pavement, patio or swimming pool;

   (2) **foundation**, retaining wall, or bulkhead; or

   (3) pier, wharf or dock.

c) theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied.

d) vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling under construction is not considered vacant.

e) continuous or repeated seepage or leakage of water or steam over a period of time from a heating, air conditioning or automatic protective sprinkler system; household appliance; or plumbing system that results in deterioration or rust. Continuous or repeated seepage or leakage from, within, or around any shower stall, shower tub, tub installation or other plumbing fixture, including their walls, ceilings or floors, is also excluded.

   If loss caused by water or steam is not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair or replace the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped.

f) (1) wear and tear, marring, deterioration;

   (2) inherent vice, latent defect, mechanical breakdown;

   (3) smog or rust;

   (4) smoke from agricultural smudging or industrial operations;

   (5) release, discharge, or dispersal of contaminants or pollutants;

   (6) settling, cracking, shrinking, bulging or expansion of pavements, patios, **foundations**, walls, floors, roofs or ceilings;

   (7) birds, vermin, rodents, insects or domestic animals. Resulting breakage of glass constituting part of a covered building is covered;

   (8) root growth, movement or action; or

   (9) mismatch of color between undamaged material and new material used to replace faded, weathered or oxidized damaged material.

   (10) mismatch between undamaged material and new material used to repair or replace damaged material due to outdated, obsolete or discontinued products.

   If any of items f)(1) through (8) cause water to escape from a plumbing, heating, air conditioning or fire protective sprinkler system or household appliance, we cover loss caused by the water not otherwise excluded. We also cover the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water escaped.

Under exclusions 3.a) through 3.f), any loss that follows is covered unless it is specifically excluded.

D3

NW-DRA000077

# *Property Conditions*

(Section I)

1.  **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

    a)  to the insured for more than the insured's interest.

    b)  for more than the limit of liability.

2.  **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the insured. We pay for covered loss above the deductible amount.

3.  **Your Duties after Loss.** In case of loss, **you** must:

    a)  give immediate notice to us or our agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to us or our agent within 6 months of the loss event.

    b)  protect the property from further damage. **You** must make repairs required to protect the property and keep a record of repair expenses.

    c)  as often as we reasonably require:

        (1)  show us the damaged property; and

        (2)  provide records and documents we request and permit **us** to make copies.

        (3)  submit to examinations under oath and sign same. At **your** or **our** request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

    d)  submit to **us**, within 60 days after we request, **your** signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

        (1)  the time and cause of loss.

        (2)  interest of the insured and all others in the property involved and all liens on the property.

        (3)  other insurance that may cover the loss.

        (4)  changes in title or occupancy of the property during the term of the policy.

        (5)  specifications of any damaged property and detailed estimates for repair of damage.

        (6)  a list of damaged personal property showing in detail the quantity, description, **actual cash value**, and amount of loss. Attach all bills and receipts that support the figures.

        (7)  receipts for additional living expenses and records supporting the fair rental value loss.

        (8)  evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4.  **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by **us** paying:

    a)  **actual cash value** at the time of loss, the amount not to exceed **actual cash value**, needed to repair or replace:

        (1)  personal property and structures that are not buildings;

        (2)  carpeting (including wall-to-wall) and cloth awnings;

NW-DRA000078

*Section I — Property Conditions* _____

    (3) outdoor antennas, whether or not attached to the building;

    (4) home appliances, unless built in as a part of the dwelling.

  b) the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:

    (1) we will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.

    (2) when **you** claim loss or damage to buildings on an **actual cash value** basis. **You** may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.

    (3) if **you** choose not to repair or replace, we will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.

5. **Loss Payment.** We will pay all losses as outlined in the above Loss Settlement Condition 4. subject to the following:

  a) In case of loss to a pair or set, we may elect to:

    (1) repair or replace a part to restore the pair or set to its value before the loss; or

    (2) pay the difference between actual cash value of the property before and after the loss.

  b) At our option, we may repair or replace any part of the damaged property with equivalent property, providing we give you written notice within 30 days after receiving your signed, sworn proof of loss.

  c) We will pay **you** unless some other person is named in this policy to receive payment. Payment will be made within 60 days after we receive **your** proof of loss and:

    (1) reach agreement with **you**; or

    (2) there is an entry of a final judgment; or

    (3) there is a filing of an appraisal award with **us**.

  d) After we have paid for a loss by theft or disappearance of covered property, we have the right to all or part of any recovered property. **You** must protect these rights and inform **us** of any recovery. If **you** wish to retain the recovered property, our loss payment will be adjusted by the value of such property.

  e) After we have paid for a loss, we have the right to all or part of any salvageable property. We may permit **you** to keep the damaged property but we will reduce the amount of the loss paid to **you** by the value of the retained damaged property.

6. **Appraisal.** If **you** and we fail to agree on the amount of loss, either can demand that the amount be set by appraisal. If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers cannot agree on an umpire within 15 days, **you** or we can ask a judge of a court of record in the state where the **residence premises** is located to select a competent, impartial umpire.

The appraisers will then set the amount of loss. If the appraisers submit a written report of an agreement to **us**, the amount agreed upon will be the amount of the loss. If the appraisers fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by any two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire

NW-DRA000079

will be paid equally by you and us. Any fees for expert witnesses or attorneys will be paid by the party who hires them. Neither the umpire nor the appraisers will have a financial interest that is conditioned on the outcome of the specific matter for which they are called to serve.

This is not a provision providing for or requiring arbitration. The appraisers and umpire are only authorized to determine the **actual cash value, replacement cost, or cost to repair** the property that is the subject of the claim. They are not authorized to determine coverage, exclusions, conditions, forfeiture provisions, conditions precedent, or any other contractual issues that may exist between you and us. The appraisal award cannot be used by either you or us in any proceeding concerning coverage, exclusions, forfeiture provisions, conditions precedent, or other contractual issues. However, once contractual liability is admitted or determined, the appraisal award is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions. Any action must be started within one year after the date of loss or damage.

9. **Abandonment of Property.** We need not accept property abandoned by an insured.

10. **Mortgage Clause.** The word "mortgagee" includes trustee. If a mortgagee is named in this policy, a loss payable under Coverage A or B will be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment will be the same as the order of precedence of the mortgages. If we deny your claim, that denial will not apply to a valid claim of the mortgagee, if the mortgagee:

    a) notifies us of change in ownership, occupancy, or substantial change in risk of which the mortgagee is aware.

    b) pays premium due under this policy on our demand, if you neglected to pay the premium.

    c) submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Your Duties after Loss, Loss Payment, Appraisal, and Suit Against Us apply to the mortgagee.

    If we cancel the policy, we will notify the mortgagee at least 10 days before the cancellation takes effect. If we pay the mortgagee for loss and deny payment to **you:**

    a) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    b) at our option, we may pay to the mortgagee the whole principal on the mortgage plus accrued interest. In this event, we will receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt. Subrogation will not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

11. **No Benefit to Bailee.** This insurance does not benefit a person or organization that is caring for or handling your property for a fee.

12. **Glass Replacement.** We will replace covered glass using safety glazing materials when required by ordinance or law.

NW-DRA000080



# Section II
## Liability Coverages

### ADDITIONAL DEFINITIONS APPLICABLE TO THESE COVERAGES

For purposes of these coverages only:

1. "BODILY INJURY" means bodily harm, including resulting care, sickness or disease, loss of services or death. Bodily injury does not include emotional distress, mental anguish, humiliation, mental distress or injury, or any similar injury unless the direct result of bodily harm.

2. "PROPERTY DAMAGE" means physical injury to or destruction of tangible property. This includes its resulting loss of use.

3. "RESIDENCE EMPLOYEE" means an employee of an insured who performs duties in connection with maintenance or use of the residence premises. This includes household or domestic services or similar duties elsewhere not in connection with the business of an insured.

4. "OCCURRENCE" means bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition. The occurrence must be during the policy period.

5. "INSURED" means you and the following persons if residents of your household at the residence premises:
   a) your relatives;
   b) any other person under age 21 and in the care of you or your relatives;
   c) a person or entity legally responsible for animals or covered watercraft that are either owned by or in the custody of an insured. A person or entity using or having custody of these animals or watercraft in the course of business, or without permission of the owner, is not an insured.
   d) any person operating, utilizing, or maintaining a covered vehicle while engaged in your employment or that of an insured.

## Coverage Agreements

### COVERAGE E — PERSONAL LIABILITY

We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. We will provide a defense at our expense by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability. Damages include prejudgment interest awarded against the insured.

This coverage is excess over other valid and collectible insurance. It does not apply to insurance written as excess over the applicable limits of liability.

NW-DRA000081

*Section II — Liability Coverages* _____

## COVERAGE F — MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. This coverage does not apply to you. It does not apply to regular residents of your household. It does apply to residence employees. Payment under this coverage is not an admission of our or an insured's liability. This coverage applies as follows:

1. to a person on the insured location with consent of an insured.

2. to a person off the insured location, if the bodily injury:
   a) arises out of a condition in the insured location.
   b) is caused by the activities of an insured.
   c) is caused by a residence employee of an insured.
   d) is caused by an animal owned by or in the care of an insured.

# *Additional Liability Coverages*

We will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.

1. **Claims Expenses.** We will pay:
   a) expenses we incur and costs taxed against an insured in a legal action we defend.
   b) premiums on bonds required in a suit we defend. This does not include bond amounts greater than the Coverage E limit of liability. We are not obligated to apply for or furnish a bond.
   c) reasonable expenses incurred by an insured at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for assisting us in the defense of a claim or suit.
   d) post-judgment interest. This must accrue after entry of the judgment. It must accrue before we pay or deposit in court that part of the judgment which does not exceed the coverage that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

3. **Damage to Property of Others.** We will pay for property damage to property of others caused by an insured regardless of legal liability. We will pay up to $1,000 per occurrence, but not more than the smallest of the replacement cost or the cost to repair the damaged property. We will not pay for property damage:
   a) to property covered under Section I.
   b) caused intentionally by an insured who is age 13 or older.
   c) to property owned by or rented to an insured, a tenant of an insured, or a resident in your household.
   d) arising out of:
      (1) business pursuits.
      (2) an act or omission in connection with a premises owned, rented, or controlled by an insured, other than an insured location.
      (3) the ownership, maintenance or use of a motor vehicle, aircraft, or watercraft.

