

**Natiofwide®**
*On Your Side℠*

925 Tommy Munro Blvd, Suite B * Biloxi, MS 39532 * *

February 6, 2006

John K And Debarah J Drake
905 Magnolia Bayou Blvd
Ocean Springs, MS 39564

**OUR INSURED :** John K And Debarah J Drake
**OUR CLAIM NUMBER :** 63 23 MP 669310 08292005 01
**DATE OF LOSS :** 08-29-2005

Dear John K And Debarah J Drake:

As you know, our obligation to you as an insurer is to reimburse you for losses which are covered under the terms of your policy.

After our conversation with you on February 4, 2006, we have determined that the claim in question is not a covered loss under your Nationwide Mutual Fire Insurance Company policy. You explained that the damage reported on this claim was caused by wind. Your policy with Nationwide Mutual Fire Insurance Company does not cover wind damage to your property.

**Endorsement H-6072** attached to your policy reads in part:

1. We do not insure for loss caused directly or indirectly by the perils of windstorm or hail; and

2. Windstorm or hail loss is excluded regardless of any cause or event contributing concurrently or in any sequence to the loss.

We will cover direct loss by fire or explosion resulting from windstorm or hail damage.

This exclusion does not apply to Coverage D – Loss of Use.

All other policy provisions apply.

Please do not construe this letter or any act or failure to act on the part of Nationwide Mutual Fire Insurance Company or its Representatives or Agents as a waiver of any rights or defenses available to it by contract or as law, as all such rights and defenses are hereby specifically reserved.

EXHIBIT 11

NW-DRA000192

Should you have any other information that you would like for Nationwide Mutual Fire Insurance Company to consider or that you feel would affect Nationwide Mutual Fire Insurance Company's coverage investigation and subsequent coverage decision in this matter, please do not hesitate to send that information directly to us. We would be happy to review the information and re-evaluate the decision in this matter as necessary.

Nationwide Mutual Fire Insurance Company
Steve Songe
Claims Department
(888)460-3908

NW-DRA000193



**NationWide®**
*On Your Side℠*

925 Tommy Munro Blvd, Suite B * Biloxi, MS 39532 * *

February 6, 2006

John K And Debarah J Drake
905 Magnolia Bayou Blvd
Ocean Springs, MS 39564

**OUR INSURED :** John K And Debarah J Drake
**OUR CLAIM NUMBER :** 63 23 MP 669310 08292005 01
**DATE OF LOSS :** 08-29-2005

Dear John K And Debarah J Drake:

In response to your claim, Nationwide Mutual Fire Insurance Company ("Nationwide") has performed an investigation and inspected the damages to your property. Based on this investigation and the information available to Nationwide, it appears that your loss was caused by water or water-borne material as defined in your policy. Unfortunately, your policy with Nationwide does not provide coverage for this cause of loss and we must deny your claim.

Our obligation as an insurer is to indemnify our policyholders for losses which are covered under the terms of their policies. Your policy provides in pertinent part as follows:

## *Property Exclusions*
(Section I)

1. We do not cover loss to any property resulting directly or indirectly from any of the following. Such a loss is excluded even if another cause or event contributed concurrently or in any sequence to cause the loss.

   b. Water or damage caused by water-borne material. Loss resulting from water or water-borne material damage described below is not covered even if other perils contributed, directly or indirectly to cause the loss. Water and water-borne material damage means:

   (1) flood, surface water, waves, tidal waves, overflow of a body of water, spray from these, whether or not driven by wind.

   (2) water or water-borne material which:

   (a) backs up through sewers or drains from outside the dwelling's plumbing system;

Page 1 of 2

NW-DRA000194

or
(b) overflows a sump pump, sump pump well or other system designed to remove subsurface water or water-borne material from the foundation area.

(3) Water or water-borne material below the surface of the ground, including water or water-borne material which exerts pressure on, seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool, or other structure.

Resulting direct loss by fire, explosion or theft is covered.

If you become aware of additional facts or damages which you believe Nationwide has not had an opportunity to review and consider, please let us know as soon as possible to allow us to review your claim.

By stating the above-referenced reason for denial, Nationwide does not waive its right to deny and defend against this claim for any other valid or lawful reason. Nationwide expressly reserves all rights it has under all applicable laws, policy conditions and terms and, by listing the above information and basis for denial, does not waive any of such rights and defenses or other grounds which may be discovered during future investigation or discovery associated with this loss and claim.

Should you have any questions concerning Nationwide's denial of coverage in this matter, please contact me.

Sincerely,

Nationwide Mutual Fire Insurance Company
Steve Songe
Claims Department
(888)460-3908

NW-DRA000195

```
 1        IN THE UNITED STATES DISTRICT COURT FOR THE
               SOUTHERN DISTRICT OF MISSISSIPPI
 2                   SOUTHERN DIVISION

 3

 4   JOHN K. DRAKE, M.D. AND
     DEBARAH J. DRAKE
 5                                      PLAINTIFFS
 6
     V.                    CASE NO. 1:08CV69-LTS-RHW
 7

 8   NATIONWIDE MUTUAL FIRE
     INSURANCE COMPANY;
 9   NATIONWIDE MUTUAL
     INSURANCE COMPANY; AND
10   JOHN AND JANE DOES A-G
                                        DEFENDANTS
11

12           DEPOSITION OF DEBARAH DRAKE

13
     Taken at the instance of the Defendants at Watkins,
14    Ludlam, Winter & Stennis, Biloxi, Mississippi, on
      Thursday, August 13, 2009, beginning at 8:50 a.m.
15

16   APPEARANCES:

17
          W. CORBAN GUNN, ESQ.
18        Corban, Gunn & Van Cleave
          146 Porter Avenue
19        Biloxi, Mississippi 39533

20
               COUNSEL FOR PLAINTIFF
21

22        DANA E. HILL, ESQ.
          Kirkland & Ellis
23        655 Fifteenth Street, N.W.
          Washington, D.C. 20005

24
25             COUNSEL FOR DEFENDANTS, NATIONWIDE
```

aab8c91d-a645-4220-8e9b-9d67bacaff7f

```
 1        Q.    I want to show you what's been marked as
 2   Defense Exhibit 35.
 3              (Exhibit 35 marked for identification.)
 4        Q.    Do you recall receiving this letter from
 5   Ted Biddy?
 6        A.    I don't recall the letter.  I remember
 7   getting the copies of the report.
 8        Q.    Okay.  Fair to conclude that you received
 9   Ted Biddy's report on or about February 11th, 2006?
10        A.    Yes.
11        Q.    Is it fair to conclude that you did not
12   receive it any earlier than that or any later than
13   that?
14              MR. GUNN:  Object to the form.
15        A.    I assume it's the date on here.
16        Q.    (By Mr. Hill)  Show you what's been marked
17   as Defense Exhibit 82.
18              (Exhibit 82 marked for identification.)
19        Q.    This was a letter of July 10th, 2006, and
20   it just acknowledges the receipt of Ted Biddy's
21   engineering report.  Do you have any reason to
22   believe that Nationwide received Ted Biddy's report
23   prior to July 10th, 2006?
24              MR. GUNN:  Object to the form.
25        A.    I sent one earlier.
```

