**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOURTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**JOHN K. DRAKE, M.D., ET AL.**                                                                 **PLAINTIFFS**

**VERSUS**                                                    **CAUSE NO.: 1:08-CV-690-LTS-RHW**

**NATIONWIDE MUTUAL FIRE INS. CO., ET AL**                                   **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' [96] MOTION FOR SUMMARY JUDGMENT**

`COME NOW THE PLAINTIFFS, by and through counsel, and file their *Memorandum in Support of Plaintiffs' Response in Opposition to Defendants' [96] Motion for Summary Judgment*, as follows:

**INTRODUCTION**

Defendants filed their [96] *Motion for Summary Judgment* and [97] *Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment* wherein Defendants seek the dismissal of Plaintiffs' claims as a matter of law based on the following incorrect allegations: (1) Plaintiffs' accidental total loss as a result of Hurricane Katrina was not a "covered loss;" (2) Plaintiffs failed to document such expenses within 60 days upon request of Defendants' sworn proof of loss; and (3) Plaintiffs' failed to cooperate and failed submit qualifying expenses. (See, ¶ 2 of Defendants' [97] *Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment.*)

Defendants are not entitled to dismissal of Plaintiff's claims as a matter of law because (1) Defendants have judicially admitted Plaintiff suffered a covered loss as a result of Hurricane Katrina and are entitled to full coverage for Additional Living Expenses pursuant to *Coverage D-Loss of Use* of Plaintiffs' Homeowners' Insurance Policy with the Defendants. As a result, Defendants' argument that Plaintiffs did not suffer a "covered loss" is moot; (2) Defendants

waived any contractual provision in the Plaintiff's homeowner's insurance policy that may have required Plaintiffs to submit a sworn proof of loss by falsely advising the Plaintiffs their claims were not covered; and by judicially acknowledging coverage, and tendering payments for ALE coverage after the alleged failure to submit a sworn proof of loss had already occurred, resulting in waiver of a known right by the Defendants; (3) Defendants' allegations there is no coverage for alleged failure to cooperate are likewise waived by Defendants conduct, after the Plaintiffs' alleged failure to cooperate, wherein Defendants determined and later judicially admitted Plaintiffs are entitled to full coverage under the ALE provisions of the policy, and actually tendered payments to Plaintiffs thereunder; and (4) Defendants allegations Plaintiffs failed to cooperate would not be ripe for summary judgment in any event because, under Mississippi law, Defendants' allegation that Plaintiffs failed to cooperate presents a jury question and precludes the entry of judgment as a matter of law.

## **STANDARD**

The heart of our summary judgment procedure is found in Rule 56(c), Fed.R. Civ.P. which provides as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c)

A motion for summary judgment lies only where there is no genuine issue of material fact, summary judgment is not a substitute for the trial of disputed fact issues. *Brown v. Credit Center, Inc.*, 444 So. 2d 358, 362 (Miss. 1983). The argument that there exists "no genuine triable issue of material fact is the functional equivalent of a request for a preemptory instruction …. [I]t merely occurs at an earlier stage in the life of a civil action …" *Id*. Federal cases suggest

that the burden is on the moving party to establish that there is no genuine issue of fact, although this burden is one of persuasion, not of proof. *Id*. When doubt exists whether there is a fact issue, the non-moving party gets its benefit. Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt. *Liberty Leasing Co. v. Hillsum Sales Corporation*, 380 F.2d 1013, 1015 (5th Cir. 1967); *Heyward v. Public Housing Administration*, 238 F.2d 689, 696 (5th Cir. 1956).

> The legal standards that govern a Motion for Summary Judgment are well known:
>
> . . . summary judgment is proper 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.' Fed.R.Civ.P. 56(c). '**The evidence and inferences from the summary judgment record are viewed in the light most favorable to the nonmovant**.'

*McLaurin vs. Noble Drilling, Inc.*, 529 F.3d 285, 288 (5th Cir. 2008) (citations omitted) (emphasis added).

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial.

