IN THE UNITED STATES DISTRICT COURT
FOR THE SOUHTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOHN K. DRAKE, M.D. ET AL.**                                                                                          **PLAINTIFFS**

**VERSUS**                                                                              **CAUSE NO.: 1:08-cv-690-LTS-RHW**

**NATIONWIDE MUTUAL FIRE**
**INSURNACE COMPANY, ET AL.**                                                                             **DEFENDANTS**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO** *DAUBERT* **MOTION TO STRIKE THE**
**EXPERT REPORT OF TED L. BIDDY**

COME NOW THE PLAINTIFFS, by and through counsel, and file their *Response in Opposition to Daubert Motion to Strike the Expert Report of Ted L. Biddy*, and in support thereof would show the Court as follows:

**Introduction and Background**

Defendants are misguided in their daubert challenge of the expert reports and opinions of Ted L. Biddy in regards to the damage and destruction of the Plaintiffs home and property as a result of Hurricane Katrina. This is nothing new for these Defendants. But this particular case is different as Defendants have admitted that Plaintiffs were entitled to coverage under the subject Homeowner's Insurance Policy, based, in part, upon the expert report of Ted L. Biddy, P.E., P.L.S. (*See, generally, Plaintiffs' [98] Motion for Partial Summary Judgment; [99] Memorandum in Support of Plaintiffs' [98] Motion for Partial Summary Judgment*.) Yet, even now, Defendants seek to strike expert report of Mr. Biddy who conducted a thorough evaluation of the damage to Plaintiffs' home and property and concluded, in part, that "[O]nly a thorough forensic engineering evaluation of the structural forces upon the building and the sequence of such forces can explain the failure of the structural elements of the building which allowed for the winds or the waters of the storm to do their damage … the analysis that I preformed …

clearly showed that the first cause of the destruction of the house was due to the windstorm early on in the storm … [T]he later storm waters the did little further structural damage. (See, February 6, 2006, expert report of Ted L. Biddy, P.E., P.L.S., identified as DRAKE000194 attached hereto as Exhibit 1.) Thus, the findings of Mr. Biddy are consistent with the rulings of this Court during the course of all Hurricane Katrina litigation, the one constant is that the wind came before the water.

On August 29, 2005, Plaintiffs' home and personal property were completely destroyed b Hurricane Katrina. Unfortunately, Plaintiffs' home located at 95 Labranche Avenue, Ocean Springs, Mississippi was rendered a "slab" as a result of Hurricane Katrina, including the hours of intense hurricane force winds.

At the time of Hurricane Katrina, Plaintiffs had a Homeowner's Insurance Policy drafted, issued, and sold by the Defendants, a Wind Policy from the Mississippi Windstorm Underwriting Association, and a flood policy through the National Flood Insurance Program.  In the aftermath of Hurricane Katrina and total loss of Plaintiffs' home and personal property, the Mississippi Windstorm Underwriting Association made the determination that Plaintiffs' suffered at least $600,000.00 in wind damage to the second and third floors of their home, and the National Flood Insurance Program tendered the policy limits of their flood policy in the amount of $290,100.00 for damage to their home and personal property, including the first floor of Plaintiffs' property. However, Defendants have refused to provide insurance proceeds to the Plaintiff under Coverage D-Loss of Use even though the coverage specifically included wind as a covered loss and Defendants admitted that coverage was available to the Plaintiffs.

Plaintiffs have designated Ted L. Biddy, P.E., P.L.S. Prior to the subject litigation, Plaintiffs personally hired Mr. Biddy to conduct a complete and detail forensic engineering

analysis as to the destruction of their home and personal property as a result of Hurricane Katrina. Mr. Biddy opined that the most destructive wind forces of Hurricane Katrina preceded the arrival of storm surge sufficiently to have caused the destruction of Plaintiffs home because of the lack of anchorage and other structural failure before the rising storm surge further damaged property already damage by wind and rain water. (*See, February 6, 2006, expert report of Ted L. Biddy, and Supplemental Expert Report attached hereto as Cumulative Exhibit 2*.)

Mr. Biddy personally inspected the Plaintiffs property, and unlike Defendants' engineering expert, H.S.A. and Conestoga-Rovers, observed, inspected, and discovered the inadequate mechanism of attachment of the wood frame stubs to the concrete and steel pilings of Plaintiffs' home. Of course, Mr. Biddy, unlike Defendants' experts, was able to correctly set forth the correct dimensions of Plaintiffs' home and declare that Plaintiffs' home was a three (3) story home and not a one (1) story home as set forth by Defendants' experts.