NW-DRA000082

4.  **Accidental Death Benefits.** We will pay $500 ($2,000 if an adult) to the estate of the deceased for accidental loss of life of an **insured**. Death must be solely caused by accident. The adult benefit applies to an **insured** age 18 or older. Accident means an event which is sudden, unforeseen, and unintended. Death must be within 90 days of the accident. It must result directly from **bodily injury** suffered on the **residence premises**. Death must be independent of other causes. Coverage ends for an **insured** on the nearest policy renewal date to such **insured's** 65th birthday. We will not pay where death results directly or indirectly, wholly or in part, from any of the following causes:

    a)  disease, bodily or mental illness;

    b)  medical or surgical treatment for disease, bodily or mental illness;

    c)  infection unless it results from visible wounds. It must be the result of an accident which happened at the **residence premises**;

    d)  suicide, whether the deceased was sane or insane;

    e)  sensitivity to drugs or an overdose of drugs;

    f)  taking poison or inhaling gas, voluntarily;

    g)  war or an act of war, declared or undeclared. It does not matter whether the **insured** is in military service or not.

NW-DRA000083

# *Liability Exclusions*

(Section II)

1.  Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to bodily injury or property damage:

    a)  caused intentionally by or at the direction of an insured, including willful acts the result of which the insured knows or ought to know will follow from the insured's conduct.

    This exclusion 1.a) does not apply to corporal punishment of pupils.

    b)  caused by or resulting from an act or omission which is criminal in nature and committed by an insured.

    This exclusion 1.b) applies regardless of whether the insured is actually charged with, or convicted of a crime.

    c)  arising out of business pursuits of an insured.

    This exclusion 1.c) does not apply to:

    (1)  activities normally considered non-business.

    (2)  occasional or part time self-employed business pursuits of an insured under age 19 years old (age 23 if a full-time student).

    (3)  an office, school, studio, barber or beauty shop on the residence premises if noted on the Declarations.

    (4)  home care services provided by or at the direction of an insured on or from the residence premises if noted on the Declarations.

    d)  arising out of the rental or holding for rental of any part of any premises by an insured. Exceptions, if any, are noted on the Declarations.

    This exclusion 1.d) does not apply to the rental or holding for rental of part of your residence premises:

    (1)  occasionally for the exclusive use as a residence.

    (2)  unless intended as a residence by more than two roomers or boarders.

    (3)  as a private garage.

    e)  arising out of any professional liability except teaching.

    f)  arising out of premises owned or rented to an insured but not an insured location.

    This exclusion 1.f) does not apply to bodily injury to any residence employee arising out of and in the course of employment by an insured.

    g)  arising out of the ownership, maintenance or use of, or loading or unloading of; entrustment or the negligent supervision by an insured of; or statutorily imposed liability on an insured related to the use of:

    (1)  an aircraft.

    (2)  a motor vehicle or all other motorized land conveyance owned by or operated by, or rented or loaned to an insured.

H1

NW-DRA000084

This exclusion 1.g)(2) does not apply to:

(a) a vehicle owned by an **insured** and designed for recreation off public roads while on an **insured location**.

(b) a motorized golf cart while being operated to or from, or on the premises of a golf course.

(c) a vehicle not subject to motor vehicle registration which is:
   i)   used to service an **insured's residence**; or
   ii)  designed for assisting the handicapped.

(d) a vehicle in dead storage on an **insured location**. Dead storage means physically prepared for long term storage.

(e) a boat, camp, home or utility trailer not being towed or carried on a vehicle defined in general Definition 6.a).

(f) **bodily injury** to any residence employee arising out of and in the course of employment by an **insured**.

(3) a watercraft owned or operated by, or rented or loaned to an **insured**:

(a) if the watercraft is a personal watercraft powered by an internal combustion engine and utilizing a water jet pump or has inboard, inboard-outdrive or outboard motor power of more than 50 horsepower.

(b) if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length.

(c) while rented to others.

(d) while being used to carry persons or property for a fee.

(e) while being used without an **insured's** permission.

(f) while being used in an official race or speed test. This exclusion does not apply to sailboats.

(g) if it is an airboat, air cushion or similar type watercraft.

This exclusion 1.g)(3) does not apply:

(1) while the watercraft is stored.

(2) when an **insured** rents or borrows a nonowned outboard motor boat for eight (8) or less consecutive days.

(3) to **bodily injury** to any residence employee arising out of and in the course of employment by an **insured**.

h) caused by war or warlike acts, including insurrection, rebellion or revolution. Discharge of a nuclear weapon is a warlike act, even if accidental.

i) resulting from an **insured** transmitting a communicable disease.

j) arising from the ingestion, inhalation or absorption of lead or lead compounds.

k) arising out of any interior or exterior presence, use, discharge, dispersal, release, migration, seepage or escape of:

(1) solid, liquid, gaseous, or thermal irritants or contaminants, including smoke (except smoke arising solely from a hostile fire or the sudden and accidental discharge from a fireplace or furnace), vapors, soot, fumes, acids, alkalis, toxic chemicals and wastes, toxic liquids or toxic gases;

NW-DRA000085

(2) fuel oil and other petroleum products; or

(3) any other waste materials or other irritants, contaminants or pollutants.

This exclusion 1.k) does not apply to bodily injury arising out of routine lawn and garden care of an insured location.

l) resulting from acts or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged or threatened.

m) resulting from the use, sale, manufacture, delivery, transfer or possession by a person of a controlled substance(s) as defined by Federal Food and Drug Law (21 U.S.C.A Sections 811 and 812). Controlled substances include but are not limited to: cocaine; LSD; marijuana; and all narcotic drugs.

This exclusion 1.m) does not apply to the legitimate use of prescription drugs by a person following orders of a licensed physician.

n) bodily injury to a person eligible to receive any benefits required to be provided or voluntarily provided by any insured under:

(1) a workers' compensation;

(2) an unemployment compensation;

(3) a non-occupational or occupational disease;

(4) a disability benefits;

or any similar law.

o) caused by any of the following animals owned by or in the care of an insured:

(1) the following types of pure bred dogs:

(a) American Staffordshire Terriers, American Pit Bull Terriers, or Staffordshire Bull Terriers, all commonly known as Pit Bulls;

(b) Doberman Pinschers;

(c) Rottweilers;

(d) Chow Chows; or

(e) Presa Canarios;

(2) wolf hybrids;

(3) trained attack or guard dogs;

(4) any fighting dog or dog bred for fighting; or

(5) any dog with a prior history of:

(a) causing bodily injury to a person; or

(b) attacking or biting another animal;

established through insurance claims records, or through the records of local public safety, law enforcement or other similar regulatory agency.

(6) any non-licensed dog if a license is required by state, county, municipality or local law, regulation or ordinance.

p) arising out of biological deterioration or damage.

2. Coverage E — Personal Liability does not apply to:

a) liability under any loss assessment contract or agreement unless optional loss assessment coverage is purchased; and then only up to the limit of liability shown for that optional coverage.

b) liability assumed under any unwritten contract or agreement, or by contract or agreement in connection with any business of an insured.

c) property damage to property owned, produced or distributed by an insured.

H3

*Section II — Liability Exclusions* _____

    d)  **property damage** to property rented to, occupied or used by, or in the care of an **insured.**

       This exclusion 2.d) does not apply to **property damage:**

       (1)  caused by fire, smoke, or explosion; or

       (2)  to house furnishings or premises rented to, occupied or used by or in the care of an **insured** for which the **insured** is legally liable.

    e)  **bodily injury** or **property damage** for which an **insured** under this policy is also an **insured** under a nuclear energy liability policy; or would be an **insured** but for its termination upon exhaustion of its limit of liability.

    f)  **bodily injury** to an **insured** as defined in Section II — Liability Definitions 5.a) and 5.b).

3.  Coverage F — Medical Payments to Others does not apply to **bodily injury:**

    a)  **to a residence employee** if it occurs off the **insured location.** It does apply if the **bodily injury** arises out of the **residence employee's** employment by an **insured.**

    b)  from a nuclear reaction, radiation or radioactive contamination, or a consequence of any of these. It does not matter that these are controlled or uncontrolled.

NW-DRA000087

# *Liability Conditions*

(Section II)

1. **Limits of Liability.** Our total liability under Coverage E for all damages resulting from one occurrence will not exceed the limit for Coverage E shown on the Declarations. This is true regardless of the number of insureds, claims made or persons injured.

   Our total liability under Coverage F for all medical expense for bodily injury to one person resulting from one accident will not exceed the limit for Coverage F shown on the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each insured. This condition does not increase our limit of liability for one occurrence.

3. **Duties after Loss.** In case of a loss, you must perform the following duties. You must cooperate with us in seeing that these duties are performed.

   a) give notice to us or our agent as soon as practicable setting forth:
      (1) identity of the policy and insured.
      (2) time, place, and facts of the accident or occurrence.
      (3) names and addresses of the claimants and witnesses.

   b) immediately forward to us every document relating to the accident or occurrence.

   c) at our request, assist in:
      (1) making settlement.
      (2) enforcing a right of contribution or indemnity against a person or entity who may be liable to an insured.
      (3) conducting suits, and attending hearings and trials.
      (4) giving evidence and asking witnesses to attend.

   d) under the coverage — Damage to Property of Others:
      (1) submit to us, within 60 days after the loss, a sworn proof of loss; and
      (2) exhibit the damaged property, if within the insured's control.

   e) the insured shall not, except at the insured's own cost, voluntarily make a payment, assume an obligation, or incur an expense other than for first aid to others at the time of the bodily injury.

   f) Under the coverage — Accidental Death Benefits:
      (1) you agree to authorize us to receive medical reports and copies of supporting records;
      (2) we have the right and opportunity to make an autopsy where not forbidden by law.

4. **Duties of an Injured Person — Coverage F — Medical Payments to Others.** The injured person or someone on behalf of the injured person will:

   a) give us written proof of claim, under oath if required, as soon as possible.

   b) authorize us to obtain copies of medical reports and records. The injured person will submit to physical examination by a physician we select. This may be as often as we require with good reason.

5. **Suit Against Us.** No action can be brought against us unless there has been full compliance with the policy provisions. No one has a right to join us as party to an action against an insured. No action with respect to Coverage E can be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

6. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an insured will not relieve us of our obligations under this policy.

NW-DRA000088

# *Policy Coverage Options*

The following options apply only if they are indicated on the Declarations. They are subject to all provisions of this policy except as modified herein.

**Option A.   Jewelry.** The coverage for jewelry, watches and furs is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1.   wear and tear or mechanical breakdown.

2.   gradual deterioration or inherent vice.

3.   insects or vermin.

4.   losses excluded under Section I — Property Exclusions that apply to personal property.

**Option B.   Guns.** The coverage for guns, including accessories is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1.   wear and tear, mechanical breakdown or gradual deterioration.

2.   insects or vermin.

3.   refinishing, renovating or repairing.

4.   dampness or temperature extremes, rust, fouling or explosion.

5.   inherent defect or faulty manufacture.

6.   breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.

7.   losses excluded under Section I — Property Exclusions that apply to personal property.

**Option C.   Cameras.** The coverage for cameras (film, digital or video), including accessories, is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1.   wear and tear, mechanical breakdown or gradual deterioration.