aab8c91d-a645-4220-8e9b-9d67bacaff7f

```
1        Q.    (By Mr. Hill)   Sometime between --
2        A.    I sent two.
3        Q.    Okay.   Sometime earlier than July 10th,
4   2006 --
5        A.    I don't know any time line.  I've been
6   through too much to remember events and times.
7        Q.    Okay.
8        A.    But I know physically -- physical things
9   that I went to do are clearer, and I remember
10  sending two, because I was very angry that I had to
11  send another one.
12       Q.    Okay.
13       A.    Because they cost so much, I felt that I
14  had wasted one by Nationwide losing it or the mail
15  losing it.
16       Q.    Do you remember whether it was -- I think
17  we -- the best we could narrow it down was sometime
18  between October and, presumably, it would have been
19  sent between February 2006 and July 2006.  Do you
20  remember if it was closer to February 2006 or closer
21  to July 2006?
22       A.    Huh-huh.   (Witness shakes head
23  negatively.)
24       Q.    Do you have a recollection of waiting to
25  send Ted Biddy's report out after receiving it?
```

aab8c91d-a645-4220-8e9b-9d67bacaff7f

1        A.      (Witness shakes head negatively.)

2                MR. GUNN:  Yes or no?

3        A.      No.

4        Q.      (By Mr. Hill)  I want to show you what's

5    been marked as Defense Exhibit 83.

6                (Exhibit 83 marked for identification.)

7        Q.      Do you recall receiving this letter?

8                MR. GUNN:  Object to the form.

9        A.      (Examining.)  I didn't look at these

10   things.  I didn't look at these letters.

11       Q       (By Mr. Hill) Do you --

12       A.      By this date, I had turned it over.

13       Q.      To your husband?

14       A.      Yes.

15       Q.      Do you recall any oral conversations that

16   you had had between -- with Nationwide, putting

17   aside the conversation where somebody asked for an

18   engineer's report and you supplied an engineering

19   report --

20       A.      Ask me that again.

21       Q.      Sure, sure.  I had thought I heard you

22   suggest that the reason you prepared an engineering

23   report is that somebody asked you to send an

24   engineering report.  Am I wrong about that?

25       A.      I don't know why I sent it.

aab8c91d-a645-4220-8e9b-9d67bacaff7f

1        Q.    Okay.

2        A.    But I -- I remember sending it, and the

3    main reason I remember sending it is because I was

4    upset that I had to send another one, and I only had

5    so many.

6        Q.    Well, do you recall any conversations with

7    Nationwide between the date of the denial,

8    February 2006, and July 2006?

9        A.    I'm sure I answered the phone and someone

10   from Nationwide was calling, but I did not have any

11   information that they wanted.

12       Q.    So that was all talk to my husband?

13       A.    Uh-huh (affirmative response).

14       Q.    That was the extent of those

15   conversations, correct?

16       A.    Correct.

17             VIDEOGRAPHER:    It's two minutes.

18       Q     (By Mr. Hill) Looking at -- looking at

19   July 15th conversation -- July 15th letter, it

20   states, "As previously discussed, we are requesting

21   copies of your incurred additional living expenses

22   invoices from the period August 28, 2005, until

23   February 8, 2006."  Did you understand by the date

24   of this letter that Nationwide was looking for your

25   receipts and invoices?

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DRAKE, M.D., et al., )
)
       Plaintiffs, )
)
versus ) Cause No.:
) 1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE )
INSURANCE COMPANY, )
)
       Defendant. )
_____)


        Videotaped Deposition of:

        CHARLES HIGLEY

        Tuesday, August 11, 2009

        At the instance of the Plaintiffs


EXHIBIT 13

d93c248d-accb-46d5-9a55-889fc34125d0

1    forensic engineering study, I conclude that the

2    root cause of all the damages to the Drake house

3    was the early winds of Hurricane Katrina; right?

4    A.         That is what he has stated.

5    Q.         At Page 3336, Mr. Biddy states that

6    his evaluation, at the top of the page, his

7    evaluation of the hurricane forces on the Drake

8    house were based both on his visual observations

9    of the blown-away structure with partial wall

10   foundations remaining and detailed structural

11   engineering calculations as set forth in the

12   appendix to his report; right?

13                  MR. SCHULTZ:  Objection to form;

14        foundation; hearsay.

15   A.         He -- that's what he stated.

16   BY MR. VAN CLEAVE:

17   Q.         And at Page 3338, first full

18   paragraph, Mr. Biddy's report states that, The

19   engineering analysis and structural calculations

20   I performed for the Drake property and house

21   prove with a high degree of engineering

22   certainty that the winds of Hurricane Katrina

23   were the cause of the first destruction of the

24   building and contents with the later storm water

25   causing no structural destruction in the house;

1   correct?

2           MR. SCHULTZ:  Objection to form;

3     foundation; hearsay.

4   A.       That's, that's how it reads.

5   BY MR. VAN CLEAVE:

6   Q.       And the H.S.A. or Conestoga-Rovers

7   report has no conclusions regarding the first

8   cause of loss to the Drakes' residence; isn't

9   that correct?

10   A.       Well, not on the report that we looked

11   at.  We weren't asking them to speculate.

12   Q.       And on July 10th, 2006, at Bates

13   No. 403 in the claims file, Nationwide

14   acknowledged receipt of Ted Biddy's report and

15   stated that it would review the information and

16   contact Dr. Drake once the investigation was

17   complete; correct?

18           MR. SCHULTZ:  At least show what

19     you're referencing.

20           MR. VAN CLEAVE:  Yes.  It's page

21     403, July 10th, 2006.

22           MR. SCHULTZ:  I don't think, I

23     don't think you've marked that as an

24     exhibit yet.