*Lindsey vs. Sears Roebuck and Company*, 16 F.3d 616, 618 (5th Cir. 1994). If the movant meets his burden of establishing there are no genuine issues of material fact, the non-movant may still show that summary judgment is not appropriate – either by submitting additional evidentiary documents, or by reference to evidentiary documents already in the Record, setting out specific facts showing that a genuine issue of material fact does exist. *Fields*, 922 F.2d at 1187.

## **ARGUMENT**

Defendants are not entitled to dismissal of Plaintiffs' claims as a matter of law.

### 1. Defendants have admitted that Plaintiff's suffered a "covered loss" and are entitled to coverage under Coverage D-Loss of Use

At the time of Hurricane Katrina, Plaintiffs had a Homeowner's Insurance Policy drafted, sold, and issued by Defendants which provided the following coverage (prior to application of the inflation coverage provisions of the policy):

| | |
|---|---|
| Coverage—A—Dwelling | $580,700 |
| Coverage—B—Other Structures | $ 58,070 |
| Coverage—C—Personal Property | $430,430 |
| Coverage—D—Loss of Use | $116,140 |

In addition to the above referenced coverage, Plaintiffs' Homeowner's Insurance Policy provided coverage for Inflation Protection and other applicable coverage which were intended to protect and provide the Plaintiffs with peace of mind and security in the event of a catastrophic total loss. At the time of Hurricane Katrina Plaintiffs had paid all necessary premiums and the subject Homeowner's Insurance Policy was in force. (*See Plaintiff's Homeowner's Insurance Policy and Declaration Page attached hereto as Cumulative Exhibit 1*.)

Plaintiffs' homeowner's insurance policy with Defendants contained a "Windstorm or Hail Exclusion." Defendants' "Windstorm or Hail Exclusion" stated, in part, the following:

1. We do not insure for loss caused directly or indirectly by the perils of windstorm or hail; and
2. Windstorm or hail loss is excluded regardless of any causes or event contributing concurrently or in any sequence to the loss …

**This exclusion does not apply to Coverage-D-Loss of Use.**

(*See NW-DRA000062 of Plaintiff's Homeowner's Insurance Policy attached hereto as Exhibit 2.*) (emphasis added).

Based on the Windstorm and Hail Exclusion, Plaintiffs' were forced to purchase a Wind Policy from the Mississippi Windstorm Underwriting Association. Plaintiffs procured wind coverage in the amount of $400,000.00 for their dwelling and $200,000.00 for their contents.

4

(*See, MWUA Declaration Page attached hereto as Exhibit 3*.) Additionally, Plaintiffs procured a flood policy through the National Flood Insurance Program. The Plaintiff's flood policy provided a total of $290,100 in coverage for their home and property. (*See, NFIP Declaration Page attached hereto as Exhibit 4*.)

Although the "Windstorm or Hail Exclusion" drafted and attached to Plaintiffs' Homeowner's Insurance Policy by Defendants excluded damage to Plaintiffs' home and personal property as a result of the peril windstorm, the "Windstorm or Hail Exclusion" clearly did <u>not</u> apply to Coverage-D-Loss of Use.

Coverage-D-Loss of Use provided, in part, the following coverage:

> 1. **Additional Living Expense**. If a covered loss requires you to leave the residence premises, we will pay the required **<u>increase in living expenses you incur to maintain your standard of living</u>**. Payment will be for the shortest time required to repair or replace the premises; or, if you permanently relocate, for the shortest time required for your household to settle elsewhere. <u>Payment will not exceed the limit of liability shown on the Declarations or 12 months, which occur first</u>. This period of time is not limited by the end of the policy period; and ….
>
> No deductible applies to this coverage.

(*See NW-DRA000069 attached hereto as Exhibit 5*.)

On August 29, 2005, Plaintiffs' home and personal property were completely destroyed by Hurricane Katrina. Unfortunately, Plaintiffs' home located at 95 Labranche Avenue, Ocean Springs, Mississippi was rendered a "slab" as a result of Hurricane Katrina, including the hours of intense hurricane force winds.