After conducting a thorough inspection of Plaintiffs' property, Mr. Biddy performed engineering calculations that proved that the wind forces from Hurricane Katrina were the cause of the failure of these attachments before the arrival of storm surge. Thus, Mr. Biddy found that the wind forces of Hurricane Katrina were the "first cause" of destruction of Plaintiffs' home and personal property.

## Ted L. Biddy is Qualified

Ted L. Biddy graduated from Georgia Tech with a degree in civil engineering in 1963 and after his required years of training became a licensed civil engineer in 1967. Thus, Mr. Biddy has been a licensed civil engineer for over 40 years. (Deposition of Ted L. Biddy is attached hereto as Exhibit 3.) His is currently licenses in several states including but not limited to Florida, Mississippi, and South Dakota. Mr. Biddy spent several of his early professional years

as an engineer with Michael Baker, Jr., Inc., a consulting engineering firm which required him to investigate damages on the Mississippi Gulf Coast following Hurricane Camilla. (See, excerpt of deposition testimony of Ted L. Biddy attached hereto as Exhibit 4.)

Mr. Biddy has extensive experience in designing and analyzing structures in the context of the withstanding of wind and water forces and specific experience and training involving meteorology / weather as a component of his civil engineering training and experience. (See, excerpt of deposition of Ted L. Biddy attached hereto as Exhibit 5.) Since the aftermath of Hurricane Katrina, Mr. Biddy has been active in assessing the damages to structures along the Mississippi Gulf Coast and analyzing data collected by forensic meteorologists. Mr. Biddy has conducted over 250 forensic engineering analyses for homeowners, churches, museums, colleges, and businesses after the destruction caused by Hurricane Katrina. In fact, in regards to the Plaintiffs home and property, Mr. Biddy conducted forensic engineering analyses for multiple surrounding properties. (See, excerpt of deposition testimony of Ted L. Biddy attached hereto as Exhibit 6.) These should be no doubt that Mr. Ted L. Biddy is qualified to provided expert testimony at the trial of this cause as to the forensic engineering analysis of the destruction of Plaintiffs' home and personal property.

### Mr. Biddy Conducted a Thorough Wind Damage Analysis

Mr. Biddy inspected the Plaintiffs property in late October or early November 2006. In the course of his inspection, Mr. Biddy was present on the Plaintiffs' property was able to inspect, view, and analysis the method of attachment of the wood stub walls to the concrete and steel pilings which were part of the foundation of Plaintiffs' home. (*See, excerpt of deposition testimony of Ted L. Biddy attached hereto as Exhibit 7.*) Mr. Biddy performed calculations based on his knowledge, education, experience, and training which proved that the attachments in

4

Plaintiffs' home were insufficient to withstand the wind force loading from Hurricane Katrina which caused the first structural failure of Plaintiffs' home before the arrival of storm surge. (*See, excerpt of deposition testimony of Ted L. Biddy attached hereto as Exhibit 8.*)

As part of his wind damage analysis, Mr. Biddy relied upon reports and date from the National Weather Service, National Oceanographic and Atmospheric Administration, Naval Meteorology & Oceanographic Command, Accuweather Reports of Surrounding Properties, Neighborhood Eye Witness Reports, and photographs supplied by the Plaintiff as well as photographs from his personal inspection of the site. (*See, expert of deposition testimony of Ted. L. Biddy and attachments to his February 6, 2006, Expert Report and Supplemental Expert Report attached hereto as Cumulative Exhibit 9.*)

### Defendants' Daubert Challenge is Misguided

Defendants wrongfully assert that the expert report and testimony of Ted L. Biddy should be excluded from the trial of this matter. Defendants set forth that, under Daubert, Ted. L. Biddy should be excluded (1) Plaintiffs' dwelling was completely destroyed by wind to a high degree of engineering certainty cannot logically follow his engineering analysis; (2) Mr. Biddy is unqualified to issue a meteorological opinion; (3) Mr. Biddy must be precluded from offering an opinion as to the reconstruction cost of Plaintiffs' home.