2.   renovating or repairing, rust, dampness or temperature extremes.

3.   inherent defect or faulty manufacture, insect or vermin.

4.   breakage, marring, scratching, tearing, or denting; unless caused by fire, thieves or vehicular accident.

5.   losses excluded under Section I — Property Exclusions that apply to personal property.

The limits of liability for property covered by **Options A, B or C** are amended as follows:

The option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against.  It is the total limit, with a $1,000 maximum for any one item, for loss by:

1.   theft; or

2.   a covered peril other than the Coverage C — Personal Property Perils Insured Against.

K1

NW-DRA000089

*Policy Coverage Options* _____

**Option D.** **Silverware.** The coverage and limits of liability for silverware, silver-plated ware, goldware, gold-plated ware and pewterware is amended as follows:

We will pay for accidental direct physical loss except that caused by:

1.  wear and tear, mechanical breakdown or gradual deterioration.
2.  renovating or repairing, rust, dampness or temperature extremes.
3.  inherent defect or faulty manufacture, insect or vermin.
4.  breakage, marring, scratching, or denting; unless caused by fire, thieves or vehicular accident.
5.  losses excluded under Section I — Property Exclusions that apply to personal property.

This option's limit of liability is shown on the Declarations. Other than loss by theft, it is in addition to the Coverage C — Personal Property limit of liability for losses by a Coverage C — Personal Property Perils Insured Against. It is the total limit for loss by:

1.  theft; or
2.  a covered peril other than the Coverage C — Personal Property Perils Insured Against.

**Option E.** **Tools.** The special limit of liability applying to tools is increased to the amount shown on the Declarations.

**Option F.** **Money.** The special limit of liability on money, bank notes, bullion, gold (other than goldware), silver (other than silverware), platinum, coins, stored value cards, smart cards, gift certificates and medals is increased to the amount shown on the Declarations.

**Option G.** **Securities.** The special limit of liability on securities, accounts, bills, deeds, documents, evidences of debt, letters of credit, notes other than bank notes, passports, stamps and tickets is increased to the amount shown on the Declarations.

**Option H.** **Computers.** The special limit of liability on computers, including hardware and software accessories is increased to the amount shown on the Declarations.

**Option I.** **Business Property.** The special limit of liability on business property is increased to the amount shown on the Declarations. It includes up to $250 of coverage for business property off the residence premises.

**Option J.** **Extended Replacement Cost Coverage.** Option J does not increase the policy's limit of liability.

1.  Loss to the following property shall be settled at replacement cost or the full cost to repair without deduction for depreciation:

    a)  property covered under Coverage C — Personal Property.

    b)  outdoor antennas, carpeting (including wall-to-wall), home appliances, and awnings.

    "Replacement cost" means the cost, at the time of loss, of a new article identical to the one damaged or stolen. When the identical article is no longer available, replacement cost shall mean the cost of a new article similar to that damaged or stolen. It must be of comparable quality and usefulness.

    Our liability for loss under this coverage shall be the lesser of:

    a)  replacement cost at the time of loss;

    b)  full cost of repair;

K2

c) any special limits of liability described in this policy or attached by endorsement; or

d) our cost to repair or replace any part of the damaged or stolen property with equivalent property.

We will not pay more than the actual cash value of the damaged or stolen property until it has been repaired or replaced.

2. You may elect not to repair or replace some or all of the damaged or stolen property. In this event, settlement will be based on the smallest of the repair cost, replacement cost, any special limit of liability that applies or the actual cash value of those items. If you later decide to repair or replace those items, you may make an additional claim within 180 days after the loss for any difference between the amount paid and the amount payable if repaired or replaced. The actual repair or replacement of the property need not be completed within the 180 days, but payment will not be made until proof of repair or replacement is provided to us.

3. This coverage does not apply to:

a) manuscripts, antiques or fine arts which by their inherent nature cannot be replaced with new articles.

b) memorabilia, souvenirs, collectors' items, and other items whose age and history contribute substantially to their value.

c) property not maintained in good or workable order.

d) property which is obsolete or useless to you at the time of loss.

The actual cash value provisions of this policy apply to the preceding items 3.a) through 3.d).

**Option K.  Replacement Cost Plus (Dwelling) (Increased Coverage A Limit).** When a loss covered by this policy occurs to the dwelling in which you live, located at the residence premises, we will settle losses, subject to applicable deductibles, according to the policy provisions.

If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A — Dwelling Limit of Liability, we will pay up to a maximum of an additional 20% of the Coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the residence premises on the Declarations. This coverage does not increase or affect any other coverage limit or limit of liability in this policy. This additional payment is subject to the following provisions:

**SPECIAL CONDITIONS:**

**You must:**

1. insure the dwelling in which you live, located at the residence premises, to 100% of the cost to repair or replace it; and

2. accept the annual adjustment in the Coverage A — Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and

3. notify us within 90 days of the start of any physical improvements or additions which increase the replacement cost value of your dwelling by $5,000 or more and pay any additional premium due.

**You must comply with these special conditions or we will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.**

K3

NW-DRA000091

*Policy Coverage Options* _____

**ORDINANCE OR LAW EXCLUSION**

The additional amount provided by this option does not cover any increased cost resulting from enforcement of any ordinance or law regulating the construction, use or repair of any property, or requiring the tearing down of any property, including the cost of removing such debris.

Option L.  **Protective Device Credit.** For a premium credit, we acknowledge the installation of qualified protection devices on the residence premises.

**You agree to:**

1. maintain these devices in working order; and
2. notify us promptly, of any changes made in the devices or if they are removed.

Option M.  **Personal Injury Coverage under Coverage E — Personal Liability,** the definition of bodily injury is amended to include personal injury.

**Personal injury** means injury as a result of:

1. false arrest, false imprisonment, wrongful eviction, or wrongful entry;
2. wrongful detention, malicious prosecution, or humiliation;
3. libel, slander, defamation of character; or
4. invasion of rights of privacy.

Section II — Liability Exclusions do not apply to personal injury. **Personal injury coverage does not apply to:**

1. liability assumed by an insured under a contract or agreement;
2. injury caused by violation of a penal law or ordinance if committed by or with the knowledge or consent of an insured;
3. injury sustained by a person as a result of an offense directly or indirectly related to that person's employment by the insured;
4. injury arising out of or in connection with business pursuits of an insured;
5. injury arising out of any professional liability;
6. injury resulting from an insured transmitting a communicable disease, including injury arising from the possibility of such transmission;
7. civic or public activities performed for pay, other than reimbursement of expenses, by an insured; or
8. injury to an insured as defined in general Definitions 4.a) and 4.b).

Option N.  **Loss Assessment Coverage.**

We agree to pay your share of an assessment charged against all members of the **Association.** "Association" means the management body of the property owners. They must have common property interest with you. The common property must be part of the housing development where you live, as shown on the Declarations. We will pay up to the limit, shown for this option on the Declarations, in effect at the time of the loss which results in an assessment.

The assessment must be the result of:

1. a direct loss to property collectively owned by the Association. It must be caused by a peril covered under Section I of this policy;

K4

NW-DRA000092

    2.  an event of the type covered by Section II of this policy; or

    3.  damages the Association is legally obligated to pay due to **personal injury** as a result of:

        a)  false arrest, false imprisonment, wrongful eviction, or wrongful entry;

        b)  wrongful detention, malicious prosecution, misrepresentation, or humiliation;

        c)  libel, slander, defamation of character; or

        d)  invasion of rights of privacy.

This coverage is excess over other valid and collectible insurance covering the **Association**. Loss under subparagraph 1. is subject to the Section I deductible shown on the Declarations.

**Option O.  Building Ordinance or Law Coverage.**

We agree to cover the increased cost resulting from any ordinance or law regulating the:

    1.  construction;

    2.  repair;

    3.  renovation;

    4.  remodeling; or

    5.  demolition;

of covered building structures damaged by a Peril Insured Against.

**LIMIT OF PAYMENT**

The amount of ordinance or law coverage is shown on the Declarations. It is a percentage of the Coverage A — Limit of Liability shown on the Declarations at the time of loss. This is additional coverage.

The damaged or destroyed building structure must be repaired or replaced at the **residence premises.**

**SPECIAL EXCLUSIONS**

We will not pay costs:

    1.  required to replace, repair, regrade, remove, stabilize, change the contour of, or otherwise alter land, unless under or immediately surrounding the damaged building structure;

    2.  resulting from the enforcement of any ordinance or law involving construction, repair, remodeling or demolition of that portion of the undamaged building structure.

    However, this exclusion does not apply if the total damage to the covered building structure is more than 50% of the building's replacement cost, less any ordinance or law expenses, at the time of the loss.

**Option P.  Limited Water Back up of Sewers or Drains Coverage.**  We will pay up to a maximum of $5,000 for all damage to:

    1.  the Coverage A — Dwelling; and

    2.  the following personal property:

        a)  clothes washers and dryers;

        b)  food freezers and the food in them;

        c)  refrigerators;

NW-DRA000093

    d)  ranges;

    e)  portable dishwashers; and

    f)  dehumidifiers;

caused by or resulting from water or water-borne material which:

    a)  backs up through sewers or drains from outside the dwelling's plumbing system; or

    b)  overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

### EXCLUSIONS

We do not cover:

1.  other personal property not specified above;

2.  loss caused by the negligence of an insured; or

3.  if the loss occurs or is in progress within the first five (5) days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

### DEDUCTIBLE

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations, or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

**Option Q.  Earthquake and Volcanic Eruption Coverage.**  We insure for direct physical loss to property covered under Section I — Property Coverages caused by earthquake or volcanic eruption. Volcanic eruption means:

1.  eruption;

2.  explosion; or

3.  discharge;

from a volcano.

One or more earthquake shocks or volcanic eruptions that occur within a 72-hour period will constitute a single earthquake or volcanic eruption.

This coverage does not increase the limits of liability stated in the policy.

### DEDUCTIBLE

The earthquake and volcanic eruption deductibles are shown on the Declarations. It replaces any other deductible provision in this policy for covered earthquake and volcanic eruption loss.

We will pay only that part of the loss over the earthquake deductible percentage shown on the Declarations. The percent deductible applies separately to each coverage limit and applies separately to loss under each Section I coverage. This includes Building Additions and Alterations Coverage if included in the policy. The deductible amount will not be less than the earthquake dollar deductible on the Declarations for any one loss.

NW-DRA000094

**SPECIAL EXCLUSIONS**

We do not cover loss resulting directly or indirectly from flood of any nature or tidal wave, whether caused by, resulting from, contributed to, or aggravated by earthquake or volcanic eruption.

**Option R. Broad Water Back up of Sewers or Drains Coverage.** We will pay up to the limit of liability, shown on the Declarations for this option, at the time of loss, for direct damage to covered property caused by or resulting from water or water-borne material which:

1. backs up through sewers or drains from outside the dwelling's plumbing system; or

2. overflows from a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the **foundation area**.