25           MR. VAN CLEAVE:  I haven't, but I'm

d93c248d-accb-46d5-9a55-889fc34125d0



Charles A Higley
Claims Manager
TN Property Claims
Phone: Phone: 615-902-6104
Pager: 800-672-3780
Fax: 615-889-3008
Cell: 615-714-1287
15 Century Blvd. Suite 300, Nashville,
TN 37214
09/09/2005 07:18 PM

To:   Barbara A Whitehouse/Nationwide/NWIE@NWIE;
Frederick Achala/Nationwide/NWIE@NWIE; John R
Dunning/Nationwide/NWIE@NWIE; Kevin L
Malone/Nationwide/NWIE@NWIE; Mark E
Owens/Nationwide/NWIE@NWIE; Tom P
Madjar/Nationwide/NWIE@NWIE; Michael A
Sbarra/Nationwide/NWIE@NWIE; Rod H
Klette/Nationwide/NWIE@NWIE; George A Dos
Santos/Nationwide/NWIE@NWIE; Joseph G
Bunk/Nationwide/NWIE@NWIE; Roger M
Hansberry/Nationwide/NWIE@NWIE; Gary P
Young/Nationwide/NWIE@NWIE; Leonard D Davis
Jr/Nationwide/NWIE@NWIE; John R
Dukes/Nationwide/NWIE@NWIE; Phillip R
Klenkel/Nationwide/NWIE@NWIE; Lee R James
Jr/Nationwide/NWIE@NWIE
cc:
bcc:
Subject:

Please read and distribute to your teams with instruction to "Read and comply". This is a communication from the Mississippi Insurance Department about their expectations for our claims handling practices for the CAT. I don't think there is anything in the message that we would not do with our usual practices Just be sure to use good common sense and practice good faith

Please

----- Forwarded by Charles A Higley/Nationwide/NWIE on 09/09/2005 05:59 PM -----



Randall J Looper, CPCU, AIC, ARM
Special Claims Representative II
South Central Catastrophe Coordinator
Arkansas Property Team

Phone: 479 996 6464
Fax: 479 996 5404
Greenwood, AR
09/09/2005 07:08 AM

To:   John R Dukes/Nationwide/NWIE@NWIE; Charles A
Higley/Nationwide/NWIE@NWIE; Leonard D Davis
Jr/Nationwide/NWIE@NWIE
cc:
bcc:
Subject:

Read and comply. tks


Misc 001.jpg

EXHIBIT 14

NW-DRA001624



NW-DRA001625



Charles A Higley
Claims Manager
TN Property Claims
Phone: Phone: 615-902-6104
Pager: 800-672-3780
Fax: 615-889-3008
Cell:615-714-1287
15 Century Blvd. Suite 300, Nashville,
TN 37214

09/13/2005 09:41 AM

To:      Stephen L Patton/Nationwide/NWIE@NWIE
cc:      Jeffrey K Gilbert/Nationwide/NWIE@NWIE, Lee R James
Jr/Nationwide/NWIE@NWIE, Randall J
Looper/Nationwide/NWIE@NWIE
bcc:
Subject: Re: Please forward the following



Quick reference guide for Mississippi Claims It also contains FAQs.


MODEL OPENING STATEMENT
Steve Patton



Steve Patton
Manager, National Catastrophe Team
P&C Technical Claims Organization

Phone: 757-288-3131
Fax: 804-675-3453
Richmond, VA
09/12/2005 07:11 PM

To:      Charles A Higley/Nationwide/NWIE@NWIE
cc:      Randall J Looper/Nationwide/NWIE@NWIE, Jeffrey K
Gilbert/Nationwide/NWIE@NWIE, Lee R James
Jr/Nationwide/NWIE@NWIE
bcc:
Subject: Please forward the following


Please forward the correct version of the FAQ's, QUICK REFERENCE GUIDE and MODEL OPENING
STATEMENT for Xactimate to me for distribution to the Mason teams.... thanks.

NW-DRA001043

# Quick reference guide for Mississippi Claims

OTHER INFORMATION:
Jackson Cat Office:
6040 I-55 N Frontage Rd, Jackson MS, 39211
Phone: 601-957-6400
633153 - Mississippi disbursement code
772151 - AL disbursement code
Mississippi is a Valued Policy State for Fire and Lightning only. NOT WIND!

**License** - No license is required to handle claims in Mississippi.

**RC/ACV – Policy language:** ACV should be paid on structure losses above $10,000 of damage **BEFORE** deductible is applied. Depreciation does not apply to repairs. ACV should be paid on coverage C from dollar one until replaced (Option J).
**Note: Structures that are not buildings are ACV only. \*\*When the gross damages to the Dwelling are over $5,000.00, payments should include the Mortgagee.**

**Sales tax –** should be paid on all contents losses regardless of ACV or RC. Sales Tax on Material & labor for structure losses. **Xactimate reflects state sales tax only.**
**Mississippi Sales Tax:** is 7% everywhere.... The only exception is the City of Tupelo, MS where the sales tax is 7.25%. **Pay sales tax on Materials _and_ Labor.**
**Overhead & Profit -** should be considered when it is reasonably necessary that a general contractor is needed to facilitate the repairs.

**X-Wind** – We do not insure for loss caused directly or indirectly by the perils of windstorm or hail. **It is extremely important to check for this exclusion.** Policyholder most likely has coverage through the **Mississippi Windpool ( 601-981-2915).** Always refer the policyholder back to the Agent and denial letter must be sent. Form numbers are as follows:

**H-6072**
**Fire 3082**
**113-9, 122-11, & 121-11 Policies – 175**
**NOTE: This exclusion DOES NOT apply to Additional Living Expense**

**X WIND CARRIERS**

| COUNTIES | CARRIERS |
|---|---|
| Pearl River, Hancock, George, Jackson, Pike, Amite, Wilkinson, Adams, Franklin, Lincoln | Phillips & Associates 1-601-956-5650 1-800-898-087 |
| Stone, Harrison, Greene, Perry, Forrest, Lamar, Marion, Walthall, Lawrence, Jefferson, Davis, Covington, Jones, Wayne | F.A.R.A. 1-877-605-3272 |

NW-DRA001044

**Hurricane Deductibles** – Many Mississippi polices carry a Hurricane deductible, typically in the form of a percentage (**of coverage A**). The Hurricane coverage and deductible takes effect as soon as any part of the state of Mississippi is under a hurricane watch or warning and remains in effect until 72 hours after the watch or warning is lifted. The Hurricane deductible form numbers are:

**H-6107**
**Fire 3702**

**NOTE: If NOL shows both the X-wind (H-6072 or Fire 3082) and the hurricane deductible (H-6107 or Fire 3702) on the coverage, we will apply the hurricane deductible ONLY.    The X-wind exclusion will NOT apply.**

**On losses less than limits, calculate the percentage deductible by the Coverage A- Dwelling limit printed on the policy declarations page.**

**DO NOT factor in the inflation guard factor unless the coverage limits are exceeded.   To calculate the increase in limits and deductible use the following calculation:**

On your CLASS coverage screen, bottom right, you will see Paid ED and Paid LD

**LD/ED = Inflation factor (make sure it goes out 4 decimals – 1.xxxx)**
**Inflation factor  x  Coverage A limit = Inflation Coverage A limit**
**Inflation Coverage A limit x  Hurricane Ded % = PH hurricane deductible**

## HO 23 – NOTE EXCLUSION
n) Windstorm or hail to any:
(1) structure, other than a building, including the supports and screens, with a roof-like covering of cloth, metal, plastic or fiberglass, whether or not the structure is attached to a building.
(2) screens, including their supports, around a pool, patio or other areas.
(3) property lines and similar walls, including seawalls, greenhouses, hothouses, slathouses, trellis, pergolas, cabanas and outdoor equipment used to service the residence premises.
(4) structure, including property in or on the structure, which is in whole or part, in or over water.