In the aftermath of Plaintiffs' catastrophic total loss, the Mississippi Windstorm Underwriting Association made the determination that Plaintiffs' suffered at least $600,000.00 in wind damage to the second and third floors of their home and tendered the limits of their policy to the Plaintiffs. (*See, MWUA payments for wind damage attached hereto as Cumulative Exhibit*

5

*6.*) As a result of the Plaintiffs' total loss and/or "slab," and in accordance with the amended guidelines set forth by the National Flood Insurance Program (which Plaintiffs contend merely allowed doubt about cause of loss to their home and property to be resolved in favor of coverage), Plaintiffs were tendered the policy limits of their flood policy in the amount of $290,100.00 for damage to their home and personal property. (*See, NFIP payments for flood damage attached hereto as Cumulative Exhibit 7.*)

During the time period after the total loss of their home and property, Plaintiffs were aware that Coverage D-Loss of Use should be provided under their Homeowner's Insurance Policy with the Defendants. Plaintiffs made multiple inquiries with agents, representatives, and employees of the Defendants to determine what was covered under Coverage D-Loss of Use. (*See, Plaintiff's Answers No. 3 to First Set of Interrogatories Propounded by Defendants attached hereto as Exhibit 8.*) On multiple occasions, Plaintiffs were specifically told by agents, representatives, and employees of the Defendant <u>more than one explanation</u> as to what is actually covered under the Coverage D-Loss of Use. Plaintiffs' confusion was warranted as the 30(b)(6) representative for Defendants confirmed that the critical coverage provided by Coverage D-Loss of Use are <u>not</u> defined in the subject Homeowner's Policy, and testified to the following:

```
                           82
    19   In any event, the policy states
    20   that, under that Coverage part, Nationwide
    21   covers all of the following; correct?
    22   A.      Correct.
    23   Q.      And the first category, Coverage D is
    24   explained in the policy to cover his additional
    25   living expense; right?

                           83
    1    A.      Yes.
    2    Q.      And specifically, Nationwide says that
    3    it will pay the required increase in living
    4    expenses, the insured incurs to maintain, quote,
```

```
 5  Your normal standard of living, closed quote; is
 6  that correct?
 7  A.      Yes.
 8  Q.      Now, normal standard of living is not
 9  defined anywhere within the Nationwide policy;
10  isn't that true?
11  A.      That's true.
12  Q.      And it also says that, that payment
13  will be for the shortest time required to repair
14  or replace the premises, but will not exceed
15  12 months; correct?
16          MR. SCHULTZ:  Objection to form,
17      incomplete quotation.
18          MR. VAN CLEAVE:  I'm not making a
19      quotation.
20  A.      That's part of what it says.
21  BY MR. VAN CLEAVE:
22  Q.      Yes, and it also says that if you
23  permanently relocate, then ALE is only paid for
24  the shortest time required for your household to
25  settle elsewhere; right?
```

                                    84
```
 1  A.      Right.
 2  Q.      Now, "permanently relocate" is not
 3  defined in the policy, is it?
 4  A.      No.
 5  Q.      Nationwide understands permanently
 6  relocate to mean you actually change your place
 7  of residence and do not intend to rebuild and
 8  re-move into the location that was insured under
 9  the policy; isn't that true?
10          MR. SCHULTZ:  Objection to form and
11      foundation.
12  A.      Yes.
```

(*See, excerpt of deposition testimony of Charles Higley attached hereto as Exhibit 9.*)

During the investigation of Plaintiffs' total loss of their home and property, the Plaintiffs like hundreds of other insureds on the Mississippi Gulf Coast, felt the need to hire their own expert to determine the cause of loss to their home in order to shorten the claims process. As a result, Plaintiffs hired Ted L. Biddy, P.E, P.L.S., to conduct an in depth forensic engineering

determination of the cause of loss of their home and property. (*See, Expert Report of Ted L. Biddy, P.E., P.L.S, attached hereto as Exhibit 10.*)

Plaintiffs' foresight was warranted, as on February 6, 2006, Defendants wrongfully and arbitrarily denied Plaintiffs' claims under their Homeowner's Insurance Policy, including but not limited to Plaintiffs' claims for Additional Living Expenses under Coverage D-Loss of Use. (*See, Defendants' February 6, 2006, denial letters attached hereto as Cumulative Exhibit 11*.) Defendants took the position that Plaintiffs had not suffered a covered loss, even though Coverage D-Loss of Use provided for coverage if the Plaintiffs' suffered a wind loss.