**1.   Mr. Biddy Should be Allowed to Testify as to the Destruction of Plaintiffs' Home and Personal Property**

Defendant continues to proclaim that Plaintiffs, under the amended guidelines set forth by National Flood Insurance Program, were tendered the limits of Plaintiffs' flood insurance policy in the amount of $290,100.00 as a result of the Plaintiffs' home and property being rendered a slab as a result of Hurricane Katrina. In addition, Defendants continued to hound the Plaintiffs for applying and accepting monies provided by the Mississippi Develop Authority.

5

What the Defendants apparently do not want to set forth is that the Plaintiffs were provided policy limits under their wind policy with the Mississippi Windstorm Underwriting Association in the amount of $600,000.00 for wind damage to the second and third floor of their home and personal property. This allocation of insurance proceeds falls directly in line with the expert report and testimony of Mr. Biddy, that the winds generated by Hurricane Katrina preceded the late arrival of storms surge and the wind was the "first cause" of destruction of Plaintiffs' home and personal property and the lower floor, including Plaintiff's garage, would have been inundated with storm surge. As a result, Mr. Biddy should be allowed to testify and his report be made an exhibit at the trial of this matter in regards to his forensic engineering analysis of the destruction Plaintiffs' home and personal property and that the "first cause" of destruction of Plaintiffs' home would have caused the Plaintiffs' home to be uninhabitable. (See, excerpts of deposition testimony of Ted L. Biddy attached hereto as Exhibit 10.)

**2.      Mr. Biddy is Qualified to Testify Regarding the Destruction of Plaintiffs' Home and Personal Property and the Weather Events of Hurricane Katrina Which Caused Such Destruction**

Mr. Biddy should be allowed and is qualified to testify and give expert opinion regarding the destruction of Plaintiffs' home and personal property and the weather events of Hurricane Katrina which caused such destruction. During the deposition of Mr. Biddy, he testified, in part to the following:

Pg. 53

>       Q. You don't have a degree in meteorology, right?
>       A. <u>I've been asked that question many, many times and the answer is no. But I studied meteorology in each and every course at Georgia Tech that you have in engineering, because it is vital part of all phases of civil engineering</u>.

(See, excerpt of deposition of Ted L. Biddy attached hereto as Exhibit 11.)

Mr. Biddy is qualified to provide his expert opinion regarding the cause of the damage to Plaintiffs' home and personal property. As in this case and many other cases which have been litigated in this Court over the last few years, the origin of the destruction of Plaintiffs' home and personal property and many other home, businesses, and churches on the Mississippi Gulf Coast was caused by Hurricane Katrina. Mr. Biddy's forensic engineering analysis is consumed and dependent upon the cause and effect of the weather events for which Plaintiffs' home was subjected during Hurricane Katrina. This engineering analysis is no different that every other phases of civil engineering. The surrounding environment, including weather events of Hurricane Katrina, must be analyzed and made part of a methodical forensic analysis. Mr. Biddy has conducted such a forensic analysis based on his knowledge, education, training, and experience which includes meteorology and the effects of wind and water on structures. As such, Mr. Biddy should be allowed to testify in accordance with his knowledge, education, training, and experience, including but not limited to the damage to Plaintiffs' home and personal property.

3.  **Mr. Biddy Will Not Testify as to the Cost of Rebuilding Plaintiffs' Home**

Defendants contend that Mr. Biddy should not be allowed to testify or offer an opinion on the reconstruction cost of Plaintiffs' dwelling. Plaintiffs respectfully contend Defendants are correct on this point as Plaintiffs have not rebuilt on their property located at 95 Labranche Avenue, Ocean Springs, Mississippi. Plaintiffs have chosen to permanently relocate to Vancleave, Mississippi and will not call on Mr. Biddy to testify or provide an opinion as to the reconstruction cost of Plaintiffs' dwelling.

Respectfully submitted, this the 28th day of September, 2009.

                                  JOHN K. DRAKE, M.D.
                                  DEBORAH DRAKE
                                  Plaintiffs

                By:   ***W. Corban Gunn***
                        W. CORBAN GUNN, (MSB #101752)

CORBAN, GUNN & VAN CLEAVE, PLLC
P.O. Drawer 1916
Biloxi, Mississippi 39564
T: (228) 432-7826
F: (228) 456-0998

## **CERTIFICATE OF SERVICE**

      I, W. Corban Gunn, Esq., hereby certify that on July 16, 2009, I filed the forgoing notice with the Clerk of the Court and sent the above *and* any applicable documents via E-Mail to all counsel of record.

      *W. Corban Gunn*
      W. CORBAN GUNN, (MSB #101752)