This is the most we will pay for all covered property under Coverage A — Dwelling, Coverage B — Other Structures and Coverage C — Personal Property.

**EXCLUSIONS**

We do not cover:

1. loss caused by the negligence of an **insured**; or

2. if the loss occurs or is in progress within the first five days of the inception of this coverage unless added at renewal.

All other damage resulting from water or water-borne material not mentioned above is excluded as stated in Section I — Property Exclusion 1.b).

**DEDUCTIBLE**

We will pay for that part of the covered loss that is above the Section I — Deductible shown on the Declarations or $500, whichever is greater.

All other provisions of this policy, including Section I — Deductible, apply.

K7

NW-DRA000095



# *General Policy Conditions*

## 1. HOW YOUR POLICY MAY BE CHANGED

a) Any part of this policy which may be in conflict with statutes of the state in which this policy is issued is hereby amended to conform.

b) Any insured will automatically have the benefit of any broadening of coverage in this policy, as of the effective date of the change, provided it does not require more premium.

c) A waiver or change of a part of this policy must be in writing by us to be valid. Our request for an appraisal or examination does not waive our rights.

d) The premium for the coverage provided by this policy and attached endorsements is based on information in our possession. Any change or correction in this information will allow us to make an adjustment of the premium.

## 2. CONCEALMENT OR FRAUD

a) This policy is void as to all insureds if you or any other insured has intentionally misrepresented any material fact or circumstance which would have caused us not to issue or renew this policy.

b) This policy does not provide coverage for all insureds if you or any other insured, either before or after a loss, has:

    (1) intentionally concealed or misrepresented any material fact or circumstance; or

    (2) committed any fraud or made false statements relating to such loss.

## 3. RENEWAL

This policy is written for a specific policy period as shown on the Declarations. We will renew it for successive policy periods subject to the following conditions:

a) Renewal will be in accordance with the policy forms, rules, rates and rating plan in use by us at the time.

b) All premiums or premium installment payments and fees must be paid when due.

c) Prior to the expiration of a policy period for which premium has been paid, we will mail a notice to the named insured for the premium required to renew or maintain the policy in effect. We will mail this notice to the address last known to us.

d) You agree to an interior inspection of your home by one of our representatives to determine your continued eligibility. Such inspection will not be performed more than once a year with prior advance notice. Failure to allow an interior inspection in accordance with these terms may result in nonrenewal of your policy.

## 4. NON-RENEWAL

a) At the end of each policy period, we will have the right to refuse to renew this policy.

b) If we elect not to renew, we will mail written notice to the named insured, at the address shown in this policy, at least 30 days before the renewal date of this policy. Proof of mailing shall be proof of notice.

c) For nonpayment of renewal premium, coverage will terminate without notice at the end of the last policy period for which premium was paid.

## 5. CANCELLATION DURING POLICY PERIOD

Any named insured may cancel this policy at any time by returning it to us or by notifying us in writing of the future date cancellation is to take effect.

We may cancel this policy only for the reasons stated in this condition by notifying the named insured in writing of the date cancellation takes effect. This cancellation notice will be mailed to the named insured at the address shown in the policy. Proof of mailing will be proof of notice.

L1

NW-DRA000096

*General Policy Conditions* _____

a) When premium has not been paid, whether payable to us or our agent or under a finance or credit plan, we may cancel at any time by giving notice at least 10 days before cancellation takes effect.

b) When this policy has been in effect 60 days or less and is not a renewal with us, we may cancel for any reason by giving notice at least 10 days before cancellation takes effect.

c) When this policy has been in effect for more than 60 days, or at any time if it is a renewal, we may cancel if:

   (1) there has been a material misrepresentation of fact which if known to us would have caused us not to issue this policy, or caused us to issue or renew this policy at a higher premium;

   (2) the risk has changed substantially since the policy was issued; or

   (3) the property or other interest has been transferred to another person, unless the transfer is permissible under the terms of this policy.

   This can be done by giving notice at least 30 days before cancellation takes effect.

d) When this policy is written for a period longer than one year, we may cancel for any reason at its anniversary by giving notice at least 30 days before cancellation takes effect.

When this policy is cancelled, the premium for the period from the date of cancellation to the premium payment date will be refunded. The return premium will be pro rata. If the return premium is not refunded with the notice of cancellation or when the policy is returned to us, we will refund it within a reasonable time after cancellation takes effect.

6. **POLICY TRANSFER**

   This policy may be transferred to another only with our written consent.

7. **SUBROGATION**

   a) When we have paid you for a loss covered under this policy and you also receive payment for the same loss from another person, entity or organization, the amount received will be held by you in trust for us and reimbursed to us to the extent of our payment.

   b) An insured may, before loss occurs, waive in writing all rights of recovery against any person. The insured will provide us with proof of the waiver, when requested by us. If not waived, when we pay a loss, an insured's right to recover from someone else becomes ours up to the amount we paid. An insured must protect these rights and help us enforce them. This condition does not apply to "Medical Payments to Others" or the "Damage to Property of Others" protection.

8. **DEATH**

   If you die, we continue to insure:

   a) the legal representative of the deceased, only with respect to the premises and property of the deceased covered under this policy at the time of death.

   b) a member of your household who is an insured at the time of death, but only while a resident of the residence premises.

   c) with respect to your property, the person having proper custody of the property until appointment of a legal representative.

9. **ADDITIONAL INSURED - NON OCCUPANT**

   An additional insured may be named in this policy. The additional insured's interest in the residence premises is protected under Coverage A and Coverage B. The additional insured is also protected under Coverage E for liability from the ownership, maintenance, or use of the residence premises. This provision does not increase the amount of insurance.

10. **OPTIONAL PAYMENT OF PREMIUM IN INSTALLMENTS**

    The first named insured may pay the premium for this policy in installments, under the terms and conditions approved where required by the Department of Insurance. For each separate installment

L2

NW-DRA000097

payment there is an installment premium payment charge. Your agent or sales representative can provide more information.

## 11. NON-SUFFICIENT FUNDS CHARGE

The company reserves the right to impose a fee for any premium that is unable to be processed due to non-sufficient funds, or if there are non-sufficient funds in an account that is being utilized for electronic funds transfer (EFT) payments.

## 12. DIVIDENDS

The first named insured is entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in this policy.

## MUTUAL POLICY CONDITIONS

(Applicable only to policies issued by Nationwide Mutual Insurance Company – Nationwide Mutual Fire Insurance Company.)

If this policy is issued by Nationwide Mutual Insurance Company or Nationwide Mutual Fire Insurance Company, the first named insured is a member of the company issuing the policy while this or any other policy issued by one of these two companies is in force. While a member, the first named insured is entitled to one vote only – regardless of the number of policies issued to the first named insured – either in person or by proxy at meetings of members of said company.

The annual meeting of members of the Nationwide Mutual Insurance Company will be held at the Home Office at Columbus, Ohio, at 10 a.m. on the first Thursday of April. The annual meeting of members of the Nationwide Mutual Fire Insurance Company will be held at the Home Office at Columbus, Ohio, at 9:30 a.m. on the first Thursday in April. If the Board of Directors of either of the above companies should elect to change the time or place of meeting, that company will mail notice of the change to the first named insured at the address last known to it. The company will mail this notice at least 10 days in advance of the meeting date.

This policy is non-assessable, meaning the first named insured is not subject to any assessment beyond the premiums the above companies require for each policy term.

IN WITNESS WHEREOF: Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company, or Nationwide Property and Casualty Insurance Company, whichever is the issuing company as shown in the Declarations, has caused this policy to be signed by its President and Secretary and countersigned as may be required by a duly authorized representative of the company.

*Patricia B. Hatler*
**Secretary**

*[signature]*
**President**
Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company

*[signature]*
**President**
Nationwide Property and Casualty Insurance Company

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio 43215-2220

NW-DRA000098



**HOMEOWNER POLICY
DECLARATIONS**
Non-Assessable

Page 1 of 3

These Declarations are a part of the policy named above and identified by policy number below. They supersede any Declarations issued earlier. Your Homeowner Policy will provide the insurance described in this policy in return for the premium and compliance with all applicable policy provisions. See policy for details regarding the other coverages and additional coverage options.

**Policy Number:**
63 23 MP 669310

**Issued:**
OCT 12, 2004

**Policyholder:**
(Named Insured)
JOHN K AND
DEBARAH J DRAKE
95 LA BRANCHE AVE
OCEAN SPRINGS MS 39564-9195

**Policy Period From:**

NOV 09, 2004  to  NOV 09, 2005  but only if the required premium for this period has been paid, and only for annual renewal periods if premiums are paid as required. Each period begins and ends at 12:01 A.M. standard time at the Residence Premises.

---

**The Following Change(s) Have Been Made To Your Policy:**

You may notice a change in premium since your last billing. Residence Premises Information has been changed.

The limit of liability for Section I Coverage A Dwelling is revised.

Limits of Liability for Policy Option Water Backup is changed.

**Residence Premises Information:**

| | | |
|---|---|---|
| 95 LA BRANCH | ONE FAMILY | PROTECTION CLASS 05 |
| ON EAST BEACH FRONT | MASONRY VENEER DWELLING | RATED PROTECTION CLASS 06 |
| OCEAN SPRINGS | YEAR OF CONSTRUCTION 1985 | |
| MS 395649195 | | |

**SECTION I**

| Property Coverages | Limits Of Liability | Deductible: $1,000 ALL PERILS |
|---|---|---|
| COVERAGE–A–DWELLING | $    580,700 | In case of a loss under Section I, we |
| COVERAGE–B–OTHER STRUCTURES | $     58,070 | cover only that part of each loss over the deductible stated. |
| COVERAGE–C–PERSONAL PROPERTY | $    430,430 | |
| COVERAGE–D–LOSS OF USE | $    116,140 | |

**SECTION II**

| Liability Coverages | Limits Of Liability |
|---|---|
| COVERAGE–E–PERSONAL LIABILITY FOR EACH OCCURRENCE: PROPERTY DAMAGE AND BODILY INJURY | $    500,000 |
| COVERAGE–F–MEDICAL PAYMENTS TO OTHERS EACH PERSON | $      5,000 |

H5300

DRAKE 104

# HOMEOWNER POLICY DECLARATIONS

Page 2 of 3

## OTHER COVERAGES/OPTIONS APPLICABLE

See Policy or Endorsements for details regarding the Other Coverages and Options that apply to your policy.