**Denials** – ALL denials should be in writing and contain proper policy language.  This includes partial denials.  It is recommended to Copy the Agent on all denials.  Use the current denial claims document in CLASS.  **Loss Less than Deductible**:  Estimate MUST be sent to Policyholder along with CLASS document to explain the reason for no payment.

**Potential Coverage Issues:**
**Trees: MH- 1979 Policies**- There is no windstorm coverage for trees. If a tree falls on covered property (dwelling, fence, driveway, etc.), we will remove the tree in order to

NW-DRA001045

access the covered property for repair. Removing the tree means simply dropping it off the covered property and rolling it aside. There is NO live tree debris removal. Trees are limited to $250. for lightning damage.

**H0-23-** Trees are covered for damage by lightning. The liability for trees is limited to $500 for any one tree with an additional 5% (25.00) available for debris removal if the value of the tree and cost to remove is $500. or more. There must be physical evidence of damage by lightning.

**Tree Debris Removal -** As in the past, tree removal is covered if it is on damaged covered property and we need to remove it for access to repair the damaged property. The coverage to remove the tree so that repairs can be done is the coverage for the damaged property. This coverage only removes the tree off the damaged covered property.

**Debris Removal: Live Tree Removal:** In the event of loss, we will also pay the reasonable expense you incur for the removal of live tree debris from the residence premises which **does not cause damage to covered property or structures**. The most we will pay is $500.00, regardless of the number of trees requiring removal. Loss must be the result of a Coverage C Perils Insured Against. This is an additional amount of coverage.

**Food spoilage:** **Coverage applies for HO, Condo, Mobile Home.**

**Consequential Loss:** – we cover insured personal property in a building at the residence premises for loss due to temperature change resulting from power interruption. **There must be damage to the residence premises caused by a covered peril. (if x-wind policy – no coverage as wind is loss cause).   No limit to this coverage (except Cov C limit). ** Deductible applies.**

**Refrigerated Property** – If power interruption occurs off premises, we will pay up to $500 for loss in a freezer or fridge due to temp change. **There is no refrigerated Property coverage on MH or 121-11 policy. *** Deductible applies.**

**ALE –**
    The policy language regarding ALE reads in part as follows:
    1. **Additional Living Expense.** If a covered loss requires **you** to leave the **residence premises, we** pay the required increase in living expense **you** incur to maintain **your** normal standard of living. Payment will be for the shortest time required to repair or replace the premises; or if **you** permanently relocate, for the shortest period of time required for **your** household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period.

No deductible applies to this coverage. **There must be a covered loss to the residence premises which requires the policyholder to leave the premises.  REASONABLE ALE CAN BE ADVANCED ON A CASE BY CASE BASIS BASED ON THE CUSTOMER'S INDIVIDUAL NEEDS AND CIRCUMSTANCES.**

NW-DRA001046

We do not owe for pre-hurricane evacuations even if mandated by law enforcement. We only owe prohibited use coverage if there is first damage to a neighboring premise by a covered peril. **Remember to not add TAX or OH&P on items where you are paying the limit. The limit is the limit!**

**Fences:** Fences are paid at ACV as are all other structures that are not buildings. X-wind policies do not have coverage for wind damage to fences.

**Swimming Pool –** Inground or above ground pool surrounded by decking which attaches to dwelling coverage is found under Cov A. If inground or above pool is separated by a clear space from the dwelling, it is Cov B

## STORM CENTER CALLBACK # 888-460-3908

**\*\*\*\* Please do not give out the Claim Manager's or Director's phone numbers to the Policyholder. You may provide the callback number to escalate an emergency.**

### Q & A

- **Is food spoilage coverage under ALE?** No it is not, please see above regarding refrigerated property and consequential loss and food spoilage is subject to Hurricane deductible.
- **Is there a time frame that we should be telling the policyholder they can expect to be contacted?** Absolutely not. We need to inform them that a Claims Associate will be in contact as soon as possible. We have hundreds of personnel in the area and they are working as hard as they can. Claims are being prioritized based on severity. We thank you for your patience.
- **If I can't get a hold of Policyholder and the loss seems less than their deductible by reviewing the Notice of Loss, should I close and send Loss Under Deductible Letter?** Absolutely not. We need to make contact, scope and write an estimate to determine the policyholder's loss.
- **Should I advise the policyholder to make temporary repairs?** Yes, the policy covers reasonable and necessary repairs made to protect the property from further damage. Advise the customer to save all receipts and be wary of price gouging contractors. Once temporary repairs are made, the customer may obtain estimates from local contractors, but they should wait to hear from a Nationwide claims representative before proceeding further. Be aware of the large hurricane deductible as lighter damage may fall entirely under the deductible.

  Water claims and the threat of mold growth is a real issue in today's environment. Be sure the policyholder tarps the roof or does something to prevent additional water from entering the property and promptly makes an attempt to extract any water from the building. We recommend a professional water extraction vendor be utilized.

NW-DRA001047



Charles A Higley
Claims Manager
TN Property Claims
Phone: Phone: 615-902-6104
Pager: 800-672-3780
Fax: 615-889-3008
Cell:615-714-1287
15 Century Blvd. Suite 300, Nashville,
TN 37214
**09/20/2005 11:57 AM**

To: Katrina
cc:
bcc:
Subject:
X-wind losses

Thanks!! to Linda Graykowski for this communication that she sent to everyone in ISU. The guidelines are the same for the rest of us. Please pass on your teams.

## MISSISSIPPI X-WINDS WORKFLOW

There are several possible scenarios for X-wind claims for Mississippi Katrina losses

1.      Claims with the H-6072, Wind Exclusion which not only has wind damage, but also flood or wind driven rain resulting in interior water damage

2.      Claims with the H-6072, Wind Exclusion and the H-6107, Hurricane Deductible which have only wind damage

3.      Claims with the H-6072, Wind Exclusion and the H-6107, Hurricane Deductible with wind and flood damage

4.      Claims with the Fire 3082, Wind Exclusion, with wind damage only

5.      Claims with the Fire 3082, Wind Exclusion, with wind and water damage only

6.      Claims with the Fire 3082, Wind Exclusion, with wind and flood damage

7.      Claims on the 113-9, 122-11 & 121-11 policies with the 175 Wind Exclusion.

8.      Claims that may be any of the above with ALE payments or requests for payment

That being said, all of the above scenarios are to be handled exactly the same All X-Wind claims must be field inspected  No coverage determination can be discussed with the insured until the Mississippi Claim Coverage Committee has reviewed the claim This committee must review ALL denials, before any denial letter can be issued.