After the complete denial of their claims under their Homeowner's Insurance Policy, Plaintiffs forwarded the forensic report of Ted L. Biddy, P.E., P.L.S. to the Defendants. Unfortunately, on or about July 10, 2006, Plaintiffs were forced to *resend* the above report as Defendants had failed to retain the original forwarded report. (*See, excerpt of deposition testimony of Plaintiff Deborah Drake attached hereto as Exhibit 12*.) The forensic report of Ted L. Biddy, P.E., P.L.S concluded extensive damages to the Plaintiffs' dwelling were caused by wind, and thus called into question the findings of the Defendant and its retained expert agent H.S.A. and/or Conestoga-Rovers. (*See, excerpt of deposition testimony of Charles Higley attached hereto as Exhibit 13*.)

Stated otherwise, the cause of Plaintiffs' total loss was in controversy. In accordance with Mississippi Insurance Department Bulletin No. 2005-6 (which the undisputed evidence shows Nationwide adopted as its own procedure and intended its representatives to apply), and the <u>purported</u> policies and procedures of the Defendants, said controversy required any doubts to be resolved in favor of coverage. (*See, Defendants' internal Email Correspondence and Attachment of Mississippi Insurance Department Bulletin No. 2005-6 attached hereto as Cumulative Exhibit*

8

*14.*) As a result, Defendants determined that Plaintiffs were entitled to coverage under Coverage D-Loss of Use. During the 30(b)(6) deposition of Nationwide in this case, the corporate representative of the Defendants, Mr. Charles Higley, confirmed Defendants determined the Plaintiffs were entitled to full coverage under for incurred additional living expenses under their homeowner's policy:

```
                              336
  9    In Mr. Woods' report in the
 10    second paragraph on 3487 concluded in the second
 11    sentence that, Due to the conclusion above in
 12    Mr. Biddy's report, this does put the cause of
 13    loss into controversy; right?
 14    A.    Yes.
 15    Q.    And "cause of loss into controversy"
 16    could be otherwise stated as meaning there's a
 17    question or doubt about the cause of loss;
 18    correct?
 19    A.    Yes.
 20    Q.    And it was Nationwide's policy to
 21    resolve doubt about cause of loss in favor of
 22    coverage for the insured; correct?
 23    A.    Yes.
 24    Q.    And so that's what Nationwide decided
 25    to do on July the 24th, 2006; correct?

                              337
  1    A.    Yes. And that's why I stated that it
  2    was a business decision, and that's what I
  3    consider a compromise –
```

(*See*, excerpt of deposition testimony of Charles Higley attached hereto as Exhibit 15.)  (*See also Exhibit 19, herein below*).

Nationwide has judicially admitted that Plaintiffs' total accidental loss was, in fact, a covered loss, triggering full coverage for their additional living expenses (up to the policy limits or 12 months after the loss). Plaintiffs respectfully contend any argument set forth in Defendants' [96] *Motion for Summary Judgment* and [97] *Memorandum of Authorities in Support of*

*Defendants' Motion for Summary Judgment* questioning whether or not Plaintiffs suffered a covered loss as a result of Hurricane Katrina is <u>moot</u> (other than to the extent such arguments provide evidence of Nationwide's ongoing bad faith in this cause). Thus, Defendants' [96] *Motion for Summary Judgment* and [97] *Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment* should be denied.

### 2. Defendants' Waived Any Right They May Have Had to Exclude Coverage under the "Proof of Loss" Provision

Under Mississippi law, Defendants have waived any right they may have had to exclude coverage for Plaintiffs' alleged failure to provide a sworn proof of loss under the conditions of the subject Homeowner's Insurance Policy. First, when an insurer denies liability for a loss and refuses to pay it, it waives the necessity of providing a proof of loss. *Nelson v. Phoenix of Harford Insurance Companies*, 318 So. 2d. 839, 843 (Miss. 1975). Defendants waived the necessity of Plaintiffs' providing a sworn proof of loss because Defendants falsely represented to the Plaintiffs (in direct contradiction to Nationwide's decision they Plaintiffs were entitled to full coverage due to Nationwide's doubt about the cause of loss) that there was no coverage, and/or withheld the fact Defendants had determined there was coverage from the Plaintiffs, during the time frame that Plaintiffs had been asked to submit a sworn proof of loss – but before the asserted deadline for returning same had passed.