| Other Coverages | | Limits of Liability |
|---|---|---|
| INFLATION PROTECTION | | APPLIES |
| BOECKH INDEX 0489.0 | | |
| BIOLOGICAL DETERIORATION/DAMAGE CLEAN UP | $ | 10,000 |
| FIRE DEPARTMENT SERVICE CHARGE | $ | 500 |
| CREDIT CARD - FORGERY | $ | 1,000 |

| Options Applicable | | |
|---|---|---|
| OPTION-A-JEWELRY, WATCHES AND FURS | $ | 2,500 |
| OPTION-J-EXTENDED REPLACEMENT COST | | APPLIES |
| PERSONAL PROPERTY | | |
| OPTION-K-REPLACEMENT COST PLUS | | APPLIES |
| DWELLING | | |
| OPTION-L-PROTECTIVE DEVICE CREDIT | | APPLIES |
| LOCAL FIRE OR SMOKE ALARM SYSTEMS | | |
| FIRE EXTINGUISHERS | | |
| DEADBOLT LOCKS ON ALL EXTERIOR ENTRYWAYS | | |
| COMPLETE LOCAL BURGLARY ALARM SYSTEM | | |
| OPTION-O-ORDINANCE OR LAW 10% OF COVERAGE A | | APPLIES |
| OPTION R-BROAD WATER BACKUP | $ | 25,000 |
| WATER BACKUP DEDUCTIBLE $1000 | | |

## PREMIUM SUMMARY

| Premium Based On | | Premium Amount |
|---|---|---|
| POLICY PREMIUM | $ | 2,577.00 |
| WATER BACKUP | $ | 76.00 |
| Annual Renewal Premium | $ | 2,653.00 |

Annual Renewal Premium Includes Discounts For:

CLAIM FREE
LONG TERM
HOME PROTECTIVE DEVICE

## FORMS and ENDORSEMENTS MADE PART OF POLICY

HO 23-A                          Homeowners Policy
H-6072                           Wind or Hail Exclusion

## ADDITIONAL INTERESTS

FIRST MORTGAGEE

BANCORP SOUTH BANK
ISAOA ATIMA
PO BOX 70
BILOXI MS 39533-0070
LOAN #215000126390

**FRAME: K 04**

NW-DRA000060



# HOMEOWNER POLICY
# DECLARATIONS

Non-Assessable
Page 3 of 3

**Policy Number:**
63 23 MP 669310

**Issued:**
OCT 12, 2004

**Policyholder:**
(Named Insured)
JOHN DRAKE

**Policy Period From:**
NOV 09, 2004 TO  NOV 09, 2005

---

**Issued By:** NATIONWIDE MUTUAL FIRE INSURANCE COMPANY
**Countersigned At:** RALEIGH, NC
**Prior Declaration Issued:** OCT 10, 2003

Home Office — Columbus, Ohio
By: RONNIE D GOFF

### IMPORTANT PHONE NUMBERS

Nationwide 24-Hour Claims Number: 1-800-421-3535

For QUESTIONS About Your Policy, Call Your NATIONWIDE AGENT: RONNIE D GOFF
228-762-0557

For Hearing Impaired: TTY 1-800-622-2421

Nationwide Regional Office: 919-781-3322

FRAME: L 04

NW-DRA000061



# *Windstorm or Hail Exclusion*

**Please attach this important addition to your policy.**

For a premium credit, it is agreed that:

1.  We do not insure for loss caused directly or indirectly by the perils of windstorm or hail; and

2.  Windstorm or hail loss is excluded regardless of any cause or event contributing concurrently or in any sequence to the loss.

We will cover direct loss by fire or explosion resulting from windstorm or hail damage.

This exclusion does not apply to Coverage D - Loss of Use.

All other policy provisions apply.

This endorsement is issued by the company shown in the Declarations as the issuing company.

**NATIONWIDE INSURANCE COMPANIES
Home Office: Columbus, Ohio 43215-2220**

**EXHIBIT 2**

H-6072

NW-DRA000062

7. property in an apartment regularly rented or held for rental to others by an insured.
8. property rented or held for rental to others away from the residence premises.
9. business property away from the residence premises.

## COVERAGE D — LOSS OF USE

We cover, subject to the coverage limit which is the total limit, all of the following:

1. **Additional Living Expense.** If a covered loss requires you to leave the residence premises, we will pay the required increase in living expenses you incur to maintain your normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

2. **Fair Rental Value.** If a loss covered under this section requires occupants to leave that part of the residence premises rented to others or held for rental, we will pay its fair rental value. Payment will be for the shortest time required to repair or replace this part of the premises. This does not include expense that does not continue while the part of the residence premises is uninhabitable. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period; and

3. **Prohibited Use.** If a civil authority prohibits your use of the residence premises because of direct damage to neighboring premises by a peril insured against in this policy, we will pay the resulting loss, for up to two weeks while use is prohibited, for:
   a) Additional Living Expense; and
   b) Fair Rental Value.

We do not cover loss or expense due to cancellation of a lease or agreement.

This coverage does not apply to an insured's business, whether conducted on or off any insured location.

No deductible applies to this coverage.

## *Additional Property Coverages*

These additional property coverages are subject to the policy deductible except as noted. In no event will the deductible be applied more than once to any one loss.

1. **Debris Removal.** We will pay reasonable expense you incur removing debris of covered property, if the peril causing the loss is covered. This includes debris of trees that cause damage to covered property or covered structures, or that obstruct access to covered structures if such access is necessary to repair or replace the structure. We will pay only to move away from, or off of, covered property or covered structures, the debris of trees that cause damage to covered property or restrict access. An additional five (5) percent of the limit of liability for the damaged property will be available when the amount payable for the property loss plus the debris removal expense exceeds the limit of liability.

2. **Live Tree Debris Removal.** In the event of a loss, we will also pay the reasonable expense you incur for the removal of live tree debris from the residence premises, that does not cause damage to covered property or covered structures. The most we will pay is $500, regardless of the number of trees requiring removal, for any one loss. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

**EXHIBIT 3**

NW-DRA000069

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DRAKE, M.D., et al., )
                        )
         Plaintiffs,   )
                        )
versus               )  Cause No.:
                        )  1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE   )
INSURANCE COMPANY,      )
                        )
         Defendant.    )
_____)

Videotaped Deposition of:

CHARLES HIGLEY

Tuesday, August 11, 2009

At the instance of the Plaintiffs

**EXHIBIT 4**

d93c248d-accb-46d5-9a55-889fc34125d0

1          Nationwide, the record reflects, until June

2     of 2006.

3   BY MR. VAN CLEAVE:

4   Q.          Look at Page 3487 of the claims

5   activity log in Exhibit 4, if you will.

6   A.          I'm sorry, I didn't catch the number.

7   Q.          3487.  It's an entry on July the 24th,

8   2006, by Roger Woods.

9               In Mr. Woods' report in the

10  second paragraph on 3487 concluded in the second

11  sentence that, Due to the conclusion above in

12  Mr. Biddy's report, this does put the cause of

13  loss into controversy; right?

14  A.          Yes.

15  Q.          And "cause of loss into controversy"

16  could be otherwise stated as meaning there's a

17  question or doubt about the cause of loss;

18  correct?

19  A.          Yes.

20  Q.          And it was Nationwide's policy to

21  resolve doubt about cause of loss in favor of

22  coverage for the insured; correct?

23  A.          Yes.

24  Q.          And so that's what Nationwide decided

25  to do on July the 24th, 2006; correct?

```
 1    A.          Yes.  And that's why I stated that it
 2    was a business decision, and that's what I
 3    consider a compromise --
 4    Q.          Now --
 5    A.          -- when there's that' kind of dispute.
 6    Q.          Did Nationwide ever communicate to the
 7    Drakes that it had concluded there was a doubt
 8    about the cause of loss to their home and that
 9    Nationwide was going to resolve that doubt in
10    favor of coverage?
11    A.          Well, our investigative work on this
12    matter was not complete at that time in that
13    we -- as Mr. Woods directed, the report from Ted
14    Biddy was sent to H.S.A. for review.
15    Q.          Well, that's right.  And you also made
16    a decision as reflected on Page 3481 on
17    10/17/2006 to find out how much was paid to the
18    Drakes under their wind policy; right?
19    A.          Yes.
20    Q.          And that was a direction that you
21    personally gave; correct?
22    A.          Yes.
23    Q.          And the conclusion of that
24    investigation was that the Drakes had been paid
25    policy limits for damage to their dwelling under
```

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DRAKE, M.D., et al.,            )
                                     )
              Plaintiffs,            )
                                     )
versus                               )  Cause No.:
                                     )  1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE               )
INSURANCE COMPANY,                   )
                                     )
              Defendant.             )
_____)


              Videotaped Deposition of:

              CHARLES HIGLEY

              Tuesday, August 11, 2009

              At the instance of the Plaintiffs


**EXHIBIT 5**

d93c248d-accb-46d5-9a55-889fc34125d0

```
 1    party that doesn't have anything to do with the

 2    particular claim.

 3              And so I -- other than that, I

 4    don't know anything about this.

 5    Q.        Now look at the entry in part of the

 6    electronic claim file, which is Exhibit 4, on

 7    Page 110, dated 7/23/2007.

 8              MR. SCHULTZ:  Which page are you

 9        looking at?

10              MR. VAN CLEAVE:  110.

11    A.        On Exhibit 4?

12    BY MR. VAN CLEAVE:

13    Q.        Right.  7/23/07.

14              MR. SCHULTZ:  7/23/07.

15    BY MR. VAN CLEAVE:

16    Q.        Do you see that?

17    A.        Which entry?

18    Q.        7/23/07, in the middle of the page.

19    A.        Yes.

20    Q.        And this is an entry by Alec Harmer, I

21    presume, or whoever the claims associate was at

22    that time.

23    A.        Yes.  Yeah.  That's who it's

24    designated as.

25    Q.        Regarding a conversation with the
```

```
 1    Drakes; right?

 2    A.          Yes.

 3    Q.          And this was after the time that a

 4    decision had been made that there was a doubt

 5    about the cause of loss and that that doubt was

 6    going to be resolved in favor of coverage for

 7    the Drakes; correct?

 8                MR. SCHULTZ:  Objection to form.

 9    A.          It was, yes.

10    BY MR. VAN CLEAVE:

11    Q.          But what Mr. Harmer's report reflects

12    in the final two sentences that he explained to

13    the Drakes was, quote, CA explained there are

14    homes within eyeshot of PH's home that were not

15    made unlivable by wind.  They appear to suffer

16    far less flood damage and were still standing.

17    Most likely the home would not be unlivable due

18    to wind for the max 12-month period of coverage

19    under ALE; right?

20    A.          That's what it says.

21    Q.          So according to Nationwide's claims

22    file, as of July the 23rd, 2007, Nationwide's

23    claims personnel were still advising the Drakes

24    that there would not be full coverage for the

25    policy period under the ALE provisions of their
```

d93c248d-accb-46d5-9a55-889fc34125d0

1    policy; correct?