If during initial contact, by the contact unit, a customer requests ALE advance, please instruct them to go to the mobile unit closest to them.  If the customer is not able to go to one of the mobile units, the contact unit should follow the established ALE request guidelines If during a field inspection, the customer requests the ALE, the claims associate can handle this request on site if appropriate

NW-DRA001135

**GEORGE DALE**
Commissioner of Insurance
State Fire Marshal

**LEE HARRELL**
Deputy Commissioner



**STATE OF MISSISSIPPI**
Mississippi Insurance Department

501 N. West Street
1001 Woolfolk Building (39201)
Post Office Box 79
Jackson, Mississippi 39205-0079
(601) 359-3569
http://www.doi.state.ms.us

Mississippi Insurance Department
Bulletin No. 2005-6
September 7, 2005

This Office has been working with Mississippi consumers and the insurance industry to ensure that Mississippians impacted by Hurricane Katrina are treated fairly and receive compensation in a timely manner. While a lack of housing, communications and fuel has made it difficult in many cases for adjusters to get with insureds, this situation is improving daily and the claims adjustment process is moving forward.

My Office has been contacted by Mississippians who advise that their adjusters allegedly denied their homeowners' claims without inspecting the damaged property. While there was significant water damage on the Mississippi Gulf Coast, and homeowners' policies offered throughout the United States generally contain a water damage exclusion, an adjuster cannot summarily determine the cause of damage without inspecting the damaged property. Consequently, I am instructing all companies to be aware of these issues and to fully inspect any damaged property before a coverage decision is made.

In some situations, there is either very little or nothing left of the insured structure and it will be a fact issue whether the loss was caused by wind or water. In these situations, the insurance company must be able to clearly demonstrate the cause of the loss. I expect and believe that where there is any doubt, that doubt will be resolved in favor of finding coverage on behalf of the insured. In instances where the insurance company believes the damage was caused by water, I expect the insurance company to be able to prove to this office and the insured that the damage was caused by water and not by wind.

These are very difficult times for our State and region, and I ask that the insurance industry construe coverage issues in a manner that will afford coverage to as many of our citizens as possible. We will continue to work with Mississippi consumers and the insurance industry to ensure that all claims are fairly and promptly processed.

This the 7th day of September, 2005.

Sincerely,

GEORGE DALE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DRAKE, M.D., et al., )
                          )
          Plaintiffs,     )
                          )
versus                    ) Cause No.:
                          ) 1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE    )
INSURANCE COMPANY,        )
                          )
          Defendant.      )
_____)


          Videotaped Deposition of:

          CHARLES HIGLEY

          Tuesday, August 11, 2009

          At the instance of the Plaintiffs

EXHIBIT 15

d93c248d-accb-46d5-9a55-889fc34125d0

1    Nationwide, the record reflects, until June

2    of 2006.

3  BY MR. VAN CLEAVE:

4  Q.        Look at Page 3487 of the claims

5  activity log in Exhibit 4, if you will.

6  A.        I'm sorry, I didn't catch the number.

7  Q.        3487.  It's an entry on July the 24th,

8  2006, by Roger Woods.

9            In Mr. Woods' report in the

10  second paragraph on 3487 concluded in the second

11  sentence that, Due to the conclusion above in

12  Mr. Biddy's report, this does put the cause of

13  loss into controversy; right?

14  A.        Yes.

15  Q.        And "cause of loss into controversy"

16  could be otherwise stated as meaning there's a

17  question or doubt about the cause of loss;

18  correct?

19  A.        Yes.

20  Q.        And it was Nationwide's policy to

21  resolve doubt about cause of loss in favor of

22  coverage for the insured; correct?

23  A.        Yes.

24  Q.        And so that's what Nationwide decided

25  to do on July the 24th, 2006; correct?

1   A.       Yes.  And that's why I stated that it

2   was a business decision, and that's what I

3   consider a compromise --

4   Q.       Now --

5   A.       -- when there's that' kind of dispute.

6   Q.       Did Nationwide ever communicate to the

7   Drakes that it had concluded there was a doubt

8   about the cause of loss to their home and that

9   Nationwide was going to resolve that doubt in

10   favor of coverage?

11   A.       Well, our investigative work on this

12   matter was not complete at that time in that

13   we -- as Mr. Woods directed, the report from Ted

14   Biddy was sent to H.S.A. for review.

15   Q.       Well, that's right.  And you also made

16   a decision as reflected on Page 3481 on

17   10/17/2006 to find out how much was paid to the

18   Drakes under their wind policy; right?

19   A.       Yes.

20   Q.       And that was a direction that you

21   personally gave; correct?

22   A.       Yes.

23   Q.       And the conclusion of that

24   investigation was that the Drakes had been paid

25   policy limits for damage to their dwelling under

Cov:
Claimant:

0200 ADVISORY COMMENTS: - Returned call to Mrs. Drake and discuss claim letter which I show was sent out again from CBU so that was her main question. Insd also stated that she had not sent receipts requested because she feel that they would get lost so I asked her to please make copies and send if she would like us to complete the investigation. Mrs. Drake stated that she will wait for Mr. Drake to return from out of the country and have him forward R&R and receipts. Insd had no further questions or concerns.

Date: 2006-11-29 Time: 18:02:24
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0205 :CAT CBU CONTACT (BONHOMS)...Mrs.PH called and stated that she received Proof of Loss letter but has nto received R of R Letter. I printed out letter and mailed to updated address per PH...
                    305 Rue Tonti
                    Ocean Springs MS  39564

Date: 2006-11-29 Time: 17:55:24
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Printed: Reservation of Rights Letter; Sent to John K And Debarah J Drake from Stanly Bonhommo (Comments:) Mail

Date: 2006-11-10 Time: 11:57:37
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0110 -STATUS FWP (HARMERA)...On this date, CA mailed certified copy of ROR and Sworn Proof of Loss.

Date: 2006-11-10 Time: 11:39:07
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Printed: Reservation of Rights Letter; Sent to John K And Debarah J Drake from Alec R Harmer (Comments:) Mail

Date: 2006-11-10 Time: 11:37:05
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Saved. (Re:) Reservation of Rights Letter

Date: 2006-11-10 Time: 11:01:06
Creator: ARCTACM1

EXHIBIT 16

NW-DRA000314

# *Property Conditions*

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

    a) to the insured for more than the insured's interest.

    b) for more than the limit of liability.

2. **Deductible.** The deductible amount shown on the Declarations or endorsements attached to this policy is the amount of loss paid by the insured. We pay for covered loss above the deductible amount.

3. **Your Duties after Loss.** In case of loss, you must:

    a) give immediate notice to us or our agent; and also to the police in case of theft. In case of loss under the credit card coverage, also notify the credit card (Electronic Fund Transfer Card) company. If loss is caused by or results from the peril of hail, loss must be reported to us or our agent within 6 months of the loss event.

    b) protect the property from further damage. **You** must make repairs required to protect the property and keep a record of repair expenses.

    c) as often as we reasonably require:

    (1) show us the damaged property; and

    (2) provide records and documents we request and permit us to make copies.