On February 6, 2006, Defendants completely denied Plaintiffs' claims under their Homeowner's Insurance Policy. In fact, Defendants forwarded two (2) separate denial letters to the Plaintiffs. (*See, Exhibits 9 and 10*). One denial letter denied Plaintiffs' claims based on "your loss was caused by water or water-borne material … [U]nfortantely, your policy with Nationwide does not provide coverage for this cause of loss and we must deny your claim." (See, ¶ 1 of Exhibit 9.) The other denial letter denied Plaintiffs' claims stating, in part, that "[Y]ou

explained that the damage reported on this claim was caused by wind. Your policy with Nationwide Mutual Fire Insurance Company does not cover wind damage to your property." (See, ¶ 2 of Exhibit 10.)

On or about November 10, 2006, *after* Defendants determined the Plaintiffs were entitled to coverage on or about July 24, 2006, as set forth above, Defendants forwarded a sworn proof of loss **and** a reservation of rights letter and to the Plaintiffs. (*See, excerpt of Defendants' claims log attached hereto as Exhibit 16*.) Defendants' policy provides, in the section entitled Property Conditions:

> d) submit to us, <u>within 60 days after we request</u>, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:
> (1) the time and cause of loss.
> (2) interest of the insured and all others in the property involved and all liens on the property.
> (3) other insurance that may cover the loss.
> (4) changes in title or occupancy of the property and detailed estimates for repair of damage.
> (5) specifications of any damaged property and detailed estimates for repair of damage.
> (6) a list of damages personal property showing in detail the quantity, description, actual cash value, and amount of loss. Attach all bills and receipts that support the figures.
> (7) receipts for additional living expenses and records supporting the fail rental value loss….

(See, *See NW-DRA000078 of Cumulative Exhibit 17*.) On or about November 29, 2006, Plaintiffs contacted the Defendants to inform them that Plaintiffs had received the sworn proof of loss but had not received the reservation of rights letter. (*See, excerpt of Defendants' claims log attached hereto as Exhibit 18.*) Defendants thereafter sent the Plaintiffs another copy of the reservation of rights letter, all the while concealing from the Plaintiffs the fact Defendants had already determined Plaintiffs were entitled to full coverage for their loss of use.

On or about December 18, 2006, 38 days after Defendant forwarded the sworn proof of loss to the Plaintiffs (prior to the 60 day deadline for returning the sworn proof of loss as set forth by the policy), Defendants, by and through its agents, representatives, and/or employees falsely informed the Plaintiff that their claims would be denied, in full, <u>again</u>. (*See excerpts of Defendants' claims log attached hereto as Exhibit 19*.)

In addition to Defendants communicating a full denial of Plaintiffs' claims <u>prior</u> to the expiration of the 60 days deadline to complete and return the sworn proof loss, Defendants continued to falsely communicate its coverage position to the Plaintiffs <u>after</u> the deadline – although the alleged failure to submit the sworn proof of loss was not articulated as a basis for denial. On or about July 7, 2007, Alec Harmer, agent, representative, and/or employee of Defendants, specifically told the Plaintiffs that they would not be entitled to full coverage for Additional Living Expenses as "ALE applies to wind only and PH's (Plaintiffs) home sustained wind and flood damage … homes in eye shot of PH home were not made unlivable by wind … most likely home would not be unlivable due to wind from max 12 month period coverage under ALE." (*See, excerpt of Defendants' claims log attached hereto as Exhibit 20*.) The above representations to the Plaintiffs regarding the coverage determination by the Defendants were false. Nationwide's 30(b)(6) designee testified:

Pg. 349

```
 5  Q.      Now look at the entry in part of the
 6  electronic claim file, which is Exhibit 4, on
 7  Page 110, dated 7/23/2007.
 8          MR. SCHULTZ:  Which page are you
 9     looking at?
10          MR. VAN CLEAVE:  110.
11  A.      On Exhibit 4?
12  BY MR. VAN CLEAVE:
13  Q.      Right.  7/23/07.
14          MR. SCHULTZ:  7/23/07.
```

15  BY MR. VAN CLEAVE:
16  Q.      Do you see that?
17  **A.      Which entry?**
18  Q.      7/23/07, in the middle of the page.
19  A.      Yes.
20  Q.      And this is an entry by Alec Harmer, I
21  presume, or whoever the claims associate was at
22  that time.
23  **A.      Yes.  Yeah.  That's who it's**
24  **designated as.**
25  Q.      Regarding a conversation with the

Pg. 350

1   Drakes; right?
2   **A.      Yes.**
3   Q.      And this was after the time that a
4   decision had been made that there was a doubt
5   about the cause of loss and that that doubt was
6   going to be resolved in favor of coverage for
7   the Drakes; correct?
8           MR. SCHULTZ:  Objection to form.
9   **A.      It was, yes.**
10  BY MR. VAN CLEAVE:
11  Q.      But what Mr. Harmer's report reflects
12  in the final two sentences that he explained to
13  the Drakes was, quote, CA explained there are
14  homes within eyeshot of PH's home that were not
15  made unlivable by wind.  They appear to suffer
16  far less flood damage and were still standing.
17  Most likely the home would not be unlivable due
18  to wind for the max 12-month period of coverage
19  under ALE; right?
20  **A.      That's what it says.**
21  Q.      So according to Nationwide's claims
22  file, as of July the 23rd, 2007, Nationwide's
23  claims personnel were still advising the Drakes
24  that there would not be full coverage for the
25  policy period under the ALE provisions of their

Pg. 351

1   policy; correct?
2           MR. SCHULTZ:  Objection to form;
3       misstates the document.
4   **A.      I can only take it as written, as**

13

```
 5  stated.  Other than that, I don't have any
 6  commentary to add to it.
 7  BY MR. VAN CLEAVE:
 8  Q.     Certainly the Drakes should not have
 9  been informed such as of that date; isn't that
10  true, sir?
11         MR. SCHULTZ:  What do you mean by
12    "such," Christopher?
13  BY MR. VAN CLEAVE:
14  Q.     The Drakes should not have been
15  informed as of July of 2007, assuming that
16  that's the right date for that entry, that there
17  would probably not be coverage for the entire
18  12-month period on their ALE claim.
19         MR. SCHULTZ:  Objection to form.
20  BY MR. VAN CLEAVE:
21  Q.     Right?
22  A.     I would rather that conversation not
23  to have been held.
24  Q.     Well, it was contrary to the claims
25  decision that had been made by Nationwide
```

Pg. 352

```
 1  management as of that date; true?
 2  A.     Yes.
```

(*See Excerpt of Deposition of Charles Higley attached hereto as Exhibit 21*.) (emphasis added).

In accordance with Mississippi law, once the Defendants denied coverage under Plaintiff's Homeowner's Insurance Policy (which Defendants repeatedly did in this case – even when so doing was contrary to the decision Defendants had actually made to extend coverage), Defendant waived its right, and the necessity of, a proof of loss. *See, generally, Nelson*, 318 So.2d at 843. Based on Defendants' repeatedly articulated denial of Plaintiffs' claims, Defendants cannot now seek to exclude coverage, which they ultimately have admitted the Plaintiffs are entitled to, for the alleged failure of the Plaintiffs to provide certain information in a sworn proof of loss under the subject Homeowner's Insurance Policy.