2                    MR. SCHULTZ:  Objection to form;

3         misstates the document.

4    A.        I can only take it as written, as

5    stated.  Other than that, I don't have any

6    commentary to add to it.

7    BY MR. VAN CLEAVE:

8    Q.        Certainly the Drakes should not have

9    been informed such as of that date; isn't that

10    true, sir?

11                    MR. SCHULTZ:  What do you mean by

12         "such," Christopher?

13    BY MR. VAN CLEAVE:

14    Q.        The Drakes should not have been

15    informed as of July of 2007, assuming that

16    that's the right date for that entry, that there

17    would probably not be coverage for the entire

18    12-month period on their ALE claim.

19                    MR. SCHULTZ:  Objection to form.

20    BY MR. VAN CLEAVE:

21    Q.        Right?

22    A.        I would rather that conversation not

23    to have been held.

24    Q.        Well, it was contrary to the claims

25    decision that had been made by Nationwide

d93c248d-accb-46d5-9a55-889fc34125d0

1    management as of that date; true?

2    A.        Yes.

3    Q.        Now, the Drakes did in fact send

4    receipts for food, clothing and furniture that

5    were received by Nationwide on July 15th, 2007;

6    is that right?

7              And I'm going to hand you what

8    I'm marking as Exhibit 34 to your deposition.

9    (Exhibit 34 marked.)

10   Q.        And that's a letter dated July 17th,

11   2007, to the Drakes from claims representative

12   Alec Harmer; right?

13   A.        Yes.

14   Q.        And the very first sentence says, I'm

15   writing you to confirm Nationwide did receive

16   your letter dated July 15th, 2007.  You included

17   receipts for food, clothing and furniture;

18   correct?

19   A.        Yes.

20   Q.        And in fact you're aware that the

21   Drakes presented those receipts totaling some

22   $11,000 and some-odd -- 11,000 some-odd dollars

23   to Nationwide and expressed that those were

24   expenses incurred that were necessary to

25   maintain the Drakes' ordinary standard of

d93c248d-accb-46d5-9a55-889fc34125d0

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DRAKE, M.D., et al., )
                          )
          Plaintiffs,     )
                          )
versus                    ) Cause No.:
                          ) 1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE    )
INSURANCE COMPANY,        )
                          )
          Defendant.      )
_____)


Videotaped Deposition of:

CHARLES HIGLEY

Tuesday, August 11, 2009

At the instance of the Plaintiffs


**EXHIBIT 6**

d93c248d-accb-46d5-9a55-889fc34125d0

```
 1    BY MR. VAN CLEAVE:

 2    Q.        Well, certainly from the entry in the

 3    claim file at Paragraph 7, the suggestion was

 4    there that the Drakes were going to require

 5    additional living expenses beyond the 12-month

 6    period for additional living expenses covered by

 7    the policy; right?

 8                  MR. SCHULTZ:  Object to form.

 9    A.        Based on what is in the file, yes.

10    BY MR. VAN CLEAVE:

11    Q.        And the policy provides coverage

12    limits of over $116,000 for additional living

13    expenses; correct?

14    A.        Yes.

15    Q.        And those limits apply -- strike that.

16                  The additional living expense

17    provision of the policy provides coverage either

18    until it's been provided for 12 months after the

19    loss or until the limits of the policy are met,

20    whichever occurs first; right?

21                  MR. SCHULTZ:  Object to form.

22    A.        And one other limitation is: or

23    permanently relocate.

24    Q.        Or permanently relocate.

25                  There is no evidence that you're
```

1    aware of that the Drakes ever permanently

2    relocated, is there, sir?

3    A.        No.

4              MR. SCHULTZ:  Object to form.

5        Misstates facts in evidence.

6    BY MR. VAN CLEAVE:

7    Q.        How did Nationwide handle ALE claims

8    if an insured opted to buy a new house as a

9    temporary residence until such time as the

10   insured residence could be rebuilt?

11             MR. SCHULTZ:  Object to --

12   BY MR. VAN CLEAVE:

13   Q.        What portion of, of that purchase

14   price would be covered?

15             MR. SCHULTZ:  Objection to form;

16        assumes facts not in evidence; calls for

17        speculation.

18   A.        Well, I don't recall a specific

19   example.  I'm sure there were some because

20   people did lots of different things.  But if

21   we'd had that, then a fair rental value would

22   have been determined and paid up until such --

23   that time.

24                   And I say "up until that time,"

25   that would be a negotiated time.  That time

d93c248d-accb-46d5-9a55-889fc34125d0

# LEASE AGREEMENT

**Chester Harvey, Realtors 1216 Government St., Ocean Springs, MS 39564**
**Mailing Address: P. O. Box 1108, Ocean Springs, MS 39566-1108**
**(228) 875-8700   FAX: (228) 875-8784**

# chester@chesterharvey.com

**THIS AGREEMENT MADE THE 5th DAY OF September, 2005, between CHESTER HARVEY, REALTORS,** as Landlord, and **John & Debbie Drake.** Tenant: WITNESS, that the Landlord agrees to rent to the Tenant and the Tenant agrees to rent from the Landlord, the premises known as **905 Magnolia Bayou City or Ocean Springs, Mississippi, County of Jackson,** Mississippi, for the term commencing on the **5th day of September, 2005,** and ending on the **31st day of August, 2006,** at a rate of **$1295.00** per month, payable in advance on or before the first day of each month for the term of this agreement. Rental rate does **not** include utilities, lawn maintenance, and pool/hot tub maintenance. These are the responsibilities of the tenant.

The Lessee hereby agrees as follows, to-wit:

1.   **PAYMENT OF LEASE AMOUNT:** Rent is payable In CHECK, CASH OR MONEY ORDER to CHESTER L. HARVEY MANAGEMENT ACCOUNT, at 1216 Government St., Ocean Springs, MS 39564. The Tenant expressly covenants that the premises are to be used and occupied by only 2 adults over the age of 18 whose names are as follows: **John & Debbie Drake.** Any variation of this covenant will constitute an immediate termination of this lease. No visitors are allowed to stay more than seven nights in one given month without written approval of Landlord. If this covenant is violated, the Landlord at his discretion has the option to increase the rental amount by $100 per month or to terminate this lease. No more than six people, 2 adults maximum and 4 children under 18 year of age, are allowed to occupy a three bedroom home, and no more than eight people, 2 adults maximum and 6 children under 18 years of age, are allowed to rent a four bedroom home without the written consent of the Landlord.

2.   **SECURITY DEPOSIT:** The Tenant, by the execution of this agreement, agrees that the premises is clean and in tenable condition, and agrees at the end of said term to deliver and surrender said premises to the Landlord in as good condition as when received, reasonable wear and tear excepted. Also, Tenant agrees to have the **carpets _professionally_ cleaned upon vacancy and to provide Chester Harvey, Realtors with a receipt from a professional carpet cleaning service..** A cleaning and damage deposit of $1000.00 is to be made to CHESTER HARVEY TRUST ACCOUNT to insure this condition. If the premises is cleaned to the Landlord's satisfaction and no damage has been caused to the premises, then upon termination of this agreement, the Landlord will return said deposit to the tenant by the 10th business day following vacancy Vacancy date is the day property is relinquished by tenant and keys are returned to leasing office.

3.   **TERMS OF THE LEASE:** Rental payment is due and payable on the **first day** of each month and shall be **no more than five (5) days late.** If rent is not paid in full by the 6th day of each month, there will be **a late charge of ___10 %___** of the monthly rent due. **The late charge must be added to the monthly rent.** All returned checks are subject to a **$30** returned check fee. **Two returned checks will result in forfeiture of payment by check privileges and requirement that all future rent payments be paid by cash, cashier's check, or money order.**

4.   **DAMAGE TO PREMISES:** Tenant agrees that no damage shall be done to the premises, reasonable wear and tear excepted. The Tenant also agrees to pay in full for any damage caused to the premises by himself, his children, or his guests.

5.   **TERMINATION OF LEASE:** Tenant agrees that the Landlord may terminate the lease agreement at any time by giving **thirty (30) days notice.** The Tenant agrees to vacate the premises if said notice is given. Grounds for termination of lease at Landlord's discretion include but are not limited to:
     A.   Excessive damage being caused by Tenant, his child, unauthorized pets or visitors of Tenant
     B.   Violation of any item in section 6 of this agreement
     C.   The Tenant acknowledges that after the second time a lease payment is late, the Landlord shall at his option deem this lease null and void, in lieu of paying the late payment penalty

6.   **COVENANTS:** The Tenant expressly covenants and agrees:
     A.   Tenant shall not keep any pets, either on or around the premises. (Pets are anything that is not human) If the owner allows pets on the property, Tenant is subject to a **N/A non-refundable damage deposit** at the signing of the lease agreement. Said deposit is to pay for the spraying of fleas and any damage caused by the pet.
     B.   Tenant shall not store any personal property outside of the premises except in space provided by or approved by the Landlord
     C.   Tenant shall not place or store on the premises any vehicles not in good running condition.
     D.   Tenant shall not place or store on the premises any boat(s), boat motor(s) or boat trailer(s), any vehicle over one ton capacity, any other motorized vehicle without prior written approval by Landlord.

**EXHIBIT 7**

E.   Tenant shall not engage in or allow any commercial activity or business enterprise on the premises. Further, Tenant shall not engage in any activities which disturb the other residents of the neighborhood, such as playing loud music, television, radio, or CB radios.

F.   That the leased premises shall, during the term of this lease, be used for lawful purposes and to hold the Landlord harmless for the violation of any laws.

G.   Not to commit or permit any waste to or on the premises, not to allow any nuisance to exist thereon and to abate any nuisance that may arise promptly and without expense to the Landlord.

H.   Not to use or permit anything to remain about the premises which will invalidate or increase the premium rate of any policy of insurance, which the Landlord may at any time have on the premises.

I.   Not to assign this lease without the written consent of the Landlord, and any such transfer, or transfer by bankruptcy, by operation of law, or otherwise, shall give the Landlord the right to immediately terminate this lease.

J.   That all property in the leased premises shall be at the risk of the Tenant only, and the landlord shall not be liable to Tenant for any damage or loss of any property in or about the property, however caused.

K.   That the violation by the Tenant, his family, servants, or guests of any of the covenants herein or of any rule or regulation will give the Landlord the right of termination or forfeiture of this lease, together with the right of possession of the premises leased, and if the lease is so terminated or forfeited by the Landlord, the Tenant expressly acknowledges a debt to Landlord for one month's rent after the month in which the lease is terminated or forfeited plus all damages to the premises caused by Tenant, his family, servants, or guests

7.   **ALTERATIONS TO THE PREMISES:** Tenant has no authority to make any alteration to the premises or to incur any debt or make any charges against the Landlord or create any lien upon the leased property for any work done or materials furnished without the express consent of the Landlord in writing.