    (3) submit to examinations under oath and sign same. At your or our request, the exams will be conducted separately and not in the presence of any other persons except legal representation.

    d) submit to us, within 60 days after we request, your signed, sworn proof of loss which sets forth, to the best of **your** knowledge and belief:

    (1) the time and cause of loss.

    (2) interest of the insured and all others in the property involved and all liens on the property.

    (3) other insurance that may cover the loss.

    (4) changes in title or occupancy of the property during the term of the policy.

    (5) specifications of any damaged property and detailed estimates for repair of damage.

    (6) a list of damaged personal property showing in detail the quantity, description, **actual cash value,** and amount of loss. Attach all bills and receipts that support the figures.

    (7) receipts for additional living expenses and records supporting the fair rental value loss.

    (8) evidence or affidavit supporting a claim under the Credit Card, Electronic Fund Transfer Card, Access Device and Forgery Coverage. It should state the amount and cause of loss.

4. **Loss Settlement.** Covered losses will be settled, up to the applicable limit of liability, by us paying:

    a) **actual cash value** at the time of loss, the amount not to exceed **actual cash value,** needed to repair or replace:

    (1) personal property and structures that are not buildings;

    (2) carpeting (including wall-to-wall) and cloth awnings;

E1

EXHIBIT 17

NW-DRA000078

Cov:
Claimant:

0200 ADVISORY COMMENTS: - Returned call to Mrs. Drake and discuss claim letter which I show was sent out again from CBU so that was her main question. Insd also stated that she had not sent receipts requested because she feel that they would get lost so I asked her to please make copies and send if she would like us to complete the investigation. Mrs. Drake stated that she will wait for Mr. Drake to return from out of the country and have him forward R&R and receipts. Insd had no further questions or concerns.

Date: 2006-11-29  Time: 18:02:24
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0205 :CAT CBU CONTACT (BONHOMS)...Mrs.PH called and stated that she received Proof of Loss letter but has nto received R of R Letter. I printed out letter and mailed to updated address per PH...
                    305 Rue Tonti
                    Ocean Springs MS  39564

Date: 2006-11-29  Time: 17:55:24
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Printed: Reservation of Rights Letter; Sent to John K And Debarah J Drake from Stanly Bonhomme (Comments:) Mail

Date: 2006-11-10  Time: 11:57:37
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0110 -STATUS FWP (HARMERA)...On this date, CA mailed certified copy of ROR and Sworn Proof of Loss.

Date: 2006-11-10  Time: 11:39:07
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Printed: Reservation of Rights Letter; Sent to John K And Debarah J Drake from Alec R Harmer (Comments:) Mail

Date: 2006-11-10  Time: 11:37:05
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Saved. (Re:) Reservation of Rights Letter

Date: 2006-11-10  Time: 11:01:06
Creator: ARCTACM1

EXHIBIT 18

NW-DRA000314

CC: MCADORG
From: George Mcadory
Subject: Hosup

please pay food spoilage & LTDR limit.

Thanks, George

Date: 2006-12-18  Time: 20:19:58
Creator: MCADORG
Assignee: MCADORG
Cov: HOSUP
Claimant: John K And Debarah J Drake

RESERVE opened for HOSUP on John K And Debarah J Drake for $1000.00 assigned to MCADORG

Date: 2006-12-18  Time: 20:18:06
Creator: MCADORG
Assignee: MCADORG
Cov:
Claimant:

0200 Advisory Comments...CA log reviewed w/ CATDIR; house slab remains from flood/surge.  HO 23-A policy
w/ a X-wind endorsement.  Full denial sent w/ a copy of engineer report.  PH hired his own engineer and it was
reviewed by HSA & CRC, there was no change in decision.  PH questioned additional ALE payment,  $ 2k paid
advance. CA has requested ALE receipts incurred w/ no response from PH.  Previous CA stated he spoke to agent
and agent has no record of flood coverage , but has x-wind coverage.  CA has obtained  an estimate from AIG (x-
wind), limits were $400k bldg and $200k contents. There is no reponse to exact payment on x-wind, however it
would appear that limits were paid on both. The x-wind estimate reveals the following:

| BLDG: | | CONTENTS: | |
|---|---|---|---|
| RCV | $ 465,770.87 | RCV | $ 462,677.00 |
| Less: depr | 62,797.86 | Less: NR depr | 172,435.95 |
| ACV | $ 402,973.01 | ACV | $ 290,241.05 |
| Less: ded | 8,000.00 | Less: ded | 4,000.00 |
| ACV | $ 394,973.01 | ACV | $ 286,241.05 |

Previous CA log stated pending PH submital of ALE receipts for consideration period of DOL to Feb 2006.
Consideration on food spoilage & live tree debris removal allowed.

Action PLan:
1) review proof ( 60 days expire 1/8/06)
2) review any ALE receipts
3) set up EUO if needed

Date: 2006-12-18  Time: 14:45:53
Creator: OOR
Assignee: OOR
Cov: HOPRIM
Claimant: John K And Debarah J<Drake

Cat Reassigned for HOPRIM on John K And Debarah J<Drake from HARMBRA

Date: 2006-12-18  Time: 14:45:53
Creator: OOR
Assignee: MCADORG

EXHIBIT 19

NW-DRA000308

Cov: HOPRIM
Claimant: John K And Debarah J<Drake

Cut Reassigned for HOPRIM on John K And Debarah J<Drake to MCADORG

Date: 2006-12-18 Time: 14:45:42
To: George Mcadory
CC: HARMERA
From: Alec R Harmer
Subject: please see log.

Date: 2006-12-18 Time: 14:42:58
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0116 CLOSING RPT ...Spoke with PH this a.m. to resolve loss settlement. Denial mailed to PH. See log for complete details. PH advised he is claiming 100% of his ALE limits. Despite months of requests, PH has yet to provide any invoices or receipts showing this cost was incurred. PH feels he should receive his limits because after the storm he was no longer living the standard of life he lived before the storm. See log for correspondence from PH explaining his opinion. PH advised he purchased a new home in August of 2006. NOTE: policy excludes wind, hail, and flood. Proof of loss mailed to PH on 11/9/06, as of this date it has not been returned. ROR mailed on more than one occassion. Eng. report in hard file. PH does have coverage with AIG, estimate from AIG also in log showing $693,214.06 RCV for loss. PH also provided his own eng. report. Waiting for documentation to review and consider for ALE. Nothing further at this time. CRM to team lead.

Date: 2006-12-18 Time: 12:58:24
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0113 EVALUATION OF DAMAGES/SALES TAX &NA

Date: 2006-12-18 Time: 12:57:57
Creator: OOR
Assignee: OOR
Cov:
Claimant:

FAST TRACK RECON:

CA Name:
Alec Harmer

Estimate(s) uploaded in CLASS:
No estimate completed. Policy carriers Wind, Flood, and Hail exclusions.