14

Second, Nationwide waived any right it may have had to rely on Plaintiffs' alleged failure to return a sworn proof loss by announcing that Plaintiffs' losses are covered, and by actually tendering Plaintiffs a payment for additional living expenses *after* Plaintiffs allegedly failed to comply with the provision of submitting a sworn proof of loss. A waiver is a voluntary and intentional relinquishment of a known right <u>or conduct that warrants an inference of such a relinquishment</u>. *Highlands Insurance Company v. Allstate Insurance Company*, 688 F.2d 398, 404 (5th Cir. 1982). When the facts are undisputed, as they are in the case at bar, wavier is a question of law. *Id*. To determine when such a waiver occurs, the Supreme Court of Mississippi opined, in part:

> To determine the point at which waiver occurs, the Court should look to the actions of the relevant party **after** <u>that party has sufficient information to be on notice of the alleged deviation from the contractual duty</u>; if, after acquiring knowledge of the deviation from a known right articulated in the contract, a party failed to insist on its contractual rights, or acts inconsistently with such rights, then that party waives the right to require such performance."

*Upchurch Plumbing Inc. v. Greenwood Utilities Commission*, 964 So.2d 1100, 1112 (Miss. 2007); *Brent Towing Co., Inc. v. Scott Petroleum Corp.*, 735 So.2d 355, 358 (Miss. 1999).

As set forth above, Defendants' 30(b)(6) Representative admitted Plaintiffs are covered for their additional living expenses under Coverage Part D of their policy when Nationwide's deposition was taken on **<u>August 11, 2009</u>**. Nationwide did not assert coverage was thereafter denied due to alleged failure to submit the sworn proof of loss, and even admitted that its claims representative's representations to the Plaintiffs (made almost a **<u>full year after the 60 day period for returning the sworn proof of loss had expired</u>**) that Plaintiffs would not likely be entitled to coverage for the full 12 month period following their loss **"was contrary to the claims decision that had been made by Defendants' Management as of that date**." (*See Exhibit 19*). Moreover, on or about <u>June 23, 2009</u>, **Defendants forwarded a partial payment**

15

**under Coverage D-Loss of Use to the Plaintiffs**. (*See partial payment tendered on June 23, 2009, attached as Exhibit 22*). Said action was clearly <u>after</u> the expiration of the 60 day deadline for to complete and return the sworn proof of loss.

The conduct and actions of Nationwide described in the preceding paragraphs clearly constitutes "actions of [Defendants] **<u>after</u>** <u>[Defendants] has sufficient information to be on notice of the alleged deviation from the contractual duty</u>". In conducting these actions, Defendants clearly "failed to insist on its contractual rights, or act[ed] inconsistently with such rights", such that, under controlling Mississippi law, Defendants, ***as a matter of law*** in light of these undisputable facts, "waive[d] the right to require such performance [the submission of a completed and signed sworn proof of loss within 60 days of Defendants' request for such]." See *Upchurch Plumbing Inc. v. Greenwood Utilities Commission*, 964 So.2d 1100, 1112 (Miss. 2007. If the Defendants were to have taken the position which they now assert in their [96] *Motion for Summary Judgment* and [97] *Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment*, that Plaintiffs are in violation of the sworn proof of loss provision and are not entitled to coverage, Defendants would not have continued to communicate with the Plaintiffs after the expiration of the 60 day deadline regarding their claims, and certainty would not have continued to adjust and ultimately forward a partial payment to the Plaintiffs in connection with their claims for additional living expense insurance proceeds. Thus, Defendants' 96] *Motion for Summary Judgment* and [97] *Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment* should be denied.

### 3. Defendants' Claim of Plaintiffs' Failure to Cooperate is a Jury Question and Not Ripe for Summary Judgment

First, as set forth above, the undisputed actions and conduct of Defendants through the date of its 30(b)(6) deposition confirms that Defendants have judicially admitted the Plaintiffs

16

are entitled to full coverage for their additional living expenses, up to the amount of their loss and/or 12 months following their loss. As such, Defendants cannot be heard to offer any defense to coverage. Moreover, as set forth above, the undisputed actions and conduct of Defendants through the date of its 30(b)(6) deposition on August 11, 2009 demonstrate, to the extent Defendants believed it had a contractual right to deny coverage for alleged failure to cooperate, Defendants waived any such right as a matter of law. *Upchurch Plumbing Inc. v. Greenwood Utilities Commission*, 964 So.2d 1100, 1112 (Miss. 2007).