8.   **BREACH OF COVENANTS:** In the event of any breach of any of the covenants and agreements herein contained by the Tenant, if such breach is not cured within fifteen (15) days after due notice is given of such breach, then the landlord may, at His option, declare this lease void and immediately terminate it.

9.   **DESTRUCTION OF PREMISES BY ACT OF GOD:** If the premises or any part thereof shall at any time during the said term be destroyed or rendered uninhabitable by fire, storm, hurricane, or any other cause outside the control of the Tenant, then the payment of the rent hereby reserved or a proportionate part thereof, according to the extent of the damage incurred, shall be suspended until the premises shall have been reinstated and rendered fit for habitation. However, if the premises are not rendered habitable within a period of thirty (30) days, then the Tenant may, at his option, declare the lease null and void and vacate the premises permanently with no further obligations under the terms of this lease.

10.  **FOR RENT SIGN:** Landlord or his agents will be permitted to post "For Rent" and/ or "For Sale" signs and to exhibit the premises to prospective purchasers or tenants at reasonable hours within 60 days of the conclusion of this lease. The Landlord may enter the premises for the purpose of making reasonable inspections and repairs.

11.  **FAILURE TO PAY RENT:** Tenant further agrees that if he should fail to pay the rent herein stipulated promptly when due or should fail to comply with any and all other provisions of this agreement, then in any of said cases, it shall be lawful for the Landlord, at his election or option, to re-enter and take possession. The Tenant hereby expressly waives any and all notices to vacate said premises, and thereupon the demise shall absolutely terminate, however, nothing in this agreement shall constitute or be construed as a waiver or relinquishment of any right accruing to the Landlord under this agreement by virtue of law. If it becomes necessary to bring eviction proceedings or to remove Tenant from premises, the Tenant shall be liable for all attorney fees and court costs. All goods and chattels placed or stored in or about the premises become the property of the Landlord.

12.  **FURNISHINGS:** The Tenant acknowledges that this property is leased unfurnished, except for the following:

**Fully Furnished**

**This property is leased as a "one family" residence. No extended family members are allowed to reside or visit as described above.**

13.  **PARKING:**

A.   Tenant will use the garage, carport, or driveway for the parking of all cars owned by the Tenant.

B.   No more that one vehicle per adult will be allowed on the premises without the written consent of the Landlord.

C.   No vehicle over a 1 ton capacity is allowed on the property, i.e. 18-wheelers, Motor homes, trailers, or any oversized vehicle.

D.   Automatic garage door remotes are the property of the owner. A $50 replacement fee will be assessed for each missing remote at time of vacancy.

14.  **TERMINATION:** This lease can be terminated by the lessor at his option for any reason he deems violates the tranquility, peace and quiet of the premises giving a 30-day's notice as required by law.

15.  **JOB TRANSFER:** Upon the job transfer of Tenant from the GULF COAST AREA, the Tenant or Landlord may terminate this agreement upon thirty (30) day's written notice.

16.  **FOR MILITARY PERSONNEL ONLY:** Tenant (who is presently a member of United States Armed Forces on active duty) may terminate this lease by giving thirty (30) days' written notice" to the Landlord under the following conditions: (1) the Tenant receives change-of-duty (PCS) orders to depart the area where the premises is located; (2) the Tenant receives TDY orders in excess of six (6) months to any location beyond fifty (50) miles from where the premises is located; (3) the Tenant is relieved from active duty; (4) where one of the Tenants hereto dies; (5) a divorce between Tenants occurs; (6) if the Tenant is assigned government quarters and is required to move onto the base to which he is attached (the rights and privileges extended to the Tenant is items (4) and (5) above are hereby extended to the Landlord); (7) if the Tenant has leased the property prior to arrival in the are and his orders are changed to a different area prior to occupancy of the property; (8) if the Landlord or Tenant, husband or wife, should die or be reported in a missing status under 37 USC, Section 551, during the term of this lease, the spouse of the deceased or missing may terminate this lease by giving at least thirty (30) days' written notice. This right of termination of lease must be exercised within ninety (90) days of death or missing status report. There shall be attached to such notice a copy of the official termination under the clause.

*The thirty (30) days' notice mentioned above shall be interpreted to mean that termination shall be effected on the last day of the month following the month in which such written notice to terminate is delivered or mailed to the Landlord.

17.   **EXTENSION AND RENEWAL:** Upon the end of the current lease period (08/31/06) any extension or renewal of lease must be negotiated between Tenant and Landlord as a **new lease with all terms being subject to change.**

18.   If the TENANT by permission of Chester Harvey, Realtors, vacates the property prior to the end of the lease period for other housing in the Gulf Coast Area, one of the following rules will apply:

  • The TENANT will pay a penalty rent in the amount of (1) full month's rent in advance, of which no portion will be refunded and the full damage deposit will be forfeited to Chester Harvey, Realtors.   Initial ___KD___

  • TENANTS leasing under the Military Partnership Program will pay a penalty rent in the amount of (1) full month's rent in advance, of which no portion will be refunded and will pay the damage deposit amount which was waived under the Military Partnership Program Agreement. This penalty will be waived only if tenant provides official written orders from Military requiring change of residence.   Initial ___N/A___

19.   **LANDLORD MAINTENANCE:** The Landlord shall maintain the premises in good repair and tenable condition and shall be responsible for repairs not due to the fault or negligence of the tenant as expeditiously as possible. Any fixtures and appliances provided in "AS IS" condition will not be repaired, replaced or maintained by the Landlord.

Credit Report          N/A
Prorated Rent
Pet Deposit
Damage Deposit
Total Received

____ Agency Disclosure Signed
____ Lead Paint Disclosure Signed

Leasing Agent:  CLH
Company:   CHR

_____
Tenant                                    SS#   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

Tenant                                    SS#
Tenant email address   draktakm@bellsouth.net
cell 228-324-8292   home 895-5176
Tenant Phone

Landlord                        Chester Harvey, Realtors

JWD   Tenant acknowledges understanding that payment of rent begins with receipt of keys and continues until keys are returned to Chester Harvey, Realtors.

**PETS:** N/A

**GARAGE DOOR OPENERS: #**   (There is a $60 replacement charge for any missing remotes at time of vacancy)
2 garage door openers   **ADDITIONAL PROVISIONS**



**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
**chester@chesterharvey.com**
**Visit our website at www. chesterharvey.com**

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTHS OF SEPTEMBER/OCTOBER, 2005

**PROPERTY:** <u>905 Magnolia Bayou</u>          **OWNER:** Sykes

**MONIES IN:**

    **RENTS:**          $1295.00 (September)

    **RENTS:**          $1295.00 (October)

**MONIES OUT:**

    **FINDER'S FEE:**     $  647.50 (one-time fee per tenant)

    **MGT FEE:**        $  129.50 (September)

    **MGT FEE:**        $  129.50 (October)

    **REPAIRS/MAINT:**    $3530.24*

**AMOUNT TO OWNER:**  $1846.74 (expenses exceed income)

**\*REPAIRS**
Bill Miller $28.50
Floors By Design $3501.74

**Please call or email Gina with questions.** (gina@chesterharvey.com)



**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
**chester@chesterharvey.com**
**Visit our website at www. chesterharvey.com**

**RENTAL PROPERTY MANAGEMENT REPORT**
**FOR THE MONTH OF NOVEMBER, 2005**

**PROPERTY:** <u>905 Magnolia Bayou</u>          **OWNER:  Sykes**

**MONIES IN:**

   **RENTS:**          $1295.00

**MONIES OUT:**

   **BALANCE FWD:**     $1846.74

   **MGT FEE:**         $ 129.50

   **REPAIRS/MAINT:**   $    0.00\*

**AMOUNT TO OWNER:**  $ 681.24 (expenses exceed income)

**\*REPAIRS**

No repairs were required in the past 30 days.

**Please call or email Gina with questions.  (gina@chesterharvey.com)**



**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
chester@chesterharvey.com
Visit our website at www. chesterharvey.com

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF DECEMBER, 2005

**PROPERTY: 905 Magnolia Bayou**　　　　　　**OWNER:  Sykes**

**MONIES IN:**

   **RENTS:**　　　　　　$1295.00

**MONIES OUT:**

   **BALANCE FWD:**　　　$ 681.24

   **MGT FEE:**　　　　　$ 129.50

   **REPAIRS/MAINT:**　　$    0.00*

**AMOUNT TO OWNER:  $ 484.26**

**\*REPAIRS**

No repairs were required in the past 30 days.

**Please call or email Gina with questions.  (gina@chesterharvey.com)**





**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
chester@chesterharvey.com
**Visit our website at www. chesterharvey.com**

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF JANUARY, 2006

**PROPERTY:** <u>905 Magnolia Bayou</u>                **OWNER:** Sykes

**MONIES IN:**

   **RENTS:**                $1295.00

**MONIES OUT:**

   **MGT FEE:**            $ 129.50

   **REPAIRS/MAINT:**    $ 219.89*

**AMOUNT TO OWNER:** $ 945.61

**\*<u>REPAIRS</u>**

Bill Miller $42.50     Bill Miller $177.39

**Please call or email Gina with questions.  (gina@chesterharvey.com)**





**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
**chester@chesterharvey.com**
**Visit our website at www. chesterharvey.com**

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF FEBRUARY, 2006

**PROPERTY: 905 Magnolia Bayou**          **OWNER:  Sykes**

**MONIES IN:**

   **RENTS:**          $1295.00

**MONIES OUT:**

   **MGT FEE:**          $ 129.50

   **REPAIRS/MAINT:**     $    0.00*

**AMOUNT TO OWNER:** $1165.50

**\*REPAIRS**

No repairs were required in the past 30 days.

**Please call or email Gina with questions.** (gina@chesterharvey.com)



CHESTER HARVEY REALTORS
RENTAL MANAGEMENT
P O BOX 1108
OCEAN SPRINGS, MS 39566-1108

M&M
BANK

PASCAGOULA/GAUTIER/OCEAN SPRINGS
GAUTIER/BAGATAWA/WADDINURLEY
ST. MARTIN/LUCEDALE, MS
OCEAN SPRINGS, MS 69566-0001

| DATE | | DOLLARS | CENTS |
|------|--|---------|-------|
| CURRENCY | | | |
| COIN | | | |
| CHECKS LIST EACH SEPARATELY | | | |
| John Drake | | 1295 | 00 |
| Blanche | | | |
| | | | |
| Shiminsky | | 61995 | |
| 255 | | | |
| Nottingham | | | |
| Owner | | | |
| Pay in | | | |
| Repairs | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | | |
| **TOTAL** | | 7311 | 95 |



**CHESTER HARVEY, REALTORS**
P.O. BOX 1108, OCEAN SPRINGS, MS 39564
(228-875-8700) (888-473-5498) (228-875-8764 FAX)
chester@chesterharvey.com
Visit our website at www. chesterharvey.com

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF MARCH, 2006

**PROPERTY: 905 Magnolia Bayou**                    **OWNER:  Sykes**

**MONIES IN:**

    **RENTS:**               $1295.00

**MONIES OUT:**

    **MGT FEE:**        $ 129.50

    **REPAIRS/MAINT:**    $    0.00*

**AMOUNT TO OWNER: $1165.50**

**\*REPAIRS**

No repairs were required in the past 30 days.