Sales Tax on Estimate correct:
NA

Coverage Addressed:

NW-DRA000309

Creator: OOR
Assignee: OOR
Cov:
Claimant:

******Mrs. PH called and advised she did not receive the below letter. CA will re-issue letter and send cert. mail.

Date: 2007-07-24 Time: 16:12:53
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Printed: Free Form Letter w/Claim Info-Standard - Claimant; Sent to John K And Debarah J Drake from Alec R Harmer (Comments:) Mail

Date: 2007-07-24 Time: 16:10:48
Creator: OOR
Assignee: OOR
Cov:
Claimant:

CLASSPlus Document Saved. (Re:) Free Form Letter w/Claim Info-Standard - Claimant

Date: 2007-07-23 Time: 09:32:48
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0110 -STATUS FWP (HARMERA)...Rec'd call from Mr. PH on this date. PH discussed claim. PH wants to know if he has coverage and for how long (ie 12 month limit) for ALE. CA explained his policy does grant coverage for ALE, however, PH has not supplied requested documentation. Exact pymt can not be discussed as NW has been unable to fully review his ALE claim because PH has not supplied requested documentation. CA further explained ALE applies to wind only and PH's home sutained wind and flood damages. The period of time PH's home was made unlivable by WIND is time frame in question. CA explained there are homes within in eye shot of PH's home that were not made unlivable by wind - they appeared to suffer far less flood damage and were still standing. Most likely the home would not be unlivable due to wind for the max 12 month period of coverage under ALE.

Date: 2007-07-18 Time: 19:38:17
Creator: OOR
Assignee: OOR
Cov:
Claimant:

0105 RESOLUTION STRATEGY (HARMERA)...CA has reviewed details of PH's ALE claim. To date, PH has provided no documentation of having actually paid rent. CA explained this in a certified letter and mailed to PH. PH produced receipts for contents they replaced and claimed that as ALE. However, there is no wind or flood coverage on this file. PH was paid limits for contents by wind and flood carriers. PH has indicated they did rent a house for some time and then purchased new house around July 2006. PH produced receipts for food they purchased and claimed this as ALE. However, if PH was renting a house as they stated, then groceries would not be considered an "extra" expense. CA will image PH's most recent letter into the CLASS log. Hard copy of this letter is currently stored at the B2 office. Resolution requires the next 2 steps.

EXHIBIT 20

NW-DRA000110

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOHN DRAKE, M.D., et al.,  )
                           )
          Plaintiffs,      )
                           )
versus                     ) Cause No.:
                           ) 1:088-CV-690-LTS-RHW
NATIONWIDE MUTUAL FIRE     )
INSURANCE COMPANY,         )
                           )
          Defendant.       )
_____)


          Videotaped Deposition of:

          CHARLES HIGLEY

          Tuesday, August 11, 2009

          At the instance of the Plaintiffs

**EXHIBIT 21**

d93c248d-accb-46d5-9a55-889fc34125d0

1   party that doesn't have anything to do with the

2   particular claim.

3                    And so I -- other than that, I

4   don't know anything about this.

5   Q.        Now look at the entry in part of the

6   electronic claim file, which is Exhibit 4, on

7   Page 110, dated 7/23/2007.

8                    MR. SCHULTZ:  Which page are you

9        looking at?

10                   MR. VAN CLEAVE:  110.

11  A.        On Exhibit 4?

12  BY MR. VAN CLEAVE:

13  Q.        Right.  7/23/07.

14                   MR. SCHULTZ:  7/23/07.

15  BY MR. VAN CLEAVE:

16  Q.        Do you see that?

17  A.        Which entry?

18  Q.        7/23/07, in the middle of the page.

19  A.        Yes.

20  Q.        And this is an entry by Alec Harmer, I

21  presume, or whoever the claims associate was at

22  that time.

23  A.        Yes.  Yeah.  That's who it's

24  designated as.

25  Q.        Regarding a conversation with the

1    Drakes; right?

2    A.          Yes.

3    Q.          And this was after the time that a

4    decision had been made that there was a doubt

5    about the cause of loss and that that doubt was

6    going to be resolved in favor of coverage for

7    the Drakes; correct?

8                MR. SCHULTZ:   Objection to form.

9    A.          It was, yes.

10   BY MR. VAN CLEAVE:

11   Q.          But what Mr. Harmer's report reflects

12   in the final two sentences that he explained to

13   the Drakes was, quote, CA explained there are

14   homes within eyeshot of PH's home that were not

15   made unlivable by wind.  They appear to suffer

16   far less flood damage and were still standing.

17   Most likely the home would not be unlivable due

18   to wind for the max 12-month period of coverage

19   under ALE; right?

20   A.          That's what it says.

21   Q.          So according to Nationwide's claims

22   file, as of July the 23rd, 2007, Nationwide's

23   claims personnel were still advising the Drakes

24   that there would not be full coverage for the

25   policy period under the ALE provisions of their

1    policy; correct?

2              MR. SCHULTZ:  Objection to form;

3         misstates the document.

4    A.         I can only take it as written, as

5    stated.  Other than that, I don't have any

6    commentary to add to it.

7    BY MR. VAN CLEAVE:

8    Q.         Certainly the Drakes should not have

9    been informed such as of that date; isn't that

10   true, sir?

11             MR. SCHULTZ:  What do you mean by

12        "such," Christopher?

13   BY MR. VAN CLEAVE:

14   Q.         The Drakes should not have been

15   informed as of July of 2007, assuming that

16   that's the right date for that entry, that there

17   would probably not be coverage for the entire

18   12-month period on their ALE claim.

19             MR. SCHULTZ:  Objection to form.

20   BY MR. VAN CLEAVE:

21   Q.         Right?

22   A.         I would rather that conversation not

23   to have been held.

24   Q.         Well, it was contrary to the claims

25   decision that had been made by Nationwide

1  management as of that date; true?

2  A.          Yes.

3  Q.          Now, the Drakes did in fact send

4  receipts for food, clothing and furniture that

5  were received by Nationwide on July 15th, 2007;

6  is that right?

7              And I'm going to hand you what

8  I'm marking as Exhibit 34 to your deposition.

9  (Exhibit 34 marked.)

10  Q.          And that's a letter dated July 17th,

11  2007, to the Drakes from claims representative

12  Alec Harmer; right?

13  A.          Yes.

14  Q.          And the very first sentence says, I'm

15  writing you to confirm Nationwide did receive

16  your letter dated July 15th, 2007.  You included

17  receipts for food, clothing and furniture;

18  correct?