Even if this Court were not to determine that Defendants have judicially admitted coverage and/or that it waived its right to deny the Plaintiffs' claims for failure to cooperate as a matter of law, however, Defendants' are not entitled to the dismissal of Plaintiffs' claims because of Plaintiffs <u>alleged</u> failure to cooperate with the Defendants in the investigation and adjustment of Plaintiffs' claims under Coverage D-Loss of Use. Under Mississippi law, alleged lack of cooperation on part of an insured with an insurer is a jury question, when an insurer seeks to avoid coverage on that ground. *Employers Mutual Casualty Company v. Ainsworth*, 249 Miss. 808, 164 So.2d 412 (Miss. 1964).

> When an insurance company seeks to avoid the coverage of an insurance policy on the ground of breach of the cooperation clause, it is an affirmative defense. The insurance company carries the burden of proof and must establish the fact of failure of cooperation by a preponderance of the evidence. And the determination of the question of lack of cooperation is one of fact to be determined by the jury.

*Id*. Recently, the Mississippi Supreme Court confirmed that, in any event, failure to fully cooperate with an insurance company in its investigation, even if such failure could be proved, would not serve as a bar to the insured's right to recover under his insurance policy:

> Although there is authority to the contrary, we believe the better view is to hold that unless some prejudice is shown by the insured's failure to cooperate with the insurance carrier in its investigation, such failure does not operate to forfeit the insured's rights under the policy.

17

*See, Progressive Gulf Insurance Company v. Dickerson and Bowen, Inc.*, 965 So.2d 1050, 1055 (Miss. 2007); *United States Casualty Co. v. Schlien*, 338 F.2d 169 (5th Cir. 1964).

Plaintiffs vehemently disagree with Defendants misguided contention that the Plaintiffs, and specifically, Dr. John Drake, failed to cooperate with the Defendants. Granted, Plaintiffs experienced some confusion due to the inconsistent positions taken by the Defendants and the un-defined terms of the insurance policy. Any such reservations were warranted in light of the undisputed facts presently before the Court. Notwithstanding the above, should this Court deem Defendants have not abandoned their argument Plaintiffs failed to cooperate as a matter of law, Defendants allegation that Plaintiffs failed to cooperate is a jury question, let alone an affirmative defense, on which Defendants would bear the burden of poof at the trial of this cause.

## CONCLUSION

As set forth above, Defendants' motion is contrary to the Defendants' judicial admission that the Plaintiffs are entitled to full coverage for their additional living expenses, up to the amount of their loss and/or 12 months after the date of loss. Additionally, and in the alternative, Defendants' allegations present questions of material fact, such that Defendants' motion is not ripe for summary judgment, and dismissal of Plaintiffs' claims as a matter of law is precluded. Accordingly, Defendants' 96] *Motion for Summary Judgment* and [97] *Memorandum of Authorities in Support of Defendants' Motion for Summary Judgment* should be denied.

Respectfully submitted this the 28th day of September, 2009.

                                        JOHN K. DRAKE, M.D.
                                        DEBORAH DRAKE
                                        Plaintiffs

By:   *s/ W. Corban Gunn*
        W. CORBAN GUNN, (MSB #101752)

Clyde H. Gunn, III, (MSB #5074)
Christopher C. Van Cleave, (MSB #10796)
W. Corban Gunn, (MSB #101752)
David N. Harris, Jr., (MSB #100790)
CORBAN, GUNN & VAN CLEAVE, PLLC
P.O. Drawer 1916
Biloxi, Mississippi 39533
Telephone:  (228) 432-7826
Facsimile:   (228) 456-0998
corban@cgvclaw.co

## CERTIFICATE OF SERVICE

I, W. Corban Gunn, Esq., herby certify that on September 28, 2009, I electronically filed the foregoing with the Clerk of the Court using the CM / ECF system which will send notification of such filing to the following:

Dana E. Hill, Esq.
dhill@kirkland.com

Laura L. Gibbes, Esq.
lgibbes@watkinsludlam.com

This the 28th day of September, 2009.

*s/ W. Corban Gunn*
W. CORBAN GUNN, (MSB #101752)