Please call or email Gina with questions.  (gina@chesterharvey.com)

CHESTER HARVEY REALTORS
RENTAL MANAGEMENT CO.
P.O BOX 1108
OCEAN SPRINGS, MS 39566-1108

**M&M BANK**

PASCAGOULA/MOSS POINT/OCEAN SPRINGS
GAUTIER/ESCATAWPA/WADE/HURLEY
ST. MARTIN/LUCEDALE, MS
OCEAN SPRINGS, MS 39565-0901

| | DOLLARS | CENTS |
|---|---|---|
| DATE 3-1-06 | | |
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| Drake 905 Magnolia Bayou | 1295 | 00 |
| | | |
| Pershing 3605 Bay Branch | 1395 | 00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| TOTAL | | |



**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
**chester@chesterharvey.com**
**Visit our website at www. chesterharvey.com**

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF APRIL, 2006

**PROPERTY: 905 Magnolia Bayou**          **OWNER:  Sykes**

**MONIES IN:**

**RENTS:**          $1295.00

**MONIES OUT:**

**MGT FEE:**          $ 129.50

**REPAIRS/MAINT:**          $    0.00*

**AMOUNT TO OWNER:  $1165.50**

***REPAIRS**
No repairs were required in the past 30 days.

**Please call or email Gina with questions.  (gina@chesterharvey.com)**





**CHESTER HARVEY, REALTORS**
**P.O. BOX 1108, OCEAN SPRINGS, MS 39564**
**(228-875-8700) (888-473-5498) (228-875-8764 FAX)**
**chester@chesterharvey.com**
**Visit our website at www. chesterharvey.com**

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF MAY, 2006

**PROPERTY: 905 Magnolia Bayou**            **OWNER:  Sykes**

**MONIES IN:**

   **RENTS:**            **$1295.00**

**MONIES OUT:**

   **MGT FEE:**        **$  129.50**

   **REPAIRS/MAINT:**    **$    0.00\***

**AMOUNT TO OWNER:  $1165.50**

**\*REPAIRS**

No repairs were required in the past 30 days.

**Please call or email Gina with questions.  (gina@chesterharvey.com)**



CHESTER HARVEY REALTORS
RENTAL MANAGEMENT
P O BOX 1108
OCEAN SPRINGS, MS 39566-1108

M&M
BANK

PASCAGOULA/MOSS POINT/OCEAN SPRINGS
GAUTIER/ESCATAWPA/WADE/HURLEY
ST. MARTIN/LUCEDALE, MS
OCEAN SPRINGS, MS 39565 0001

| DATE 01-8-06 | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| Chain | 1195 | 00 |
| Westwind | | |
| Drake | 1295 | 00 |
| 908 Magnolia | | |
| Bayou | | |
| Masters | 1250 | 00 |
| 3404 Beaufont Rd | | |
| Pinehurst | | |
| Wilbanks | 875 | 00 |
| 16005 S. 17th | | |
| Payne | 1295 | 00 |
| 3700 Spring Wood | | |
| | | |
| TOTAL FROM OTHER SIDE | | |
| ATTACHED LIST | | |
| TOTAL | 5930 | 00 |



**CHESTER HARVEY, REALTORS**
P.O. BOX 1108, OCEAN SPRINGS, MS 39564
(228-875-8700) (888-473-5498) (228-875-8764 FAX)
chester@chesterharvey.com
Visit our website at www. chesterharvey.com

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF JUNE, 2006

**PROPERTY: 905 Magnolia Bayou**                    **OWNER:  Sykes**

**MONIES IN:**

   **RENTS:**              $1295.00

**MONIES OUT:**

   **MGT FEE:**         $  129.50

   **REPAIRS/MAINT:**     $    0.00*

**AMOUNT TO OWNER:  $1165.50**

**\*REPAIRS**

No repairs were required in the past 30 days.

**Please call or email Gina with questions.  (gina@chesterharvey.com)**



CHESTER HARVEY REALTORS
RENTAL MANAGEMENT
P O BOX 1108
OCEAN SPRINGS, MS 39566-1108

M&M
BANK
PASCAGOULA/MOSS POINT/OCEAN SPRINGS
GAUTIER/BISCATAWPA/WADE/HURLEY
ST. MARTIN/LUCEDALE, MS
OCEAN SPRINGS, MS 39566-0901

| DATE 5·31·06 | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| Lisa DeGrace | 1195 | 00 |
| 54 Lakeview | | |
| | | |
| Kurman | 1100 | 00 |
| 201 Holcomb | | |
| | | |
| | | |
| Ken Campbell | 1000 | 00 |
| 15 Briarwood | | |
| Transfer to trust | | |
| Ken Campbell | 25 | 00 |
| Credit | | |
| Check | | |
| | | |
| Drake | 1295 | 00 |
| 105 Mag | | |
| Bayou | | |
| | | |
| | | |
| | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| TOTAL | 4615 | 00 |



**CHESTER HARVEY, REALTORS**
P.O. BOX 1108, OCEAN SPRINGS, MS 39564
(228-875-8700) (888-473-5498) (228-875-8764 FAX)
chester@chesterharvey.com
Visit our website at www. chesterharvey.com

## RENTAL PROPERTY MANAGEMENT REPORT
## FOR THE MONTH OF AUGUST, 2006

**PROPERTY:** <u>905 Magnolia Bayou</u>          **OWNER:** Sykes

**MONIES IN:**

   **RENTS:**          $ 647.50 (July pro-rated) *(previous tenant)*

   **RENTS:**          $1395.00 (August -- new tenant)

**MONIES OUT:**

   **MGT FEE:**          $   64.75  (July)

   **MGT FEE:**          $ 139.50  (August)

   **FINDER'S FEE:**     $ 697.50

   **REPAIRS/MAINT:**    $ 187.97*

**AMOUNT TO OWNER:  $ 952.78**

**\*REPAIRS**

Bill Miller $100.00     Rhonda Y  $16.63     SREPA  $71.34

**Please call or email Gina with questions.  (gina@chesterharvey.com)**

CHESTER HARVEY REALTORS
RENTAL MANAGEMENT.
P O BOX 1108
OCEAN SPRINGS, MS 39566-1108

**M&M**
**BANK**

PASCAGOULA/MOSS POINT/OCEAN SPRINGS
GAUTIER/ESCATAWPA/WADE/HURLEY
ST. MARTIN/LUCEDALE, MS
OCEAN SPRINGS, MS 39566-0901

DATE 7-14-06

| | DOLLARS | CENTS |
|---|---|---|
| CURRENCY | | |
| COIN | | |
| CHECKS LIST EACH SEPARATELY | | |
| Frank | 675 | 00 |
| Maggione | | |
| 3713 | | |
| Springwood | | |
| ½ mo | | |
| rent | | |
| July | | |
| | | |
| Drake | 647 | 00 |
| 705 Magnolia | | |
| Bayou | | |
| ½ mo Rent | | |
| July | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| TOTAL FROM OTHER SIDE OR ATTACHED LIST | | |
| **TOTAL** | 1322 | 00 |

# FILED UNDER SEAL

**EXHIBIT 8**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


JOHN DRAKE, M.D., et al.,  )
                           )
          Plaintiffs,      )
                           )
versus                     )  Cause No.:
                           )  1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE     )
INSURANCE COMPANY,         )
                           )
          Defendant.       )
_____)


Videotaped Deposition of:

CHARLES HIGLEY

Tuesday, August 11, 2009

At the instance of the Plaintiffs


**EXHIBIT 9**

1    could be the rebuild, if the rebuild took less

2    than 12 months; it could be up until such time

3    that the policy limits were reached.

4                    It would have to be considered on

5    a case-by-case basis.  There is no -- something

6    like that would be, certainly, unique.

7                    Again, I don't know of a

8    situation like that, but there probably were --

9    there might have -- let me say there might have

10    been a case like that, I just don't know of one.

11    BY MR. VAN CLEAVE:

12    Q.          Well, you know that the Drakes

13    purchased a new home in July of 2006; right?

14    A.          Yes.

15    Q.          And that was less than 12 months after

16    the date of loss; correct?

17    A.          Yes.

18    Q.          And you know that the Drakes reflected

19    that they did not intend to utilize that home as

20    a permanent relocation; correct?

21                    MR. SCHULTZ:  Objection to form and

22        foundation.

23    A.          Yes.

24    BY MR. VAN CLEAVE:

25    Q.          And in fact Nationwide even conducted

1    its own independent investigation by going down

2    to the courthouse to find out whether or not the

3    Drakes even still owned the insured property;

4    right?

5    A.        Yes.

6    Q.        And the purpose of that was to see if

7    you could support a determination that they had

8    permanently relocated so that that would serve

9    as a cutoff for ALE; right?

10   A.        Yes.

11   Q.        And through that investigation

12   Nationwide discovered evidence that in fact the

13   Drakes did still own the insured property;

14   correct?

15   A.        Yes.

16   Q.        And that discovery was consistent with

17   the Drakes' representations that they did not

18   intend to permanently relocate by virtue of

19   purchasing a new home; correct?

20             MR. SCHULTZ:  Objection to form and

21        foundation.

22   A.        Yes.

23   BY MR. VAN CLEAVE:

24   Q.        Even if the Drakes purchased a new

25   home during the 12-month period following the

1    date of loss, they would still be entitled to

2    coverage under the additional living expense

3    provisions of their policy as long as they did

4    not intend to permanently relocate to that home

5    at the time of purchase; correct?

6                    MR. SCHULTZ:  Object to form.

7    A.          That would be one way of looking at

8    it.

9    (Exhibit 22 marked.)

10   BY MR. VAN CLEAVE:

11   Q.          Okay.  Page -- I'm giving you now

12   what's been marked as Exhibit 22 to your

13   deposition.  And this is another letter from you

14   to Katrina -- or e-mail I should say -- dated

15   October 2nd, 2005; right?

16   A.          Yes.

17   Q.          And first it discusses the Claims

18   Coverage Committee's role; right?  In the claims

19   process.

20   A.          It first addresses the team leads.

21   Q.          Okay.  Second paragraph addresses the

22   Claims Coverage Committee's role; right?

23   A.          Yes.

24   Q.          And then states that the Claims

25   Committee -- Claims Review Committee has been

d93c248d-accb-46d5-9a55-889fc34125d0