19  A.          Yes.

20  Q.          And in fact you're aware that the

21  Drakes presented those receipts totaling some

22  $11,000 and some-odd -- 11,000 some-odd dollars

23  to Nationwide and expressed that those were

24  expenses incurred that were necessary to

25  maintain the Drakes' ordinary standard of



June 23, 2009

**By UPS Next Day Air**

W. Corban Gunn
Corban, Gunn & Van Cleave
146 Porter Avenue
Biloxi, MS 39530

          Re:    John K. and Debarah J. Drake, 6323 MP 669310

Dear Mr. Gunn:

          I write regarding the above-referenced claim of your clients, John K and Debarah K Drake, concerning coverage under the homeowner's insurance policy issued by Nationwide Mutual Fire Insurance Company ("Nationwide").

          Nationwide's philosophy has been to adjust claims as promptly as reasonably practicable under the coverage purchased, and to examine each claim individually. We recognize that every claim is different and every claim must therefore be determined by its own unique circumstances and the coverage provided under the specific policy. Each claim must also be determined according to the information that is available to Nationwide at the time of the coverage determination.

          In September 2005, Nationwide issued an advance payment to your clients for $2,000 for additional living expenses. On October 27, 2005, Nationwide communicated to your clients that their homeowner's insurance policy excluded coverage for property damage caused by water or water born material and damage caused by wind. It also communicated that Nationwide would reimburse them for "incurred actual increases in your expenses as a result of a covered loss requiring you to leave the residence premises" through the period of time it would take for that cause of loss determination to be completed. On numerous occasions after that point, Nationwide requested that your clients provide receipts for incurred additional living expenses.

          On July 15, 2007, your clients provided receipts related to purchases made after Hurricane Katrina for food, clothing and furniture and a letter from a realtor describing a home that your clients considered renting for $5,000 a month. In that letter your clients stated:

> I have attached a letter from my real estate agent that outlines the offer made to me in October 2005 for a furnished house that was available for my family to live in at my normal standard of living. This rented for $5,000 per month with a one-year lease. I purchased a home and moved out of my rental house in the middle of July 2006.

On July 17, 2007 and July 24, 2007, we sent letters requesting the actual amount of rent expenses your clients incurred rather than the amount of rent that they might have incurred. We did not receive a response. On September 11, 2007, we reiterated this request. We did not receive a response. In September 2008, we learned that your clients had filed a lawsuit against us.

EXHIBIT 22

Last month, in response to Nationwide's discovery requests in litigation, your clients produced a number of receipts for purchases made after Hurricane Katrina and a lease agreement for a property that was rented from September 2005 through August 2006. Your clients also produced six receipts for rent paid. These documents indicate that your clients actually incurred $1,295 a month in rental expenses after Hurricane Katrina rather than $5,000 a month.

Throughout this process, Nationwide has taken seriously its ongoing effort to review the Drakes' claim in light of all available information and changing circumstances, as part of its good faith obligation to determine if additional payments are warranted. As such, we have reviewed all of the receipts your clients have produced, including the lease agreement and rental receipts. Based on these documents recently produced in litigation, Nationwide is tendering the enclosed additional payment of $13,540. This includes payment for 12 months of rent at $1,295 a month based on the rental agreement you provided, less the advance that you received after the storm. If you have reason to disagree with the enclosed estimated payment, we invite you to provide or identify receipts, documents or other information so that Nationwide can consider whether any additional payments should be made.

Please be advised that the enclosed additional payment is being made under a full reservation of rights. This means that any such payment cannot be construed as an admission of past, present or future liability for coverage under the policy, and that Nationwide reserves all of its rights and defenses under the policy, including the right to contest your client's entitlement to additional payments or damages. Nor should this payment be interpreted as an admission that Nationwide's original adjustment of the Drakes' claim was in any way incorrect or improper.

Sincerely,

Charles A. Higley

Charles A. Higley
Nationwide Mutual Fire Insurance Company

cc:  Daniel F. Attridge, Esq. (Kirkland & Ellis LLP)
     H. Mitchell Cowan, Esq. (Watkins Ludlam Winter & Stennis, P.A.)

Enclosures



THE BACK OF THIS CHECK CONTAINS A SECURITY MARK ■ DO NOT ACCEPT WITHOUT HOLDING TO LIGHT TO VERIFY MARK ■

Check No: **0091546608** 441

**Nationwide**®
Insurance

Nationwide Insurance Companies
Columbus Service Center
PO Box 182166
Columbus OH  43218-2166

Date of Issue: June 23, 2009
Void if Not Cashed Within 180 days

| RO | ST | PR | Policy Number | Loss Date | S | CO | Name of Insured | Claim Number |
|----|----|----|---------------|-----------|---|----|-----------------|--------------|
| 63 | 23 | MP | 669310 | 08/29/2005 | 01 | | Drake, John K And Debarah J | 669310 |

PAY
EXACTLY   Thirteen thousand five hundred forty and 00/100 dollars                          **DOLLARS**   $  $13,540.00

PAY TO                                                                                                                  **AMOUNT**
THE        John K And Debarah J Drake
ORDER      905 Magnolia Bayou Blvd
OF         Ocean Springs, MS 39564

JPMorgan Chase Bank, N.A.
Columbus, OH                                                                    By
Details
On Back                                                                                       185 778

⑈0091546608⑈ ⑆044115443⑆    616008290⑈

This envelope is for use with the following services:

**UPS Next Day Air®**
**UPS Worldwide Express℠**
**UPS 2nd Day Air®**

17i604 REV. 9/05 LPS

Call **1-800-PICK-UPS®** (1-800-742-5877) or visit **UPS.com**.®

- For UPS Next Day Air services, there is no weight limit for envelopes containing letters, business correspondence, urgent documents, of electronic media. When a UPS Next Day Air containing ite to the corresp

- For UPS Worl There is no li may be used can enclose.

- For UPS 2nd I weighing one corresponding

- Do not send c

https://www.ups.com/uis/create?ActionOriginPair=print

JA CH FERRELL
615-902-6120
NATIONWIDE INSURANCE
7100 COMMERCE WAY
BRENTWOOD TN 37027

1 LBS

1 OF 1

**SHIP TO:**
W. CORBAN GUNN
228-432-7826
CORBAN GUNN & VAN CLEAVE
146 PORTER AVENUE
**BILOXI MS 39530-3704**



## MS 395 0-02



**UPS NEXT DAY AIR SAVER** **1P**
TRACKING #: 1Z 6A2 R09 13 9335 0196



IG: P/P

rence#2: Dept. 633153

UIS 11.1.05.    WXPIE60 90.0A 04/2009


TM

**Apply shipping documents on this side.**

Do not use this envelope for:

UPS Ground

edited"

S:UNLOAD I:
TOP
02B-6144
CORBAN GUNN & VAN CLEAVE
46 PORTER AVE
BILOXI MS 39530-3704
1Z6A2R0913933S0196

International Shipping Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions established by the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw ~~~~~ ~ ) and/or the Convention on the

Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or software ~~~